## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In Re*: **John Adam Associates, Inc.** <br> John Adams Associates Inc. <br>   Subpoena Recipient, <br>   850 National Press Building <br>   Washington, D.C. 20045 <br><br> 3M Company, <br>   Real Party in Interest, <br>   3M Center <br>   St. Paul, MN 55144 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 1:07-mc-00577 (RBW)

**RECEIVED**

JAN 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Hon. Reggie B. Walton

### 3M COMPANY'S MOTION TO INTERVENE

3M Company ("3M"), the Real Party in Interest in this miscellaneous action, respectfully moves to intervene pursuant to FED. R. CIV. P. 24 and Local Civil Rule 7(j).

Through this Court, counsel for Plaintiffs in two civil cases in federal district courts in New Jersey and West Virginia issued subpoenas for documents to John Adams Associates Inc. ("JAA"). In response, JAA has produced thousands of documents, but on behalf of its client 3M, withheld a small set of documents protected by attorney-client privilege or work product principles. The documents pertain to JAA's work as a litigation consultant for 3M. Plaintiffs have filed this miscellaneous action to compel JAA to produce those documents.

It is well established that the need to protect confidential and proprietary information is an appropriate basis for intervention under FED. R. CIV. P. 24. *See, e.g.*, *In re Sealed Case 00-5116*, 237 F.3d 657 (D.C. Cir. 2001); *Northrop Grumman Information Technology, Inc. v. United States*, 74 Fed. Cl. 407 (Fed. Cl. 2006). Not only do 3M's interests in the documents at issue satisfy the requirements for intervention of right under Rule 24(a), this Circuit also applies

Rule 24(b) on permissive intervention flexibly. *See, e.g., EEOC v. National Children's Ctr.*, 146 F.3d 1042, 1046 ("The force of precedent . . . compels a flexible reading of Rule 24(b)").

Counsel for JAA consent to this motion. 3M has not yet been able to reach counsel for Plaintiffs to obtain their consent. However, Plaintiffs' have recognized 3M's interest, and have met and conferred directly with 3M counsel with regard to the documents at issue in this action and 3M's privilege log rather than with JAA's counsel.

For the foregoing reasons, 3M respectfully requests that this Court grant the Motion to Intervene.

Respectfully submitted,

Katherine L. Rhyne, D.C. Bar # 339010
Lauren S. Reeder, D.C. Bar # 494572
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006-4706
Telephone: (202) 626-3743
Fax: (202) 626-3737
krhyne@kslaw.com
lreeder@kslaw.com

MICHAEL C. McCARTHY
MN Bar No. 230406
Maslon Edelman Borman & Brand LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone: (612) 672-8347
Fax: (612) 642-8347
mike.mccarthy@maslon.com

*Attorneys for Defendant 3M Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing 3M Company's Motion to Intervene was served via U.S. Mail on the following, this 11th day of January, 2008:

J. Steven Justice
Taft Stettinius & Hollister LLP
110 North Main Street, Suite 900
Dayton, OH  45402

Karen J. Marcus
Mila F. Bartos
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street NW
Washington, D.C.  20007

4

# EXHIBIT A

Per Local Civil Rule 7(j), a copy of Plaintiffs' Motion to Compel Production

instigating this miscellaneous case is Attached

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In Re WILLIAM R. RHODES          :
    211 Vair Avenue                :
    Parkersburg, WV 26101;         :
RUSSELL H. MILLER                :
    1557 20th Avenue               :
    Parkersburg, WV 26101; and     :
VALORI A. MACE                   :
    2202 Division Street           :
    Parkersburg, WV 26101

---

In Re RICHARD ROWE               :
    59 West Harmony Street,         :
    Penns Grove, NJ 08069;         :
MARY L. CARTER                   :
    602 Sorenson Drive,            :
    Carneys Point, NJ 08069;       :
MICHELLE E. TOMARCHI             :
    36 S. Pennsville-Auburn Road,  :
    Carneys Point, NJ  08069;      :
REGINA M. TROUT;                 :
    238 Broadway,                  :
    Carneys Point, NJ 08069;       :
ALLEN K. MOORE;                  :
    102 Turner Avenue              :
    Penns Grove, NJ 08069          :
                                   :
CATHERINE A. LAWRENCE            :
    65 Delaware Avenue,            :
    Carneys Point, NJ 08069        :
and                              :
KATHLEEN K. LEMKE, as parent and :
Personal guardian of DJL, Jr., a minor :
    96 6th Avenue,                 :
    Carneys Point, NJ 08069        :

---

RICHARD ROWE; MARY L. CARTER; :          Miscellaneous Case No. _____
MICHELLE E. TOMARCHIO; REGINA:
M. TROUT; ALLEN K. MOORE;        :       Civil Action Case No. 06-1810-RMB-AMD
                                   :       D. NJ (Camden Vicinage)
CATHERINE A. LAWRENCE; and       :
KATHLEEN K. LEMKE, as parent and :
Personal guardian of DJL, Jr., a minor, :



EXHIBIT
A

Civ. Action No. 1:07-mc-00577
(RBW)

|  | : |  |
|---|---|---|
| Plaintiffs, | : | |
| | : | |
| -vs- | : | |
| | : | |
| E. I. DU PONT DE NEMOURS | : | |
| AND COMPANY, | : | |
| | : | |

| Defendant. | | |
|---|---|---|
| WILLIAM R. RHODES, | : | |
| RUSSELL H. MILLER, and | : | |
| VALORI A. MACE, | : Miscellaneous Case No. _____ |
| | : Civil Action Case No. 6:06-0530 |
| Plaintiffs, | : S.D. WV (Parkersburg Division) |
| | : |
| -vs- | : |
| | : |
| E. I. DU PONT DE NEMOURS | : |
| AND COMPANY, | : |
| | : |
| Defendant. | : |

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION PURSUANT TO A SUBPOENA AND MEMORANDUM OF LAW IN SUPPORT

## I.     BACKGROUND

Plaintiffs move the Court through this miscellaneous action to Order Defendant John

Adams Associates, Inc. ("JAA") to produce documents and electronically stored information

responsive to subpoenas issued in connection with two civil cases pending in other federal

district courts. *See Rhodes v. E.I. DuPont Nemours and Company*, Civ. Action No. 6-06-0530

(S.D. W. Va.) ("the West Virginia litigation"); *Rowe v. E.I. DuPont Nemours and Company*,

Case No. 06-1810 (D.N.J.) ("the New Jersey litigation").   Both cases allege that DuPont

contaminated Plaintiffs' drinking water supplies with perfluorochemicals ("PFCs"), and, among

other things, were aware for decades of the dangers associated with exposure to PFCs.

2

On or about August 3, 2007, identical subpoenas, one for each case, were served on JAA, which is not a party to either litigation, requesting the production of documents and electronically stored information ("ESI") relating to PFCs and any connection JAA has or had with DuPont with respect to PFCs. (*See* Ex. A, Justice Dec. ¶ 2 & Attachment 1.) Eventually, JAA produced hard copy documents responsive to the subpoena by compact discs attached to a letter dated October 8, 2007. (*See* Ex. A, Justice Dec. ¶ 3 & Attachment 2.) It was indicated in the letter that allegedly privileged documents were withheld from the production, and that a privilege log would be produced "at a later date."

By letter dated November 13, 2007, JAA produced ESI responsive to the subpoena. (*See* Ex. A, Justice Dec. ¶ 4 & Attachment 3.) It was noted again that responsive but allegedly privileged documents had not been produced, but this time that a privilege log would be "provided at a later date by the party asserting the privilege." By letter dated November 16, 2007, JAA informed Plaintiffs that "the party asserting the privilege" was 3M Company, for whom JAA had been contracted to work in the past, and that 3M would be producing a privilege log. (*See* Ex. A, Justice Dec. ¶ 5 & Attachment 4.)

By letter dated November 20, 2007, JAA enclosed a letter from counsel for 3M as well as 3M's privilege log with respect to responsive but withheld documents. (*See* Ex. A, Justice Dec.¶ 6 & Attachment 5.)[1] The privilege log contains approximately one hundred entries, virtually all pertaining to a period of time well before either of the litigations referenced above. Plaintiffs challenge the assertion of privilege and/or work product for most of the entries.

Counsel for Plaintiffs and counsel for 3M held a meet-and-confer on December 10, 2007, to determine if an agreement could be reached on any of the entries and to narrow and focus the

---

[1] Because the privilege log itself has been labeled "CONFIDENTIAL (Rhodes) and CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER IN ROWE/COLES," it is not attached to this Motion.

issues for the Court's review in the event that judicial intervention was required. These issues are now ripe for resolution.

## II.    APPLICABLE LEGAL PRINCIPLES

Plaintiffs are cognizant that the Court is well aware of the appropriate law to apply to the issues. In addition, because Plaintiffs have not actually seen the documents that were withheld from production, it is impossible to provide the Court with the issue-specific principles of law applicable here. A limited number of general principles of law, however, are worthy of mention here. Should the Court wish for the parties to more fully brief the law with respect to attorney-client privilege and the work product doctrine, Plaintiffs will of course do so.

Because all of the claims asserted in the West Virginia litigation and the New Jersey litigation are rooted in state law, Rule 501 of the Federal Rules of Evidence mandates that claims of attorney-client privilege be assessed according to such applicable state law. *See* Fed. R. Evid. 501. Thus, each time an attorney-client privilege claim is utilized as a basis for withholding production of a responsive document or ESI, both West Virginia and New Jersey law will have to be consulted in connection therewith. *See* N.J.S.A. § 2A: 84A-20 (codifying law with respect to attorney-client privilege); N.J. R. Evid. 504; *State ex rel. U.S. Fidelity & Guaranty Co. v. Canady*, 191 W. Va. 431, 460 S.E. 2d 677, 688 (W. Va. 1995) (setting forth requirements for assertion of attorney-client privilege in West Virginia).

The law applicable to the withholding of documents pursuant to the work product doctrine, however, is governed by this Court's own law, and that of the D.C. Circuit Court of Appeals and the United States Supreme Court. *See, e.g., Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) ("Unlike the attorney client privilege, the work

product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).").

## III.  REQUESTED PROCEDURE

Plaintiffs respectfully request that the Court, in assessing the claims of attorney-client privilege and work product doctrine, utilize a procedure that has permitted the assessment of like claims in other litigation with DuPont which has proven to be cost- and time-efficient. In particular, JAA could first provide the Court with a notebook containing the challenged documents, along with a copy of the privilege log delineating the basis each such document was withheld from production, for *in camera* review. The parties could soon thereafter meet with the Court to argue orally their positions concerning the withheld documents, and the Court could rule from the bench as to whether the documents are protected from disclosure by the attorney-client privilege or work product doctrine. The Court could then direct JAA by a date certain to produce the documents not protected from disclosure by the attorney-client privilege or work product doctrine. Plaintiffs respectfully request that the Court soon hold a telephone status conference to discuss this proposed procedure and, if appropriate, to set any deadlines and a hearing date in connection therewith.

Respectfully submitted,

_Steve Justice /Kjm_
J. Steven Justice (OSB# 0063719)
Taft Stettinius & Hollister LLP
110 North Main Street, Suite 900

5

Dayton, OH  45402
(Tel)   937-228-2816
(Fax)  937-228-2816
justice@taftlaw.com

Of Counsel:
Karen J. Marcus (D.C. Bar # 486435)
Mila F. Bartos  (D.C. Bar #464227)
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street N.W.
Washington, D.C.  20007
(Tel)   202-337-8000
(Fax)  202-337-8090
kmarcus@finkelsteinthompson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via U.S. Mail on the following this **21st** day of December 2007:

Nadira Clarke
Beveridge & Diamond PC
1350 I Street N.W., Suite 700
Washington, D.C.  20005-3311

Courtesy copy to:
Mike McCarthy
Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140

Karen J. Marcus

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD ROWE; MARY L. CARTER;** : | Case No. 2007-MI-_____ |
| **MICHELLE E. TOMARCHIO; REGINA** : | |
| **M. TROUT; ALLEN K. MOORE;** : | (Judge _____) |
| **CATHERINE A. LAWRENCE; and** : | |
| **KATHLEEN K. LEMKE, as parent and** : | |
| Personal guardian of DJL, Jr., a minor, : | |
| : | |
| Plaintiffs, : | |
| : | |
| -vs- : | |
| : | |
| **JOHN ADAMS ASSOCIATES, INC.,** : | |
| : | |
| Defendant. : | |

| | |
|---|---|
| **WILLIAM R. RHODES; RUSSELL H.** : | Case No. 2007-MI-_____ |
| **MILLER; and VALORI A. MACE,** : | |
| : | (Judge _____) |
| Plaintiffs, : | |
| : | |
| -vs- : | |
| : | |
| **JOHN ADAMS ASSOCIATES, INC.,** : | |
| : | |
| Defendants. : | |

## DECLARATION OF J. STEVEN JUSTICE IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION PURSUANT TO SUBPOENAS

I, J. Steven Justice, hereby state as follows:

1. I am an attorney with the law firm of Taft Stettinius & Hollister LLP, 110 North Main

Street, Suite 900, Dayton, OH 45402, and am among Plaintiffs' counsel in *Rhodes v. E.I.*

*DuPont Nemours and Company*, Civ. Action No. 6-06-0530 (S.D. W. Va.); *Rowe v. E.I. DuPont*



**EXHIBIT**

*A*

*Nemours and Company*, Case No. 06-1810 (D.N.J.). I have personal knowledge of all matters and documents addressed in this Affidavit.

2. Attached hereto as Attachment 1 are true and accurate copies of subpoenas issued in connection with the above-referenced cases to John A. Adams Associates, Inc. ("JAA").

3. Attached hereto as Attachment 2 is a true and accurate copy of a letter dated October 8, 2007, that I received from counsel for JAA.

4. Attached hereto as Attachment 3 is a true and accurate copy of a letter dated November 13, 2007, that I received from counsel for JAA.

5. Attached hereto as Attachment 4 is a true and accurate copy of a letter dated November 16, 2007, that I received from counsel for JAA.

6. Attached hereto as Attachment 5 is a true and accurate copy of a letter dated November 20, 2007, that I received from counsel for JAA.

I declare under penalty of perjury that the foregoing is true and correct.

J. Steven Justice

Executed on: __December 21, 2007__

at: __Dayton, Ohio__

# EXHIBIT 1

AO88 (Rev. 1/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

RICHARD A. ROWE, et al.

V.

E.I. DUPONT DE NEMOURS AND COMPANY

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]

TO:   John Adams Associates, Inc.
      807 National Press Building
      Washington, D.C. 20045

PENDING IN U.S. DISTRICT COURT,
DISTRICT OF NEW JERSEY,
CIVIL ACTION NO.: 06-1810-RMB-AMD

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A.

| PLACE    John Adams Associates,Inc., 807 National Press Building, Washington, D.C. 20045 | DATE AND TIME  8/23/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   Attorney for Plaintiffs | DATE  8/3/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
J. Steven Justice, Taft Stettinius & Hollister LLP, 110 North Main Street, Suite 900, Dayton, Ohio 45402-1786
(937) 641-1720

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing, or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If the showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## DEFINITIONS

1.     For purposes of this subpoena, the term "document" or "documents" is used in the broadest possible sense. It refers, without limitation, to the original and all copies, prior drafts and translations, written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications, data compilations, or representations of every kind, whether comprised of letters, words, numbers, pictures, sounds, or symbols, whether prepared by manual, mechanical, electronic, magnetic, photographic, or other means, as well as audio, video or other recordings of communications, oral statements, conversations, or events.

This definition includes, but is not limited to, any and all of the following: correspondence, notes, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, newspaper clippings, tables, tabulations, financial statements, working papers, tallies, maps, drawings, diagrams, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, facsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained.

Any preliminary versions, drafts, or revisions of any of the foregoing, any document which has or contains any attachment, enclosure, comment, notation, addition, insertion, or marking of any kind which is not a part of another document, or any document which does not contain a comment, notation, addition, insertion, or marking of any kind which is a part of another document, is to be considered a separate document.

2.     "Person" means natural persons, corporations, firms, companies, partnerships, unincorporated associations, governmental or public agencies, joint ventures, and all other entities.

3.     "Adams", "you", and "your" refer to John Adams Associates, Inc., whose office is located at 807 National Press Building, Washington, D.C. 20045, and all of its present and former employees, agents, representatives, counsel, and all persons and entities acting or purporting to act under its control or on its behalf.

4.     "DuPont" refers to E.I. duPont de Nemours and Company, and any of its corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors-in-interest, successors, assignees, partners, directors, officers, agents, employees, counsel, or any other person or entity acting for or on its behalf.

5.     "Communications" means any and all of the following: writings, oral communications, conversations by telephone, meetings, and any contract, oral or written, formal or informal, at any time or place, and under any circumstances whatsoever in which information of any nature was transmitted or exchanged in any form.

6.    "Relating to" means constituting or evidencing and directly or indirectly mentioning, describing, referring to, pertaining to, being connected with or reflecting upon the stated subject matter.

7.    The words "any" and "all" shall be considered to include "each" and "each and every."

8.    "Perfluorinated Materials" or "PFC" or "PFCs" means the following: perfluorinated compounds C-4 through C-16, whether in salt, acid, sulfonated form, such as perfluorooctanoic acid ("PFOA")(a/k/a ammonium perfluorooctanoate, APFO, PFO, C-8, DFS-1, DFS-2, and FC-143); fluoropolymers and fluorotelomers, such as Zonyl, TBS (or equivalent acronyms), and FS-62; materials that contain perfluorinated compounds; PFCs that are used in the manufacture of any material or product; PFCs that are produced as byproducts or waste of any process; and PFCs that result from degradation, treatment, storage, or disposal of any products, materials, or waste.

9.    Each and every request for a document or documents to be produced requires production of the document, in its entirety, without abbreviation or expurgation, and without redacting any portions of it.

10.    More than one paragraph of this request may ask for the same document. The presence of such duplication is not to be interpreted to narrow or limit the normal interpretation placed upon each individual request. Where a document is requested in more than one numbered paragraph, only one copy of it need be produced.

11.    If any document is withheld under claim of privilege, furnish a list identifying each document for which the privilege is claimed, together with the following information for each such document: date, sender, recipient, persons to whom copies were furnished, job titles of each of these persons, subject matter of the documents, number of pages in the document, the basis on which the privilege is claimed, the paragraph or paragraphs of this request to which the document responds, the subject matter of the document and the person in whose custody the document is presently located, and whether any matter that is not privileged is discussed or mentioned in that document.

12.    Responsive documents stored in the ordinary course of business as hard copies may be produced as hard copies. Electronic information, whether documents, emails, or databases, stored in the ordinary course of business as electronically stored information ("ESI") must be produced electronically in its native format, i.e., the original software in which it was created.

## DOCUMENTS TO BE PRODUCED

1.    Produce any and all documents and/or ESI in your possession or control relating to the collection, storage, management, analysis and/or testing of samples for PFCs for, at the request of, or on behalf of DuPont.

2.    Produce any and all documents in your possession or control relating to any and all sampling and/or testing of biological material, water and soil, including but not limited to all samples of tissue (whether animal or human), blood, surface water, groundwater, drinking water,

storm water, sludge, soils, sediments and/or vegetation for PFCs for, at the request of, or on behalf of DuPont.

3.    Produce any and all documents, including but not limited to scientific and clinical literature, you received and/or reviewed at the request of, or on behalf of DuPont relating to PFCs.

4.    Produce any and all correspondence between Adams and DuPont which relate to or reference PFCs.

5.    Produce any and all documents or notes that evidence communications between Adams and DuPont that relate to or reference PFCs.

6.    Produce any and all communications and records of communications between Adams and any consultant, contractor and/or contract laboratory(ies) relating to the collection, sampling, analysis and/or testing of samples for PFCs.

7.    Produce any and all documents relating to work which was done for, at the request of, or on behalf of DuPont relating to DuPont's Chambers Works plant in New Jersey and/or any associated water supply.

8.    Produce any and all documents relating to samples analyzed for PFCs taken by or on behalf of DuPont relating to DuPont's DuPont's Chambers Works plant in New Jersey and/or any associated water supply, whether onsite or off-site, including but not limited to all samples of biologic tissue, blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments, and/or vegetation.

9.    Produce any and all documents relating to the use, toxicity (including but not limited to exposure and health data), characteristics, testing, storage, release, disposal, and/or destruction of PFCs relating to DuPont.

10.    Produce any and all documents relating to any and all communications between Adams and any local, state, and/or federal regulatory agency regarding PFCs found in any source including but not limited to water, soil, biologic tissue and/or blood samples.

11.    Produce any and all risk assessments and/or advice you provided to DuPont relating to actual or suspected health effects, diseases, treatments and/or treatment risks relating to PFCs.

12.    Produce any and all documents relating to or which reference PFCs that you disseminated, or planned to disseminate, in a public and/or private forum.

13.    Produce any and all documents and tangible things you provided to any and all vendors, contractors and/or consultants you retained and/or consulted in order to commence, perform, and/or complete any and all work relating to PFCs which was done for, at the request of, or on behalf of DuPont.

14.    Produce any and all documents you received from any and all vendors, contractors and/or consultants you retained to sample, test and/or analyze PFCs that was done for, at the request of, or on behalf of DuPont.

15.    Produce any and all documents relating to any and all action you took to study, analyze, and/or investigate the effects and/or potential effects on humans or animals of any PFC, including any actual or potential health effects on humans or animals from exposure to any product containing or made with a PFC and/or PFC byproduct.

16.    Produce any and all documents relating to each and every epidemiological study and/or outcome you designed, conducted and/or analyzed in a real life and/or clinical setting relating to PFCs.

17.    Produce any and all documents relating to any and all post-market surveillance programs, studies and/or registries you designed, conducted and/or analyzed relating to PFCs.

18.    Produce any and all documents and/or reports relating to any and all analysis and/or interpretation you made of any published or unpublished clinical data relating to PFCs.

19.    Produce any and all documents, including articles, abstracts, manuscripts, webpages and/or other documents, which you prepared for, at the request of, or on behalf of DuPont for publication, peer review, and/or for any media source.

20.    Produce any and all documents you drafted, reviewed, amended and/or analyzed relating to proposed legislation addressing, discussing and/or referencing PFCs.

21.    Produce any and all documents relating to your scope of work and payment of same, including but not limited to, service contracts, invoices, letters of intent, and/or engagement letters, between you and DuPont relating to the collection, storage, management, analysis and/or testing of PFCs.

22.    Produce any and all documents relating to videos, media footage, slideshows and/or software, in any format which was created, developed, improved, studied and/or implemented for, at the request of, or on behalf of DuPont relating to PFCs.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

WILLIAM R. RHODES, et al.

V.

E.I. DUPONT DE NEMOURS AND COMPANY

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]

TO:  John Adams Associates, Inc.
807 National Press Building
Washington, D.C. 20045

PENDING IN U.S. DISTRICT COURT,
SOUTHERN DISTRICT OF WEST VIRGINIA,
CIVIL ACTION NO.: 6-06-0530

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT A.

| PLACE  John Adams Associates,Inc., 807 National Press Building, Washington, D.C.  20045 | DATE AND TIME  6/23/2007 10:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  Attorney for Plaintiffs | DATE  8/3/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
J. Steven Justice, Taft Stettinius & Hollister LLP, 110 North Main Street, Suite 900, Dayton, Ohio  45402-1786
(937) 641-1720

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## DEFINITIONS

1.     For purposes of this subpoena, the term "document" or "documents" is used in the broadest possible sense. It refers, without limitation, to the original and all copies, prior drafts and translations, written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications, data compilations, or representations of every kind, whether comprised of letters, words, numbers, pictures, sounds, or symbols, whether prepared by manual, mechanical, electronic, magnetic, photographic, or other means, as well as audio, video or other recordings of communications, oral statements, conversations, or events.

This definition includes, but is not limited to, any and all of the following: correspondence, notes, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, newspaper clippings, tables, tabulations, financial statements, working papers, tallies, maps, drawings, diagrams, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, facsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained.

Any preliminary versions, drafts, or revisions of any of the foregoing, any document which has or contains any attachment, enclosure, comment, notation, addition, insertion, or marking of any kind which is not a part of another document, or any document which does not contain a comment, notation, addition, insertion, or marking of any kind which is a part of another document, is to be considered a separate document.

2.     "Person" means natural persons, corporations, firms, companies, partnerships, unincorporated associations, governmental or public agencies, joint ventures, and all other entities.

3.     "Adams", "you", and "your" refer to John Adams Associates, Inc., whose office is located at 807 National Press Building, Washington, D.C. 20045, and all of its present and former employees, agents, representatives, counsel, and all persons and entities acting or purporting to act under its control or on its behalf.

4.     "DuPont" refers to E.I. duPont de Nemours and Company, and any of its corporate affiliates, divisions, subgroups, subsidiaries, parent corporations, predecessors-in-interest, successors, assignees, partners, directors, officers, agents, employees, counsel, or any other person or entity acting for or on its behalf.

5.     "Communications" means any and all of the following: writings, oral communications, conversations by telephone, meetings, and any contract, oral or written, formal or informal, at any time or place, and under any circumstances whatsoever in which information of any nature was transmitted or exchanged in any form.

{V0041999.1}

6.    "Relating to" means constituting or evidencing and directly or indirectly mentioning, describing, referring to, pertaining to, being connected with or reflecting upon the stated subject matter.

7.    The words "any" and "all" shall be considered to include "each" and "each and every."

8.    "Perfluorinated Materials" or "PFC" or "PFCs" means ammonium perfluorooctanoate and perfluourooctanoic acid "PFOA" (a/k/a APFO, PFO, C-8 (not PFOS), DFS-1, DFS-2, and FC-143) and any material that does or is suspected to contain, degrade, or otherwise form or produce PFOA.

9.    Each and every request for a document or documents to be produced requires production of the document, in its entirety, without abbreviation or expurgation, and without redacting any portions of it.

10.    More than one paragraph of this request may ask for the same document. The presence of such duplication is not to be interpreted to narrow or limit the normal interpretation placed upon each individual request. Where a document is requested in more than one numbered paragraph, only one copy of it need be produced.

11.    If any document is withheld under claim of privilege, furnish a list identifying each document for which the privilege is claimed, together with the following information for each such document: date, sender, recipient, persons to whom copies were furnished, job titles of each of these persons, subject matter of the documents, number of pages in the document, the basis on which the privilege is claimed, the paragraph or paragraphs of this request to which the document responds, the subject matter of the document and the person in whose custody the document is presently located, and whether any matter that is not privileged is discussed or mentioned in that document.

12.    Responsive documents stored in the ordinary course of business as hard copies may be produced as hard copies. Electronic information, whether documents, emails, or databases, stored in the ordinary course of business as electronically stored information ("ESI") must be produced electronically in its native format, i.e., the original software in which it was created.

## DOCUMENTS TO BE PRODUCED

1.    Produce any and all documents and/or ESI in your possession or control relating to the collection, storage, management, analysis and/or testing of samples for PFCs for, at the request of, or on behalf of DuPont.

2.    Produce any and all documents in your possession or control relating to any and all sampling and/or testing of biological material, water and soil, including but not limited to all samples of tissue (whether animal or human), blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments and/or vegetation for PFCs for, at the request of, or on behalf of DuPont.

3.     Produce any and all documents, including but not limited to scientific and clinical literature, you received and/or reviewed at the request of, or on behalf of DuPont relating to PFCs.

4.     Produce any and all correspondence between Adams and DuPont which relate to or reference PFCs.

5.     Produce any and all documents or notes that evidence communications between Adams and DuPont that relate to or reference PFCs.

6.     Produce any and all communications and records of communications between Adams and any consultant, contractor and/or contract laboratory(ies) relating to the collection, sampling, analysis and/or testing of samples for PFCs.

7.     Produce any and all documents relating to work which was done for, at the request of, or on behalf of DuPont relating to DuPont's Washington Works plant in West Virginia and/or the Parkersburg City water supply.

8.     Produce any and all documents relating to samples analyzed or PFCs taken by or on behalf of DuPont and relating to DuPont's Washington Works plant in West Virginia and/or the Parkersburg City water supply, whether onsite or off-site, including but not limited to all samples of biologic tissue, blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments, and/or vegetation.

9.     Produce any and all documents relating to the use, toxicity (including but not limited to exposure and health data), characteristics, testing, storage, release, disposal, and/or destruction of PFCs relating to DuPont.

10.    Produce any and all documents relating to any and all communications between Adams and any local, state, and/or federal regulatory agency regarding PFCs found in any source including but not limited to water, soil, biologic tissue and/or blood samples.

11.    Produce any and all risk assessments and/or advice you provided to DuPont relating to actual or suspected health effects, diseases, treatments and/or treatment risks relating to PFCs.

12.    Produce any and all documents relating to or which reference PFCs that you disseminated, or planned to disseminate, in a public and/or private forum.

13.    Produce any and all documents and tangible things you provided to any and all vendors, contractors and/or consultants you retained and/or consulted in order to commence, perform, and/or complete any and all work relating to PFCs which was done for, at the request of, or on behalf of DuPont.

14.    Produce any and all documents you received from any and all vendors, contractors and/or consultants you retained to sample, test and/or analyze PFCs that was done for, at the request of, or on behalf of DuPont.

15.    Produce any and all documents relating to any and all action you took to study, analyze, and/or investigate the effects and/or potential effects on humans or animals of any PFC, including any actual or potential health effects on humans or animals from exposure to any product containing or made with a PFC and/or PFC byproduct.

16.    Produce any and all documents relating to each and every epidemiological study and/or outcome you designed, conducted and/or analyzed in a real life and/or clinical setting relating to PFCs.

17.    Produce any and all documents relating to any and all post-market surveillance programs, studies and/or registries you designed, conducted and/or analyzed relating to PFCs.

18.    Produce any and all documents and/or reports relating to any and all analysis and/or interpretation you made of any published or unpublished clinical data relating to PFCs.

19.    Produce any and all documents, including articles, abstracts, manuscripts, webpages and/or other documents, which you prepared for, at the request of, or on behalf of DuPont for publication, peer review, and/or for any media source.

20.    Produce any and all documents you drafted, reviewed, amended and/or analyzed relating to proposed legislation addressing, discussing and/or referencing PFCs.

21.    Produce any and all documents relating to your scope of work and payment of same, including but not limited to, service contracts, invoices, letters of intent, and/or engagement letters, between you and DuPont relating to the collection, storage, management, analysis and/or testing of PFCs.

22.    Produce any and all documents relating to videos, media footage, slideshows and/or software, in any format which was created, developed, improved, studied and/or implemented for, at the request of, or on behalf of DuPont relating to PFCs.

**EXHIBIT 2**



Nadira Clarke
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005-3311
Direct: (202) 789-6069
Fax: (202) 789-6190
nclarke@bdlaw.com

October 8, 2007

**VIA FEDEX**

J. Steven Justice, Esq.
Taft, Stettinius & Hollister, LLP
110 North Main Street, Suite 900
Dayton, OH 45402

Re:     *Rhodes, et al. v. E.I. duPont De Nemours and Co.*
        Civil Action No. 06-1810 (S.D. WV)
        *Rowe, et al. v. E.I. duPont De Nemours and Co.*
        Civil Action No. 06-1810-RMB-AMD (D. NJ)

Dear Mr. Justice:

In response to the third-party subpoenas issued by plaintiffs in the above-referenced proceedings on August 3, 2007, John Adams Associates, Inc. ("JAA") and the Environmental Health Research Foundation ("EHRF") hereby produce a CD containing bate-stamp images of the responsive documents from JAA and EHRF's hard-copy files.[1] Previously, in correspondence dated August 20, 2007, while represented by other counsel, JAA and EHRF objected to the subpoenas on a number of grounds, including the unnecessary breadth of the requests, and the undue expense. In correspondence dated October 1, 2007, you were informed that notwithstanding the objections, we would produce all responsive hard-copy documents. We further informed you that in the interest of compromise, JAA and EHRF would cover the costs associated with the production of the hard-copy files, including the photo-copying and imaging of the documents, and the associated legal review.

This production does not include any of the electronically stored information ("ESI") retrieved from two desktop computers and one server utilized by JAA and EHRF. As I have informed you in previous correspondence, the breadth of the third-party subpoenas and plaintiffs' unwillingness to narrow the scope in any manner poses a particular problem with

_____

[1] Also provided are copies of 20 CDs from JAA and EHRF's files which contain electronic copies of various submissions to the Environmental Protection Agency.

EXHIBIT

2

PENGAD 800-631-6989

OCT 0 9 2007

**BEVERIDGE & DIAMOND**ᴘᴄ

J. Steven Justice, Esq.
October 8, 2007
Page 2

respect to our review of the ESI. Even using a key word search and Boolean based search software such as DT Search, the number of potentially responsive documents is enormous. The search terms we initially proposed identified as many as 7,700 documents as responsive. The search terms that you proposed were even more burdensome – 17,483 documents were identified as responsive. Consistent with the guidelines set forth in Fed. R. Civ. P. 45(c)(1) and applicable case law which seeks to protect third-parties from any undue burden and expense of complying with subpoenas, we will review and produce all responsive ESI as soon as we have your assurance that plaintiffs will cover the costs associated with the ESI, including the production and legal review.

All privileged documents responsive to the third-party subpoenas have been removed from this production and will be listed in a separate privilege log to be provided at a later date. Those documents which constitute confidential business information are marked as such and are produced pursuant to, and consistent with the requirements set forth in the respective confidentiality orders: the Discovery Confidentiality Order, dated March 5, 2007, in *Rowe, et al. v. E.I. duPont De Nemours and Co.* (D. NJ); and the Protective Order, dated November 28, 2006, in *Rhodes, et al. v. E.I. duPont De Nemours and Co.* (S.D. WV). As we discussed today, in identifying confidential documents, we have generally relied on the definition of "confidential information" contained in the Discover Confidentiality Order in the *Rowe* case. In addition, pursuant to our conversation, while the protective order in the *Rhodes* case does not specifically refer to third- parties, we have agreed that the terms obviously extend to JAA and EHRF. The inadvertent production or disclosure of any privileged, confidential or otherwise protected document shall not be deemed either a general waiver of privilege, confidentiality or work product protection as to the document inadvertently produced or disclosed.

In producing information responsive to the third-party subpoenas, JAA and EHRF re-assert the objections set forth in their correspondence dated August 20, 2007. They further objects as follows:

## GENERAL OBJECTIONS

1. The subpoenas on JAA and EHRF are overly broad, unreasonably burdensome and onerous, and not designed to lead to the discovery of admissible evidence in the proceedings at issue.

2. The subpoenas seek information protected by the attorney-client privilege, work product privilege, executive privilege, confidential business information, or other applicable privilege.

3. JAA and EHRF object to the subpoenas to the extent that they seek confidential business information and trade secrets.

4. JAA and EHRF object to the subpoenas to the extent that they violate Fed. R. Civ. P. 26(b)(1).

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 3

5. JAA and EHRF object to use of the term "PFCs" in the subpoenas as overly broad, confusing, and ambiguous.

6. JAA objects each of the definitions and requests for production contained in the subpoenas as JAA was not retained by E.I. du Pont de Nemours and Co. as described in the subpoenas.

7. JAA and EHRF reserve the right to raise additional objections to the definitions and production requests contained in plaintiffs' subpoenas, and to amend and/or supplement the objections set forth herein.

## EHRF's OBJECTIONS AND RESPONSES TO SPECIFIC DOCUMENT REQUESTS

1. Produce any and all documents and/or ESI in your possession or control relating to the collection, storage, management, analysis and/or testing of samples for PFCs for, at the request of, or on behalf of DuPont.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

2. Produce any and all documents in your possession or control relating to any and all sampling and/or testing of biological material, water and soil, including but not limited to all samples of tissue (whether animal or human), blood, surface water, groundwater, drinking water,

BEVERIDGE & DIAMOND pc

J. Steven Justice, Esq.
October 8, 2007
Page 4

storm water, sludge, soils, sediments and/or vegetation for PFC for, at the request of, or on behalf of DuPont.

**RESPONSE:** EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

3.  Produce any and all documents, including but not limited to scientific and clinical literature, you received and/or reviewed at the request of, or on behalf of DuPont relating to PFCs.

**RESPONSE:** EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 5

impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

4. Produce any and all correspondence between Environmental Health Research Foundation and DuPont which relate to or reference PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

5. Produce any and all documents or notes that evidence communications between Environmental Health Research Foundation and DuPont that relate to reference PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4)

# BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 6

seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

6. Produce any and all communications and records of communications between Environmental Health Research Foundation and any consultant, contractor and/or contract laboratory(ies) relating to the collection, sampling, analysis and/or testing of samples for PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 7

7. Produce any and all documents relating to work which was done for, at the request of, or on behalf of DuPont relating to DuPont's Chambers Works plant in New Jersey and/or any associated water supply.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

8. Produce any and all documents relating to samples analyzed for PFCs taken by or on behalf of DuPont relating to DuPont's Chamber Works plant in New Jersey and/or any associated water supply, whether onsite or off-site, including but not limited to all samples of biologic tissue, blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments, and/or vegetation.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine,

**BEVERIDGE & DIAMOND**PC

J. Steven Justice, Esq.
October 8, 2007
Page 8

and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

9. Produce any and all documents relating to the use, toxicity (including but not limited to exposure and health data), characteristics, testing, storage, release, disposal, and/or destruction of PFCs relating to DuPont.

**RESPONSE:** EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

10. Produce any and all documents relating to any and all communications between Environmental Health Research Foundation and any local, state, and/or federal regulatory agency regarding PFCs found in any source including but not limited to water, soil, biologic tissue and/or blood samples.

BEVERIDGE & DIAMONDᴘᴄ

J. Steven Justice, Esq.
October 8, 2007
Page 9

**RESPONSE:** EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

11. Produce any and all risk assessments and/or advice you provided to DuPont relating to actual or suspected health effects, diseases, treatments and/or treatment risks relating to PFCs.

**RESPONSE:** EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 10

require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

12. Produce any and all documents relating to or which reference PFCs that you disseminated, or planned to disseminate, in a public and/or private forum.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

13. Produce any and all documents and tangible things you provided to any and all vendors, contractors and/or consultants you retained and/or consulted in order to commence, perform, and/or complete any and all work relating to PFCs which was done for, at the request of, or on behalf of DuPont.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary**

**BEVERIDGE & DIAMOND** PC

J. Steven Justice, Esq.
October 8, 2007
Page 11

information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are not appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

14. Produce any and all documents you received from any and all vendors, contractors and/or consultants you retained to sample, test and/or analyze PFCs that was done for, at the request of, or on behalf of DuPont.

**RESPONSE: EHRF** directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 12

15. Produce any and all documents relating to any and all action you took to study, analyze, and/or investigate the effects and/or potential effects on humans or animals of any PFC, including any actual or potential health effects on humans or animals from exposure to any product containing or made with a PFC and/or PFC by-products.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

16. Produce any and all documents relating to each and every epidemiological study and/or outcome you designed, conducted and/or analyzed in a real life and/or clinical setting relating to PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within**

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 13

EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

17. Produce any and all documents relating to any and all post-market surveillance programs, studies and/or registries you designed, conducted and/or analyzed relating to PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

18. Produce any and all documents and/or reports relating to any and all analysis and/or interpretation you made of any published or unpublished clinical data relating to PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 14

relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

19. Produce any and all documents, including articles, abstracts, manuscripts, webpages and/or other documents, which you prepared for, at the request of, or on behalf of DuPont for publication, peer review, and/or for any media source.

**RESPONSE:** EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 15

reasonable amount of time. **Subject to and without waiving these objections, see attached documents.**

20. Produce any and all documents you drafted, reviewed, amended and/or analyzed relating to proposed legislation addressing, discussing and/or referencing PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

21. Produce any and all documents relating to your scope of work and payment of same, including but not limited to, service contracts, invoices, letters of intent, and/or engagement letters, between you and DuPont relating to the collection, storage, management, analysis and/or testing of PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6)**

**BEVERIDGE & DIAMOND** PC

J. Steven Justice, Esq.
October 8, 2007
Page 16

seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

22. Produce any and all documents relating to videos, media footage, slideshows and/or software, in any format which was created, developed, improved, studied and/or implemented for, at the request of, or on behalf of DuPont relating to PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 17

## JAA's OBJECTIONS AND RESPONSES TO SPECIFIC DOCUMENT REQUESTS

1. Produce any and all documents and/or ESI in your possession or control relating to the collection, storage, management, analysis and/or testing of samples for PFCs for, at the request of, or on behalf of DuPont.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

2. Produce any and all documents in your possession or control relating to any and all sampling and/or testing of biological material, water and soil, including but not limited to all samples of tissue (whether animal or human), blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments and/or vegetation for PFC for, at the request of, or on behalf of DuPont.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of**

**BEVERIDGE & DIAMOND** PC

J. Steven Justice, Esq.
October 8, 2007
Page 18

confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

3. Produce any and all documents, including but not limited to scientific and clinical literature, you received and/or reviewed at the request of, or on behalf of DuPont relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

# BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 19

4. Produce any and all correspondence between Adams and DuPont which relate to or reference PFCs.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

5. Produce any and all documents or notes that evidence communications between Adam and DuPont that relate to reference PFCs.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to

**BEVERIDGE & DIAMOND** PC

J. Steven Justice, Esq.
October 8, 2007
Page 20

impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

6. Produce any and all communications and records of communications between Adam and any consultant, contractor and/or contract laboratory(ies) relating to the collection, sampling, analysis and/or testing of samples for PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

7. Produce any and all documents relating to work which was done for, at the request of, or on behalf of DuPont relating to DuPont's Washington Works plant in West Virginia and/or the Parkersburg City water supply.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 21

reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is
unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks
to elicit confidential business information, competition-sensitive proprietary information,
and trade secrets; (5) seeks information protected by any rule, agreement, or duty of
confidentiality which precludes or limits the disclosure of such information; (6) seeks
information subject to the attorney-client privilege, attorney work-product doctrine, and
any other applicable privilege or protection; (7) seeks documents that are not within JAA's
"custody, control, or possession" as such terms are defined by the Federal Rules of Civil
Procedure and the applicable case law; (8) seeks information that may be obtained from
publicly available sources or otherwise equally available to plaintiffs; (9) purports to
impose on JAA duties and/or responsibilities over and above what is required by the
Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to
speculate as to the meaning of definitions, instructions, or production requests; (11) would
require JAA to respond to requests for production that are more appropriately directed to
parties and non-parties other than JAA; and (12) seeks production in less than a
reasonable amount of time. Subject to and without waiving these objections, see attached
documents.

8.  Produce any and all documents relating to samples analyzed for PFCs taken by or on behalf
    of DuPont relating to DuPont's Washington Works plant in West Virginia and/or the
    Parkersburg City water supply, whether onsite or off-site, including but not limited to all
    samples of biologic tissue, blood, surface water, groundwater, drinking water, storm water,
    sludge, soils, sediments, and/or vegetation.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in
correspondence dated August 20, 2007 and the general objections above. Furthermore,
JAA objects to this request on the grounds that it: (1) seeks information that is not relevant
to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not
reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is
unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks
to elicit confidential business information, competition-sensitive proprietary information,
and trade secrets; (5) seeks information protected by any rule, agreement, or duty of
confidentiality which precludes or limits the disclosure of such information; (6) seeks
information subject to the attorney-client privilege, attorney work-product doctrine, and
any other applicable privilege or protection; (7) seeks documents that are not within JAA's
"custody, control, or possession" as such terms are defined by the Federal Rules of Civil
Procedure and the applicable case law; (8) seeks information that may be obtained from
publicly available sources or otherwise equally available to plaintiffs; (9) purports to
impose on JAA duties and/or responsibilities over and above what is required by the
Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to
speculate as to the meaning of definitions, instructions, or production requests; (11) would
require JAA to respond to requests for production that are more appropriately directed to

# BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 22

parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

9. Produce any and all documents relating to the use, toxicity (including but not limited to exposure and health data), characteristics, testing, storage, release, disposal, and/or destruction of PFCs relating to DuPont.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

10. Produce any and all documents relating to any and all communications between Adam and any local, state, and/or federal regulatory agency regarding PFCs found in any source including but not limited to water, soil, biologic tissue and/or blood samples.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of

**BEVERIDGE & DIAMOND** PC

J. Steven Justice, Esq.
October 8, 2007
Page 23

confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

11. Produce any and all risk assessments and/or advice you provided to DuPont relating to actual or suspected health effects, diseases, treatments and/or treatment risks relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

# BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 24

12. Produce any and all documents relating to or which reference PFCs that you disseminated, or planned to disseminate, in a public and/or private forum.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

13. Produce any and all documents and tangible things you provided to any and all vendors, contractors and/or consultants you retained and/or consulted in order to commence, perform, and/or complete any and all work relating to PFCs which was done for, at the request of, or on behalf of DuPont.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 25

Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

14. Produce any and all documents you received from any and all vendors, contractors and/or consultants you retained to sample, test and/or analyze PFCs that was done for, at the request of, or on behalf of DuPont.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

15. Produce any and all documents relating to any and all action you took to study, analyze, and/or investigate the effects and/or potential effects on humans or animals of any PFC, including any actual or potential health effects on humans or animals from exposure to any product containing or made with a PFC and/or PFC by-products.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 26

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

16. Produce any and all documents relating to each and every epidemiological study and/or outcome you designed, conducted and/or analyzed in a real life and/or clinical setting relating to PFCs.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to**

**BEVERIDGE & DIAMOND**pc

J. Steven Justice, Esq.
October 8, 2007
Page 27

speculate as to the meaning of definitions, instructions, or production requests; (11) would
require JAA to respond to requests for production that are more appropriately directed to
parties and non-parties other than JAA; and (12) seeks production in less than a
reasonable amount of time. Subject to and without waiving these objections, see attached
documents.

17. Produce any and all documents relating to any and all post-market surveillance programs,
    studies and/or registries you designed, conducted and/or analyzed relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in
correspondence dated August 20, 2007 and the general objections above. Furthermore,
JAA objects to this request on the grounds that it: (1) seeks information that is not relevant
to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not
reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is
unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks
to elicit confidential business information, competition-sensitive proprietary information,
and trade secrets; (5) seeks information protected by any rule, agreement, or duty of
confidentiality which precludes or limits the disclosure of such information; (6) seeks
information subject to the attorney-client privilege, attorney work-product doctrine, and
any other applicable privilege or protection; (7) seeks documents that are not within JAA's
"custody, control, or possession" as such terms are defined by the Federal Rules of Civil
Procedure and the applicable case law; (8) seeks information that may be obtained from
publicly available sources or otherwise equally available to plaintiffs; (9) purports to
impose on JAA duties and/or responsibilities over and above what is required by the
Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to
speculate as to the meaning of definitions, instructions, or production requests; (11) would
require JAA to respond to requests for production that are more appropriately directed to
parties and non-parties other than JAA; and (12) seeks production in less than a
reasonable amount of time. Subject to and without waiving these objections, see attached
documents.

18. Produce any and all documents and/or reports relating to any and all analysis and/or
    interpretation you made of any published or unpublished clinical data relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in
correspondence dated August 20, 2007 and the general objections above. Furthermore,
JAA objects to this request on the grounds that it: (1) seeks information that is not relevant
to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not
reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is
unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks
to elicit confidential business information, competition-sensitive proprietary information,
and trade secrets; (5) seeks information protected by any rule, agreement, or duty of

**BEVERIDGE & DIAMOND**℗ᴄ

J. Steven Justice, Esq.
October 8, 2007
Page 28

confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

19. Produce any and all documents, including articles, abstracts, manuscripts, webpages and/or other documents, which you prepared for, at the request of, or on behalf of DuPont for publication, peer review, and/or for any media source.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 29

20. Produce any and all documents you drafted, reviewed, amended and/or analyzed relating to proposed legislation addressing, discussing and/or referencing PFCs.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

21. Produce any and all documents relating to your scope of work and payment of same, including but not limited to, service contracts, invoices, letters of intent, and/or engagement letters, between you and DuPont relating to the collection, storage, management, analysis and/or testing of PFCs.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil**

**BEVERIDGE & DIAMOND** PC

J. Steven Justice, Esq.
October 8, 2007
Page 30

Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

22. Produce any and all documents relating to videos, media footage, slideshows and/or software, in any format which was created, developed, improved, studied and/or implemented for, at the request of, or on behalf of DuPont relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 31

Sincerely,

Nadira Clarke
Of Counsel

cc:   John Heinze (w/ enclosures)

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
October 8, 2007
Page 32


bcc:  Rowan C. Seidel
      Thomas Richichi


658573v1  Washington 0000DC

# EXHIBIT 3



Nadira Clarke
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005-3311
Direct: (202) 789-6069
Fax: (202) 789-6190
nclarke@bdlaw.com

November 13, 2007

**VIA FEDEX**

J. Steven Justice, Esq.
Taft, Stettinius & Hollister, LLP
110 North Main Street, Suite 900
Dayton, OH 45402

     Re:   *Rhodes, et al. v. E.I. duPont De Nemours and Co.*
          Civil Action No. 06-1810 (S.D. WV)
          *Rowe, et al. v. E.I. duPont De Nemours and Co.*
          Civil Action No. 06-1810-RMB-AMD (D. NJ)

Dear Mr. Justice:

      In response to the third-party subpoenas issued by plaintiffs in the above-referenced proceedings on August 3, 2007, John Adams Associates, Inc. ("JAA") and the Environmental Health Research Foundation ("EHRF") hereby produce two (2) DVDs containing bate-stamp images of the responsive electronically stored information ("ESI") retrieved from the computers of JAA and EHRF.[1] Previously, in correspondence dated August 20, 2007 (authored by JAA and EHRF's previous counsel) and October 8, 2007, JAA and EHRF objected to the subpoenas on a number of grounds, including the unnecessary breadth of the requests, and the undue production expense. You were advised that notwithstanding the objections, and without waiving them, we would produce all responsive documents and ESI.

      The responsive hard-copy documents were produced to plaintiffs on October 8, 2007, at the expense of JAA and EHRF. Pursuant to our written agreement on October 24, 2007, the

---

     [1] In addition to the two DVDs produced today, JAA and EHRF will be producing CDs containing documents from their hardcopy files. These documents were originally withheld due to questions of attorney-client privilege. It is my understanding that SPI does not wish to assert privilege on these documents. These documents will be produced in their entirety. It is also my understanding that 3M does not wish to assert privilege as to all of the documents withheld. 3M will be contacting you with a privilege log for the documents withheld. Due to restrictions on IT resources these CDs will be produced in the three days.

EXHIBIT
3
PENGAD 800-631-6989

BEVERIDGE & DIAMOND, PC

J. Steven Justice, Esq.
November 13, 2007
Page 2

responsive ESI provided herewith is being produced with the express understanding that plaintiffs will provide reimbursement for half of the Information Technology (IT) costs and legal review costs associated with the production. In light of the rapidly approaching discovery deadline in the above-referenced proceedings you requested that JAA and EHRF produce complete their response to the subpoenas, including all responsive ESI, as quickly as possible. With those concerns in mind, I agreed to produce the ESI before the final costs are calculated, and without receipt of up-front payment. I will provide an invoice containing documentation of the relevant costs within fourteen days. I trust that you will act in good faith and provide payment for one-half of those costs within thirty days of receipt of the invoice.

As you are aware, the ESI maintained by JAA and EHRF constituted an enormous amount of information. Using a key word search of plaintiffs' choice, 17,350 documents were identified as potentially responsive. JAA and EHRF's production provided herewith contains .pdf images of all documents generated by the key word search which we deemed responsive. As agreed, the ESI is not being provided in native format, but instead in .pdf images.

All privileged documents responsive to the third-party subpoenas have been removed from this production and will be listed in a separate privilege log and provided at a later date by the entity asserting the privilege. Documents which constitutes confidential business information are marked as such and are produced pursuant to, and consistent with, the requirements set forth in the respective confidentiality orders: the Discovery Confidentiality Order, dated March 5, 2007, in *Rowe, et al. v. E.I. duPont De Nemours and Co.* (D. NJ); and the Protective Order, dated November 28, 2006, in *Rhodes, et al. v. E.I. duPont De Nemours and Co.* (S.D. WV). As previously agreed, in identifying confidential documents, we have generally relied on the definition of "confidential information" contained in the Discovery Confidentiality Order in the *Rowe* case. While the protective order in the *Rhodes* case does not specifically refer to third-parties, we have also agreed that the terms obviously extend to JAA and EHRF. The inadvertent production or disclosure of any privileged, confidential or otherwise protected document shall not be deemed either a general waiver of privilege, confidentiality or work product protection as to the document inadvertently produced or disclosed.

In producing information responsive to the third-party subpoenas, JAA and EHRF re-assert the objections set forth in their correspondence dated August 20, 2007 and October 8, 2007. They further objects as follows:

## GENERAL OBJECTIONS

1. The subpoenas on JAA and EHRF are overly broad, unreasonably burdensome and onerous, and not designed to lead to the discovery of admissible evidence in the proceedings at issue.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 3

2. The subpoenas seek information protected by the attorney-client privilege, work product privilege, executive privilege, confidential business information, or other applicable privilege.

3. JAA and EHRF object to the subpoenas to the extent that they seek confidential business information and trade secrets.

4. JAA and EHRF object to the subpoenas to the extent that they violate Fed. R. Civ. P. 26(b)(1).

5. JAA and EHRF object to use of the term "PFCs" in the subpoenas as overly broad, confusing, and ambiguous.

6. JAA objects each of the definitions and requests for production contained in the subpoenas as JAA was not retained by E.I. du Pont de Nemours and Co. as described in the subpoenas.[2]

7. JAA and EHRF reserve the right to raise additional objections to the definitions and production requests contained in plaintiffs' subpoenas, and to amend and/or supplement the objections set forth herein.

## EHRF's OBJECTIONS AND RESPONSES TO SPECIFIC DOCUMENT REQUESTS

1. Produce any and all documents and/or ESI in your possession or control relating to the collection, storage, management, analysis and/or testing of samples for PFCs for, at the request of, or on behalf of DuPont.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client**

---

[2] This objection merits emphasis as plaintiffs have repeatedly misunderstood JAA and EHRF's relationship with Dupont.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 4

privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

2. Produce any and all documents in your possession or control relating to any and all sampling and/or testing of biological material, water and soil, including but not limited to all samples of tissue (whether animal or human), blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments and/or vegetation for PFC for, at the request of, or on behalf of DuPont.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

3. Produce any and all documents, including but not limited to scientific and clinical literature, you received and/or reviewed at the request of, or on behalf of DuPont relating to PFCs.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 5

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

4. Produce any and all correspondence between Environmental Health Research Foundation and DuPont which relate to or reference PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or**

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 6

production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

5. Produce any and all documents or notes that evidence communications between Environmental Health Research Foundation and DuPont that relate to reference PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

6. Produce any and all communications and records of communications between Environmental Health Research Foundation and any consultant, contractor and/or contract laboratory(ies) relating to the collection, sampling, analysis and/or testing of samples for PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information

**BEVERIDGE & DIAMOND** pc

J. Steven Justice, Esq.
November 13, 2007
Page 7

protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

7.  Produce any and all documents relating to work which was done for, at the request of, or on behalf of DuPont relating to DuPont's Chambers Works plant in New Jersey and/or any associated water supply.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonable or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

8.  Produce any and all documents relating to samples analyzed for PFCs taken by or on behalf of DuPont relating to DuPont's Chamber Works plant in New Jersey and/or any associated

BEVERIDGE & DIAMOND pc

J. Steven Justice, Esq.
November 13, 2007
Page 8

water supply, whether onsite or off-site, including but not limited to all samples of biologic
tissue, blood, surface water, groundwater, drinking water, storm water, sludge, soils,
sediments, and/or vegetation.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised
in correspondence dated August 20, 2007 and October 8, 2007 and the general objections
above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks
information that is not relevant to, or reasonably calculated to lead to the discovery of,
admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague,
ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or
disruptive of EHRF's operations; (4) seeks to elicit confidential business information,
competition-sensitive proprietary information, and trade secrets; (5) seeks information
protected by any rule, agreement, or duty of confidentiality which precludes or limits the
disclosure of such information; (6) seeks information subject to the attorney-client
privilege, attorney work-product doctrine, and any other applicable privilege or
protection; (7) seeks documents that are not within EHRF's "custody, control, or
possession" as such terms are defined by the Federal Rules of Civil Procedure and the
applicable case law; (8) seeks information that may be obtained from publicly available
sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties
and/or responsibilities over and above what is required by the Federal Rules of Civil
Procedure and applicable case law; (10) would require EHRF to speculate as to the
meaning of definitions, instructions, or production requests; (11) would require EHRF to
respond to requests for production that are more appropriately directed to parties and
non-parties other than EHRF; and (12) seeks production in less than a reasonable amount
of time. Subject to and without waiving these objections, see attached documents.**

9. Produce any and all documents relating to the use, toxicity (including but not limited to
exposure and health data), characteristics, testing, storage, release, disposal, and/or
destruction of PFCs relating to DuPont.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised
in correspondence dated August 20, 2007 and October 8, 2007 and the general objections
above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks
information that is not relevant to, or reasonably calculated to lead to the discovery of,
admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague,
ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or
disruptive of EHRF's operations; (4) seeks to elicit confidential business information,
competition-sensitive proprietary information, and trade secrets; (5) seeks information
protected by any rule, agreement, or duty of confidentiality which precludes or limits the
disclosure of such information; (6) seeks information subject to the attorney-client
privilege, attorney work-product doctrine, and any other applicable privilege or
protection; (7) seeks documents that are not within EHRF's "custody, control, or**

BEVERIDGE & DIAMOND rc

J. Steven Justice, Esq.
November 13, 2007
Page 9

possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time.  Subject to and without waiving these objections, see attached documents.

10. Produce any and all documents relating to any and all communications between Environmental Health Research Foundation and any local, state, and/or federal regulatory agency regarding PFCs found in any source including but not limited to water, soil, biologic tissue and/or blood samples.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and the October 8, 2007 and general objections above.  Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time.  Subject to and without waiving these objections, see attached documents.

11. Produce any and all risk assessments and/or advice you provided to DuPont relating to actual or suspected health effects, diseases, treatments and/or treatment risks relating to PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 10

above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks
information that is not relevant to, or reasonably calculated to lead to the discovery of,
admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague,
ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or
disruptive of EHRF's operations; (4) seeks to elicit confidential business information,
competition-sensitive proprietary information, and trade secrets; (5) seeks information
protected by any rule, agreement, or duty of confidentiality which precludes or limits the
disclosure of such information; (6) seeks information subject to the attorney-client
privilege, attorney work-product doctrine, and any other applicable privilege or
protection; (7) seeks documents that are not within EHRF's "custody, control, or
possession" as such terms are defined by the Federal Rules of Civil Procedure and the
applicable case law; (8) seeks information that may be obtained from publicly available
sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties
and/or responsibilities over and above what is required by the Federal Rules of Civil
Procedure and applicable case law; (10) would require EHRF to speculate as to the
meaning of definitions, instructions, or production requests; (11) would require EHRF to
respond to requests for production that are more appropriately directed to parties and
non-parties other than EHRF; and (12) seeks production in less than a reasonable amount
of time. Subject to and without waiving these objections, see attached documents.

12. Produce any and all documents relating to or which reference PFCs that you disseminated, or
planned to disseminate, in a public and/or private forum.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised
in correspondence dated August 20, 2007 and October 8, 2007 and the general objections
above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks
information that is not relevant to, or reasonably calculated to lead to the discovery of,
admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague,
ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or
disruptive of EHRF's operations; (4) seeks to elicit confidential business information,
competition-sensitive proprietary information, and trade secrets; (5) seeks information
protected by any rule, agreement, or duty of confidentiality which precludes or limits the
disclosure of such information; (6) seeks information subject to the attorney-client
privilege, attorney work-product doctrine, and any other applicable privilege or
protection; (7) seeks documents that are not within EHRF's "custody, control, or
possession" as such terms are defined by the Federal Rules of Civil Procedure and the
applicable case law; (8) seeks information that may be obtained from publicly available
sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties
and/or responsibilities over and above what is required by the Federal Rules of Civil
Procedure and applicable case law; (10) would require EHRF to speculate as to the
meaning of definitions, instructions, or production requests; (11) would require EHRF to
respond to requests for production that are more appropriately directed to parties and

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 11

non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

13. Produce any and all documents and tangible things you provided to any and all vendors, contractors and/or consultants you retained and/or consulted in order to commence, perform, and/or complete any and all work relating to PFCs which was done for, at the request of, or on behalf of DuPont.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

14. Produce any and all documents you received from any and all vendors, contractors and/or consultants you retained to sample, test and/or analyze PFCs that was done for, at the request of, or on behalf of DuPont.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 12

protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

15. Produce any and all documents relating to any and all action you took to study, analyze, and/or investigate the effects and/or potential effects on humans or animals of any PFC, including any actual or potential health effects on humans or animals from exposure to any product containing or made with a PFC and/or PFC by-products.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 13

16. Produce any and all documents relating to each and every epidemiological study and/or outcome you designed, conducted and/or analyzed in a real life and/or clinical setting relating to PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

17. Produce any and all documents relating to any and all post-market surveillance programs, studies and/or registries you designed, conducted and/or analyzed relating to PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the**

BEVERIDGE & DIAMOND pc

J. Steven Justice, Esq.
November 13, 2007
Page 14

applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

18. Produce any and all documents and/or reports relating to any and all analysis and/or interpretation you made of any published or unpublished clinical data relating to PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

19. Produce any and all documents, including articles, abstracts, manuscripts, webpages and/or other documents, which you prepared for, at the request of, or on behalf of DuPont for publication, peer review, and/or for any media source.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of,

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 15

admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

20. Produce any and all documents you drafted, reviewed, amended and/or analyzed relating to proposed legislation addressing, discussing and/or referencing PFCs.

RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 16

21. Produce any and all documents relating to your scope of work and payment of same, including but not limited to, service contracts, invoices, letters of intent, and/or engagement letters, between you and DuPont relating to the collection, storage, management, analysis and/or testing of PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

22. Produce any and all documents relating to videos, media footage, slideshows and/or software, in any format which was created, developed, improved, studied and/or implemented for, at the request of, or on behalf of DuPont relating to PFCs.

**RESPONSE: EHRF directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, EHRF objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of EHRF's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or**

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 17

protection; (7) seeks documents that are not within EHRF's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on EHRF duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require EHRF to speculate as to the meaning of definitions, instructions, or production requests; (11) would require EHRF to respond to requests for production that are more appropriately directed to parties and non-parties other than EHRF; and (12) seeks production in less than a reasonable amount of time.  Subject to and without waiving these objections, see attached documents.

## JAA's OBJECTIONS AND RESPONSES TO SPECIFIC DOCUMENT REQUESTS

1. Produce any and all documents and/or ESI in your possession or control relating to the collection, storage, management, analysis and/or testing of samples for PFCs for, at the request of, or on behalf of DuPont.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above.  Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

BEVERIDGE & DIAMOND ℙᶜ

J. Steven Justice, Esq.
November 13, 2007
Page 18

2.  Produce any and all documents in your possession or control relating to any and all sampling and/or testing of biological material, water and soil, including but not limited to all samples of tissue (whether animal or human), blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments and/or vegetation for PFC for, at the request of, or on behalf of DuPont.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

3.  Produce any and all documents, including but not limited to scientific and clinical literature, you received and/or reviewed at the request of, or on behalf of DuPont relating to PFCs.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or**

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 19

protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

4. Produce any and all correspondence between Adams and DuPont which relate to or reference PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

5. Produce any and all documents or notes that evidence communications between Adam and DuPont that relate to reference PFCs.

BEVERIDGE & DIAMOND pc

J. Steven Justice, Esq.
November 13, 2007
Page 20

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

6. Produce any and all communications and records of communications between Adam and any consultant, contractor and/or contract laboratory(ies) relating to the collection, sampling, analysis and/or testing of samples for PFCs.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 21

and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

7. Produce any and all documents relating to work which was done for, at the request of, or on behalf of DuPont relating to DuPont's Washington Works plant in West Virginia and/or the Parkersburg City water supply.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

8. Produce any and all documents relating to samples analyzed for PFCs taken by or on behalf of DuPont relating to DuPont's Washington Works plant in West Virginia and/or the Parkersburg City water supply, whether onsite or off-site, including but not limited to all samples of biologic tissue, blood, surface water, groundwater, drinking water, storm water, sludge, soils, sediments, and/or vegetation.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of,

# BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 22

admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

9. Produce any and all documents relating to the use, toxicity (including but not limited to exposure and health data), characteristics, testing, storage, release, disposal, and/or destruction of PFCs relating to DuPont.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 23

other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

10. Produce any and all documents relating to any and all communications between Adam and any local, state, and/or federal regulatory agency regarding PFCs found in any source including but not limited to water, soil, biologic tissue and/or blood samples.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

11. Produce any and all risk assessments and/or advice you provided to DuPont relating to actual or suspected health effects, diseases, treatments and/or treatment risks relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 24

privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

12. Produce any and all documents relating to or which reference PFCs that you disseminated, or planned to disseminate, in a public and/or private forum.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

13. Produce any and all documents and tangible things you provided to any and all vendors, contractors and/or consultants you retained and/or consulted in order to commence, perform,

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 25

and/or complete any and all work relating to PFCs which was done for, at the request of, or on behalf of DuPont.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

14. Produce any and all documents you received from any and all vendors, contractors and/or consultants you retained to sample, test and/or analyze PFCs that was done for, at the request of, or on behalf of DuPont.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case**

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 26

law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

15. Produce any and all documents relating to any and all action you took to study, analyze, and/or investigate the effects and/or potential effects on humans or animals of any PFC, including any actual or potential health effects on humans or animals from exposure to any product containing or made with a PFC and/or PFC by-products.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

16. Produce any and all documents relating to each and every epidemiological study and/or outcome you designed, conducted and/or analyzed in a real life and/or clinical setting relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections

**BEVERIDGE & DIAMOND** PC

above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

17. Produce any and all documents relating to any and all post-market surveillance programs, studies and/or registries you designed, conducted and/or analyzed relating to PFCs.

**RESPONSE:** JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 28

other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

18. Produce any and all documents and/or reports relating to any and all analysis and/or interpretation you made of any published or unpublished clinical data relating to PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

19. Produce any and all documents, including articles, abstracts, manuscripts, webpages and/or other documents, which you prepared for, at the request of, or on behalf of DuPont for publication, peer review, and/or for any media source.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 29

privilege, attorney work-product doctrine, and any other applicable privilege or
protection; (7) seeks documents that are not within JAA's "custody, control, or possession"
as such terms are defined by the Federal Rules of Civil Procedure and the applicable case
law; (8) seeks information that may be obtained from publicly available sources or
otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or
responsibilities over and above what is required by the Federal Rules of Civil Procedure
and applicable case law; (10) would require JAA to speculate as to the meaning of
definitions, instructions, or production requests; (11) would require JAA to respond to
requests for production that are more appropriately directed to parties and non-parties
other than JAA; and (12) seeks production in less than a reasonable amount of time.
Subject to and without waiving these objections, see attached documents.


20. Produce any and all documents you drafted, reviewed, amended and/or analyzed relating to
    proposed legislation addressing, discussing and/or referencing PFCs.

RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in
correspondence dated August 20, 2007 and October 8, 2007 and the general objections
above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks
information that is not relevant to, or reasonably calculated to lead to the discovery of,
admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague,
ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or
disruptive of JAA's operations; (4) seeks to elicit confidential business information,
competition-sensitive proprietary information, and trade secrets; (5) seeks information
protected by any rule, agreement, or duty of confidentiality which precludes or limits the
disclosure of such information; (6) seeks information subject to the attorney-client
privilege, attorney work-product doctrine, and any other applicable privilege or
protection; (7) seeks documents that are not within JAA's "custody, control, or possession"
as such terms are defined by the Federal Rules of Civil Procedure and the applicable case
law; (8) seeks information that may be obtained from publicly available sources or
otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or
responsibilities over and above what is required by the Federal Rules of Civil Procedure
and applicable case law; (10) would require JAA to speculate as to the meaning of
definitions, instructions, or production requests; (11) would require JAA to respond to
requests for production that are more appropriately directed to parties and non-parties
other than JAA; and (12) seeks production in less than a reasonable amount of time.
Subject to and without waiving these objections, see attached documents.

21. Produce any and all documents relating to your scope of work and payment of same,
    including but not limited to, service contracts, invoices, letters of intent, and/or engagement

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 30

letters, between you and DuPont relating to the collection, storage, management, analysis and/or testing of PFCs.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.**

22. Produce any and all documents relating to videos, media footage, slideshows and/or software, in any format which was created, developed, improved, studied and/or implemented for, at the request of, or on behalf of DuPont relating to PFCs.

**RESPONSE: JAA directs plaintiffs to every objection to plaintiffs' subpoenas as raised in correspondence dated August 20, 2007 and October 8, 2007 and the general objections above. Furthermore, JAA objects to this request on the grounds that it: (1) seeks information that is not relevant to, or reasonably calculated to lead to the discovery of, admissible evidence; (2) is not reasonably limited in scope, is overly broad, vague, ambiguous, and confusing; (3) is unreasonably or unduly burdensome, onerous, or disruptive of JAA's operations; (4) seeks to elicit confidential business information, competition-sensitive proprietary information, and trade secrets; (5) seeks information protected by any rule, agreement, or duty of confidentiality which precludes or limits the disclosure of such information; (6) seeks information subject to the attorney-client privilege, attorney work-product doctrine, and any other applicable privilege or protection; (7) seeks documents that are not within JAA's "custody, control, or possession" as such terms are defined by the Federal Rules of Civil Procedure and the applicable case**

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 13, 2007
Page 31

law; (8) seeks information that may be obtained from publicly available sources or otherwise equally available to plaintiffs; (9) purports to impose on JAA duties and/or responsibilities over and above what is required by the Federal Rules of Civil Procedure and applicable case law; (10) would require JAA to speculate as to the meaning of definitions, instructions, or production requests; (11) would require JAA to respond to requests for production that are more appropriately directed to parties and non-parties other than JAA; and (12) seeks production in less than a reasonable amount of time. Subject to and without waiving these objections, see attached documents.

Sincerely,

Nadira Clarke
Of Counsel

cc:   John Heinze (w/ enclosures)
      John Adams (w/ enclosures)
      Rob Bilott (w/enclosures)

# EXHIBIT 4



**BEVERIDGE**
**& DIAMOND** PC

Nadira Clarke
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005-3311
Direct: (202) 789-6069
Fax: (202) 789-6190
nclarke@bdlaw.com

November 16, 2007

**VIA FEDEX**

J. Steven Justice, Esq.
Taft, Stettinius & Hollister, LLP
110 North Main Street, Suite 900
Dayton, OH 45402

     Re:    *Rhodes, et al. v. E.I. duPont De Nemours and Co.*
            Civil Action No. 06-1810 (S.D. WV)
            *Rowe, et al. v. E.I. duPont De Nemours and Co.*
            Civil Action No. 06-1810-RMB-AMD (D. NJ)

Dear Mr. Justice:

     Enclosed is a supplemental production of documents in response to the August 3, 2007 subpoenas served on John Adams Associates, Inc. ("JAA") and Environmental Health Research Foundation ("EHRF"). These documents consist of both hard-copy documents from the files and electronically stored information retrieved from the computers of JAA and EHRF. These documents were originally withheld from the original production due to attorney-client privilege concerns on behalf of 3M and the Society of Plastics Industry ("SPI"). We understand that 3M and SPI are not claiming privilege as to these documents. There are a number of document for which 3M will be asserting privilege. As soon as we receive a log of those documents from 3M's counsel we will produce the log to you. We expect to receive the log no later than Monday, November 19, 2007 and will forward it to you the same day we receive it.



EXHIBIT
4

NOV 1 9 2007

BEVERIDGE & DIAMOND PC

J. Steven Justice, Esq.
November 16, 2007
Page 2

We incorporate by reference all defenses and objections made during the November 13, 2007 and October 8, 2007 productions as if fully restated here.

Thank you for understanding the considerable amount of time it took to review and produce a production this size. As far as we are aware, these documents complete JAA's and EHRF's obligations under the August 3, 2007 subpoenas.

Sincerely,

Nadira Clarke
Of Counsel

cc:    John Heinze (w/ enclosures)
       John Adams (w/ enclosures)
       Rob Bilott (w/enclosures)

# EXHIBIT 5



BEVERIDGE
& DIAMOND PC

Nadira Clarke
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005-3311
Direct: (202) 789-6069
Fax: (202) 789-6190
nclarke@bdlaw.com

November 20, 2007

**VIA FEDEX**

J. Steven Justice, Esq.
Taft, Stettinius & Hollister, LLP
110 North Main Street, Suite 900
Dayton, OH 45402

> Re:   *Rhodes, et al. v. E.I. duPont De Nemours and Co.*
>        Civil Action No. 06-1810 (S.D. WV)
>        *Rowe, et al. v. E.I. duPont De Nemours and Co.*
>        Civil Action No. 06-1810-RMB-AMD (D. NJ)

Dear Mr. Justice:

Enclosed please find correspondence and a privilege log pertaining to approximately 100 hard-copy and electronic documents in the possession of John Adams Associates, Inc. ("JAA") and the Environmental Health Research Foundation ("EHRF"), and which are responsive to the third-party subpoenas in the above-referenced proceedings, dated August 3, 2007. JAA and EHRF provided counsel for 3M Company the opportunity to review all hard copy documents and electronically stored information (ESI) responsive to the subpoenas in order to determine whether any documents were subject to the attorney-client or work product privilege. The attached privilege log sets forth those documents which 3M Company intends to claim as privileged. The attached correspondence dated November 19, 2007, provides additional information related to the documents and directs JAA and EHRF to produce the privilege log to counsel for plaintiffs.



EXHIBIT
5

PENGAD 800-631-6989

NOV 2 1 2007

BEVERIDGE & DIAMONDᴘᴄ

J. Steven Justice, Esq.
November 20, 2007
Page 2

     With this final production of the privilege log related to 3M Company documents, JAA and EHRF have completed their response to the subpoenas. A copy of the invoice outlining the charges for which you agreed to provide reimbursement will be provided shortly. Please do not hesitate to contact me if you have any questions.

                       Sincerely,

                       Nadira Clarke
                       Of Counsel

cc:   John Heinze (w/attachment)
       John Adams (w/attachment)

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Avenue, N.W
Washington, DC 20006-4706
www.kslaw.com

Direct Dial: (202) 626-3743
Direct Fax: (202) 626-3737
KRhyne@kslaw.com

November 19, 2007

**VIA COURIER**

Nadira Clarke, Esq.
Beveridge & Diamond
1350 I Street, NW
Suite 700
Washington, DC 20005-3311
(202) 789-6069

Re:    **Privilege Log of 3M Company for John Adams Associates Inc. Response to
       Subpoenas in *Rhodes, et al. v. E.I. duPont De Nemours and Co.*, Civil Action
       No. 06-1810 (S.D. WV), and *Rowe, et al. v. E.I. duPont de De Nemours and
       Co.*, Civil Action No. 06-1810-RMB-AMD (D. NJ)**

Dear Ms. Clarke:

On behalf of our client 3M Company, thank you for giving us the opportunity to review
those documents that relate to 3M in the response of John Adams Associates Inc. to third party
subpoenas issued in the *Rhodes* and *Rowe* litigation against DuPont.

As you know, 3M is not a party to those cases, and objects to the use of subpoenas in
those cases as a means to conduct discovery related to 3M. The discovery sought with respect to
3M is not relevant in either of those cases. Rather, it appears to be an improper effort by the law
firms suing 3M in an unrelated case pending in state court in Minnesota, *Maslowski, et al. v. 3M*,
No. C2-04-6309 (Washington County, Minnesota), to conduct discovery related to 3M having
nothing to do with the *Rhodes* and *Rowe* litigation.

Nevertheless, we understand that your client is responding to the subpoenas, and we
appreciate your consideration in allowing us to review the John Adams production for potential
privilege and attorney work product claims by 3M.

Outside counsel for 3M retained John Adams Associates in September 1998, and has
assisted both inside and outside counsel to 3M in rendering legal advice and preparing for
litigation and regulatory proceedings regarding fluorochemicals. We have identified
approximately 100 documents in the hardcopy documents and electronically stored information
you have made available to us through November 16, 2007 with respect to which 3M asserts
attorney-client privilege or attorney work product claims. We ask that you withhold these
documents from production on that basis. The individual documents are identified on the

Nadira Clarke, Esq.
November 19, 2007
Page 2

enclosed privilege log marked as Attachment A to this letter.   We ask that you please provide this letter and the enclosed privilege log in lieu of the listed documents in response to the subpoena.

      Please let me know if you have any questions.

                            Sincerely yours,

                            Katherine L. Rhyne
                            Counsel for 3M Company

Enclosure

cc:  Cooper S. Ashley, Esq.
     Michael C. McCarthy, Esq.
        (Counsel for 3M)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| *In Re*: **John Adam Associates, Inc.**<br>   John Adams Associates Inc.<br>      Subpoena Recipient,<br>      850 National Press Building<br>      Washington, D.C. 20045<br><br>   3M Company,<br>      Real Party in Interest,<br>      3M Center<br>      St. Paul, MN 55144 | )<br>)<br>)<br>) **Civil Action No. 1:07-mc-00577 (RBW)**<br>)<br>)<br>)<br>)<br>)<br>) **Hon. Reggie B. Walton**<br>)<br>) |

## ORDER

Upon consideration of 3M's Motion to Intervene pursuant to FED. R. CIV. P. 24 and Local

Civil Rule 7(j), it is hereby ordered that 3M may intervene in the above-captioned action.


DATED:  This ____ day of _____ 2008



_____
Hon. Reggie B. Walton

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| *In Re*: **John Adams Associates Inc.** | ) |
|  | ) |
|  | ) |
| John Adams Associates Inc. | ) |
| Subpoena Recipient | ) |
| 655 National Press Building | ) |
| Washington, DC 20045 | ) |
|  | ) |
|  | ) |
| 3M Company | ) |
| Real Party in Interest | )  **Civil Action No. 1:07-mc-00577 (RBW)** |
| 3M Center | ) |
| St. Paul, MN 55144 | )  Judge Reggie B. Walton |
|  | ) |
|  | ) |

RECEIVED

JAN 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## JOINT OPPOSITION OF JOHN ADAMS ASSOCIATES INC.
## AND 3M COMPANY
## TO PLAINTIFFS' MOTION TO COMPEL
## PRODUCTION OF PRIVILEGED DOCUMENTS

Subpoena recipient John Adams Associates, Inc. ("JAA") and real party in interest 3M

Company ("3M") submit this joint opposition to Plaintiffs' motion to compel production of

privileged documents.[1]  JAA, having been served by Plaintiffs with third-party subpoenas arising

out of litigation brought by them in federal district court in New Jersey and West Virginia

produced over 17,000 documents in response to two subpoenas issued through this Court.  JAA

withheld from production less than 100 documents which Plaintiffs now seek in their motion --

documents that were created or obtained by JAA in the course of its work for counsel

representing 3M in other anticipated litigation and contested regulatory matters.  Though

Plaintiffs' motion to compel is solely addressed to JAA,. the documents are (1) protected

attorney work product; and (2) subject to an attorney-client privilege held by 3M.  Given that the

---

[1] Counsel for 3M and the Plaintiffs have met, as required, in an attempt to resolve this dispute, but have been unable
to reach a resolution.

claimed privileges belong to 3M it has joined JAA in filing this joint opposition to Plaintiffs'
motion

Without having provided any explanation for their challenge to 3M's claim or making
any showing of substantial need necessary to overcome the work product protection Plaintiffs
ask the Court to proceed directly to *in camera* review of the documents on the privilege log
prepared by 3M. While the Court certainly has the discretion to engage in such a review, the
question presented by this Motion is whether Plaintiffs have made the requisite showing of
substantial need or hardship necessary to support the exercise of that discretion to conduct such a
review.

3M's privilege log – as substantiated by the Affidavits of John R. Allison, Esq. and John
E. Heinze, Ph.D., filed herewith leave no doubt that JAA was retained by 3M in anticipation of
litigation, that the contested documents fall under the work product doctrine, and provide ample
basis on which to evaluate 3M's and JAA's claims that the documents should not be disclosed to
Plaintiffs. Because Plaintiffs have made a showing of substantial need for the protected
documents, 3M respectfully submits that the Court should reject Plaintiffs' proposed approach
for evaluating the privilege and work-product claims and, based upon review of 3M's privilege
log and the supporting affidavits, deny Plaintiffs' Motion on the merits as well.

## BACKGROUND

Plaintiffs have sued DuPont in the District of New Jersey (in the *Rowe* case) and the
Southern District of West Virginia (in the *Rhodes* case) in connection with the presence of
perfluorochemicals in drinking water near DuPont manufacturing facilities. Neither JAA nor 3M
is a party to either lawsuit.

Plaintiffs issued a number of third-party subpoenas in both lawsuits. Their two subpoenas to JAA, issued through this Court, sought documents related to JAA's work for DuPont related to perfluorochemicals. There is no reason to believe that JAA is or will be a fact witness in the litigation underlying the subpoenas. JAA has not done any work related to perfluorochemicals for DuPont directly, indeed the only connection between JAA and the subject litigation is the fact that it has done work for the Fluoropolymer Manufacturers Group ("FMG"), of which DuPont is a member. (Heinze Aff. ¶¶ 49-50.) JAA produced more than 17,000 documents related to its work for FMG. (*Id.* ¶ 51-52.) JAA did not withhold any documents related to its work for FMG on the grounds of attorney-client privilege or work product. (*Id.* ¶ 50.)

As explained in detail in both the Heinze and Allison Affidavits, outside counsel for 3M retained JAA in 1998 as a litigation consultant to assist in preparing for anticipated regulatory proceedings and litigation related to perfluorochemicals, and JAA had assisted 3M in-house and outside counsel pursuant to that engagement. To the extent the subpoenas sought documents related to JAA's work on perfluorochemicals and was not limited to work done for DuPont, it called for the production by JAA of documents that had been prepared or received in connection with JAA's work for 3M counsel. JAA had signed a confidentiality agreement in connection with its retention by 3M legal counsel. (*See* Heinze Aff. ¶ 7.) Accordingly, when JAA realized that its production would include 3M documents, it notified 3M's counsel and permitted 3M an opportunity to assert its claims of privilege and work product.

JAA produced all nonprivileged documents (more than 17,000) related to its work for 3M regarding perfluorochemicals. At 3M's request, JAA initially withheld 106 documents from production, which were described in detail on a privilege log produced by 3M, and provided to

Plaintiffs as part of JAA's response to the subpoena.. Counsel for the Plaintiffs and for 3M met and conferred about the documents on the privilege log on December 10, 2007. (Counsel for JAA did not participate.) 3M removed seven entries from the log following the meet-and-confer, and served an amended privilege log listing 99 documents. A copy of the 3M amended privilege log is attached to Dr. Heinze's Affidavit. Counsel for Plaintiffs indicated that they did not intend to challenge a handful of documents, but their motion appears to challenge the entire log. During the meet and confer, Plaintiffs' counsel declined to explain how the 3M documents were relevant to the lawsuits against DuPont.

**ARGUMENT**

JAA and 3M cannot discern Plaintiffs' basis for challenging the privilege log prepared by 3M. Plaintiffs assert they are entitled to an *in camera* review simply because they want the documents JAA withheld from production on 3M's behalf. In Plaintiffs' view, the Court need only hold a hearing, and at that time Plaintiffs will reveal the legal basis of the motion to compel production.

Plaintiffs' position is untenable. The Court should reject Plaintiffs' suggested procedure for resolving this Motion and should also deny Plaintiffs' Motion on the merits. The log, together with the Heinze and Allison Affidavits filed herewith, satisfy 3M's obligation to prove facts that support its claims of privilege and work product.

I.    **The Documents at Issue Are Protected from Disclosure under the Work Product Doctrine.**

     A.    **JAA Prepared or Obtained the Documents on the Privilege Log in Anticipation of Litigation or Adversarial Administrative Proceedings.**

The work product doctrine is set forth in FED. R. CIV. P. 26. In order to qualify as work product, a document has to have been "prepared in anticipation of litigation or for trial by or for

another party or its representative (including the other party's attorney, *consultant*, surety, indemnitor, insurer, or agent." FED. R. CIV. P. 26(b)(3) (emphasis added). Stated in a slightly different way, if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation," then the document constitutes protected work product. *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987) (quoting 8 CHARLES ALAN MILLER & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024 (1970)). The document need not have been prepared in anticipation of the instant litigation; it need merely have been prepared in anticipation of some litigation. *See, e.g., Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 246-47 (D.D.C. 1986); *see also FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983). Since neither JAA nor 3M is a party to the *Rowe* and *Rhodes* lawsuits, plainly they do not contend the documents were prepared in anticipation of those lawsuits. Nonetheless, as set forth in considerable detail in the Allison and Heinze Affidavits, 3M's anticipation of litigation involving PFCs in 1998 is precisely what led to its retention of JAA at that time. (*See, e.g.,* Allison Aff. ¶¶ 15-16, 27-30; Heinze Aff. ¶¶ 5-11.) The documents that have been withheld from production to Plaintiffs all relate to work that JAA did for 3M at the direction of its counsel and in anticipation of litigation involving PFCs. (Heinze Aff. ¶ 14, 53; Allison Aff. ¶ 45.)

Plaintiffs may argue that when 3M retained JAA as a litigation consultant in 1998, 3M had not yet been sued nor had any regulatory action yet been taken against it. That is true, but irrelevant. So long as 3M genuinely anticipated litigation at that time, it does not matter that the regulatory proceedings and litigation involving perfluorochemicals had not yet commenced. *See, e.g., EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 968-69 (D.C. Cir. 1999); *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). Under the standard adopted by the Court of Appeals, the

lawyer must have had a "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d at 885. And the anticipated "litigation" is "interpreted broadly to encompass not only trials and other judicial proceedings, but also adversarial administrative matters, settlement negotiations, and the *avoidance* of anticipated litigation." *General Elec. Co. v. Johnson*, No. Civ. A. 00-2855 (JDB), 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006) (emphasis inadded). This principle is equally applicable to documents produced by a communications consultant in anticipation of litigation. *See Haugh v. Schroder,* No. 02-7955, 2003 U.S. Dist. LEXIS 14586, at *16 (S.D. NY Aug. 25, 2003.

The affidavit of 3M Assistant General Counsel John Allison sets forth his subjective belief that litigation was a real possibility and the objective grounds for that belief. As described in the affidavit, the affirmative steps he took in conjunction with that belief -- retaining law firms, retaining litigation consultants, and developing a plan of action -- provides the basis for concluding that his belief was genuine. (*See* Allison Aff. ¶¶ 5, 11, 15-16.) At that time, 3M retained both JAA and outside counsel to assist it in its efforts to avoid and prepare for anticipated litigation and adversarial regulatory proceedings. (*Id.* ¶¶ 16, 27-30.) As the affidavit of Dr. John Heinze explains, each of the documents that has been withheld from production was prepared by or provided to JAA as part of its work assisting 3M counsel in anticipation of litigation and adversarial regulatory proceedings. (Heinze Aff. ¶¶ 10, 13, 15-48.)

**B.      Plaintiffs Cannot Make the Required Showing To Obtain 3M's Work Product.**

JAA and 3M have established that the documents listed on 3M's privilege log constitute work product prepared in anticipation of litigation. Some of that work product contains counsel's mental impressions or strategies and is protected from disclosure under any

circumstance. *See* Fed. R. Civ. P. 26(b)(3)(B). The remainder constitutes so-called "ordinary" work product that a requesting party may obtain only upon a showing that (a) the documents "are otherwise discoverable" and (b) the party "has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Plaintiffs have not made – and cannot make – the showing necessary for the Court to permit them to obtain 3M's ordinary work product.

Plaintiffs have not explained what relevance the work JAA did for 3M has to their claims against DuPont, much less that they have "a substantial need" for such work product.[2] The work that JAA did to assist 3M in its efforts to prepare for or avoid perfluorochemical-related litigation has nothing whatsoever to do with the Plaintiffs' lawsuits against DuPont, which relate to the presence of perfluorochemicals in groundwater near DuPont facilities. What is more likely is that Plaintiffs' counsel -- not the plaintiffs in *Rhodes* and *Rowe* -- want the JAA documents in connection with a lawsuit that they are prosecuting against 3M in Minnesota state court (*see* Allison Aff. ¶¶ 43-44).   If Plaintiffs' counsel believe they need documents for use in the Minnesota action, that argument is best addressed to the Minnesota court. Use of the federal courts' subpoena power does not extend to the Plaintiffs' efforts to litigate against 3M in a Minnesota state court action.

---

[2] If Plaintiffs were to establish that they had a substantial need for the ordinary work product contained within JAA documents and could not obtain the information in any other way without undue hardship, then it might be appropriate for the Court to review the withheld documents *in camera* to determine which documents contain ordinary work product and which contain counsel's mental impressions, *see, e.g., In re Sealed Case*, 146 F.3d at 883. But in the absence of such a showing, there is no reason for the Court to conduct *in camera* review of the challenged documents.

## II.    The Attorney-Client Privilege Extends to Communications with Public Relations and Government Affairs Consultants

If the Court concludes, as it ought, that the documents withheld from production constitute work product, then the documents need not be produced to Plaintiffs, and the Court need not also address 3M's claim that the documents are protected by the attorney-client privilege. If the Court concludes that the work-product doctrine is inapplicable here, then the Court must also consider 3M's claim of attorney-client privilege.

Plaintiffs' challenge to 3M's privilege claim is oblique at best. They argue that the law of privilege is well known to the Court, and briefing addressing the law is unnecessary (Pls.' Mem. at 3). At the same time, the urge the Court to pay particular heed to the privilege law of New Jersey or West Virginia. Do those states' laws with respect to privilege differ from one another? or from the law as it is understood in other jurisdictions? Do they differ in any way that is material to 3M's privilege claims? While JAA and 3M agree that the relevant state law of attorney-client privilege should be applied, they know of no reason why 3M's privilege claim should be evaluated under New Jersey or West Virginia law rather than that of Minnesota (where 3M has its headquarters) or the District of Columbia (where JAA is located). That said, 3M's privilege claims should be upheld regardless of which jurisdiction's law applies.

Although no such argument has been made, [3] Plaintiffs presumably take the position that communications with a public relations consultant may not be protected from disclosure by the

_____

[3] To the extent the Court allows any substantive arguments to be raised for the first time in Plaintiffs' reply brief, JAA and 3M should be given an opportunity to respond to them through additional briefing, affidavit testimony, or oral argument. In the event that the Court grants *in camera* review, 3M requests that it be provided an opportunity to make additional submissions as appropriate to support its privilege claims (including *in camera* submissions).

attorney-client privilege. The D.C. Circuit Court of Appeals has expressly rejected that argument. *See FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (reversing trial court's ruling that documents were not privileged and stating expressly that attorney-client privilege also extends to communications with "public relations and government affairs consultants" when counsel works with those consultants as it does with the client corporation's employees).

## CONCLUSION

The documents on 3M's privilege log are protected from disclosure by the work-product doctrine and by the attorney-client privilege. Plaintiffs' request for *in camera* review is little more than an attempt to avoid having to explain the basis for their challenges to 3M's privilege log. JAA and 3M believe that 3M's privilege log and the Heinze and Allison affidavits provide ample support for withholding the documents from production. Accordingly, the Court need not engage in any form of *in camera* review (much less the free-for-all hearing that Plaintiffs propose). On the record before it, the Court should conclude that 3M has more than adequately supported its work-product and privilege claims, and Plaintiffs' Motion should therefore be denied.

Respectfully submitted this 11th day of January, 2008,

_Thomas Richichi/NC_

THOMAS RICHICHI
D.C. Bar No. 255-5-5
NADIRA CLARKE[4]
PA Bar. No. 67956
Counsel to John Adams Assoc. Inc.
Beveridge & Diamond, P.C.

---

[4] Practicing pursuant to DC App. Rule 49(c)(8), and supervised by Principals of Beveridge & Diamond PC.

1350 I Street, NW, Suite 700
Washington, D.C. 20005-3311
Phone: (202) 789-6000
Fax:  (202) 789-6190
trichichi@bdlaw.com
nclarke@bdlaw.com


MICHAEL C. McCARTHY
MN Bar No. 230406
Counsel to 3M Company
Maslon Edelman Borman & Brand LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Phone:        (612) 672-8347
Fax:          (612) 642-8347
mike.mccarthy@maslon.com

KATHERINE L. RHYNE
D.C. Bar No. 339010
Counsel to 3M Company
King & Spalding
1700 Pennsylvania Ave., NW, Ste. 200
Washington, D.C. 20006-4706
Phone:          (202) 626-3743
Fax:            (202) 626-3737
krhyne@kslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing OPPOSITION OF JOHN ADAMS ASSOCIATES INC. AND 3M COMPANY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS was served via U.S. Mail on the following, this 11th day of January, 2008:

J. Steven Justice
Taft Stettinius & Hollister LLP
110 North Main Street, Suite 900
Dayton, OH  45402

Karen J. Marcus
Mila F. Bartos
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street NW
Washington, D.C.  20007

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| *In Re*: John Adam Associates, Inc. | ) ) ) ) Civil Action No. 1:07-mc-00577 (RBW) ) ) ) |

AFFIDAVIT OF JOHN R. ALLISON, ESQ. IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

I, John R. Allison, being first duly sworn upon oath, hereby state:

1.    I am providing this Affidavit in support of the Opposition of John Adams Associates Inc. ("JAA") and 3M Company ("3M") to Plaintiffs' Motion to Compel Production Pursuant to a Subpoena. I make this affidavit based on my personal knowledge except where paragraphs are expressly identified as based on information and belief, and in my professional capacity as Assistant General Counsel in 3M's Office of General Counsel.

2.    I am an attorney admitted to the bars of Minnesota, Washington State and the District of Columbia.

3.    I have been employed by the 3M Office of General Counsel since December 1994. Before joining 3M, I was a trial lawyer in private practice. I also served as a Judge Pro Tempore for the King County Superior Court and the Seattle Municipal Court, and chaired the Toxic and Hazardous Substances and Environmental Law Committee of the ABA's Tort and Insurance Practice Section. I was hired as Senior Counsel of 3M in 1994 to be responsible for managing significant litigation. I became an Assistant General Counsel in 2000.

4.     I have overall responsibility for litigation management in 3M's Office of General Counsel, worldwide.   I am fully familiar with the Company's approach to preparing for litigation.

5.     Based on my professional experience, I am (and was in 1998) aware of the significant cost to a defendant of litigation, whether or not that litigation has legal or scientific merit. Because the cost of litigation can have little correlation to the merits of the claims being asserted, it is important for a potential defendant to anticipate litigation and, where possible, minimize the likelihood of litigation.  Particularly when the potential litigation involves matters of public concern (such as human health or the environment), it is important for the potential defendant to pay particular attention to clear communication of scientific and technical information. The purpose of taking affirmative steps regarding communications with respect to such matters is to try to ensure that the potential defendant's communications with respect to the issue are carefully considered and that accurate and consistent information is available to interested regulators, the press and others.

6.     In the Spring of 1998, after 3M had confirmed that two of its perfluorochemicals, PFOS and PFOA, were present in the blood of the general population, I was assigned to work on issues relating to the company's perfluorochemicals business.  Around the same time, I became legal counsel to 3M's Medical and Corporate Toxicology Departments.  Soon thereafter, I also became legal counsel to 3M's Corporate Marketing and Public Affairs Department.

7.     In the Fall of 1998, I retained JAA to assist me and my co-counsel in rendering legal advice to 3M and in preparing for anticipated litigation regarding perfluorochemicals.  I will describe below the reasons for 3M's anticipation of litigation and regulatory proceedings and need for legal advice at the time.  I will also describe the circumstances of my retention of

JAA, the engagement of JAA to assist 3M's counsel, and examples of some of the tasks performed by JAA at my direction that resulted in documents appearing on 3M's privilege log.

## 3M's Anticipation of Litigation and Regulatory Proceedings

8.    On information and belief, for approximately fifty years 3M manufactured a family of compounds known as perfluorochemicals using a proprietary process. Perfluorochemicals have unique properties that make them useful in a variety of applications.

9.    On information and belief, 3M sold perfluorochemical-based products to a large number of industrial and commercial customers, as well as directly to consumers.    A primary use of these materials was as a stain repellant and fabric protector for carpet, textiles, and upholstery in 3M's Scotchgard® products. 3M also manufactured fire-fighting foam containing perfluorochemicals -- a life-saving product particularly well suited for dealing with fires at airports, aboard aircraft carriers and other Naval vessels, and at petroleum storage facilities. Perfluorochemicals are essential to the manufacture of semiconductors (computer chips), in certain medical imaging applications, and in airplane hydraulic fluid.    Perfluorochemicals are also used as industrial surfactants.  For many years, 3M sold one particular perfluorochemical, known as PFOA, to DuPont, for use as a processing aid in the manufacture of Teflon®.

10.    On information and belief, since the late 1970s 3M has conducted medical surveillance of its perfluorochemical production workers.  No adverse health effects associated with perfluorochemical exposure have been found in those workers, the most highly exposed population.    3M has also conducted a large number of toxicology tests on various perfluorochemicals.

11.    In early 1998, 3M scientists confirmed the widespread distribution of certain perfluorochemicals, PFOS and PFOA, in the blood of the general population.  The compound

primarily at issue was PFOS. The levels identified in the blood of the general population were quite low (parts per billion). However, at the time, 3M was the only U.S. manufacturer of PFOS and its chemical precursors.

12.    3M informed its production workers and notified the U.S. Environmental Protection Agency ("EPA") and various other agencies, including the Food and Drug Administration, the Consumer Product Safety Commission, and the Occupational Safety and Health Administration, of the findings in the blood of the general population. 3M submitted a formal notification to EPA pursuant to Section 8(e) of the Toxic Substances Control Act, [15 U.S.C.§ 2607(e)], by letter dated May 15, 1998, and EPA placed that notice in a public docket at the agency. 3M also notified a large number of its industrial and commercial customers about the presence of PFOS in general population blood.

13.    At the time, perfluorochemicals were not specifically listed under the Clean Air Act, the Clean Water Act, or other environmental laws and regulations. Neither EPA nor any state had set standards for acceptable levels of perfluorochemical exposure. 3M attempted to obtain an audience with EPA and seek the agency's advice with regard to 3M's plans and testing activities.

14.    Prior to 1998, 3M had employed outside counsel at a Minneapolis law firm to advise the company regarding issues related to perfluorochemicals, and had also employed outside regulatory counsel from Latham and Watkins LLP as well as other law firms.

15.    Although to 3M's knowledge no human has ever been injured by exposure to perfluorochemicals, I soon reached the conclusion that 3M should begin preparing for possible litigation with respect to perfluorochemicals, given their widespread presence and the reality of mass tort and class action litigation. My view was based in part on my experience directing

3M's defense of other mass tort litigation. Starting in early 1995, I directed 3M's defense in the mask/respirator litigation and in the silicone breast implant litigation. Each of those litigations involved tens of thousands of individuals asserting claims against 3M. Thus, I am familiar with the potential cost and ramifications of mass tort litigation even where the claims are found to be without scientific foundation.

16.     I recommended to 3M's then general counsel that 3M should retain additional outside legal counsel to provide legal advice and begin preparing for litigation regarding perfluorochemicals. Pursuant to that recommendation, in January 1999 we retained several additional law firms with expertise in both tort and commercial litigation. These firms, including King & Spalding, began providing ongoing legal representation and advice to 3M regarding the anticipated potential litigation. King & Spalding also has advised 3M regarding regulatory and communications matters relating to PFCs.

17.     Since 1998, 3M has been engaged in discussions and proceedings with EPA regarding PFOS and other perfluorochemicals. EPA has established several dockets regarding perfluorochemicals (*see* EPA website with links to several such dockets at http://www.epa.gov/oppt/pfoa/index.htm). During 2000-2001, 3M submitted extensive toxicology, epidemiology and environmental testing data on perfluorochemicals to EPA's public docket, and 3M has continued to submit data to EPA since then.

18.     On May 16, 2000, 3M announced its decision to phase out of production of certain perfluorochemical products, including PFOS and PFOA.

19.     EPA also issued a press release regarding 3M's phaseout decision (*see* May 16, 2000, press release "EPA and 3M Announce Phase Out of PFOS" at http://yosemite.epa.gov/opa/admpress.nsf/905a0f1800315fd385257359003d4808/33aa946e6cb1

1f35852568e1005246b4!OpenDocument&Highlight=2,3M).  3M's and EPA's announcements received widespread publicity in the national news media, including prominence on the front page of national newspapers.

20.    In May of 2000, EPA asked the Organisation for Economic Cooperation and Development ("OECD"), consisting of approximately 30 developed nations around the world, to undertake an assessment of PFOS.  In October of 2000, EPA issued proposed regulations that would prohibit the manufacture or import of PFOS and a number of related perfluorochemicals, essentially codifying 3M's phaseout decision (at least in the United States) given that there were no other domestic producers of PFOS-related substances.  65 Fed. Reg. 62319 (October 18, 2000).  These regulations were ultimately adopted, 67 Fed. Reg. 11008 (March 11, 2002), along with several further sets of regulations regarding PFOS-related substances.  *See* 67 Fed. Reg. 72854 (December 9, 2002) and 72 Fed. Reg. 57222 (October 9, 2007) (prohibiting certain uses of related chemicals without prior notice to EPA).  In April of 2003, EPA announced the commencement of regulatory proceedings with regard to PFOA (a perfluorochemical which is still manufactured by DuPont and others), again prompting coverage in the national press.  68 Fed. Reg. 18626 (April 16, 2003).   EPA's proceedings with regard to PFOA are still ongoing and have received extensive media attention (*see* http://www.epa.gov/oppt/pfoa/index.htm).

21.    On information and belief, in 2001 plaintiffs brought litigation against DuPont regarding perfluorochemicals released near a DuPont facility in West Virginia, in a case entitled *Leach et al. v. DuPont*. The West Virginia state court subsequently certified a class action.

22.    In April 2002, a plaintiff filed an action against 3M in state court in Alabama regarding alleged occupational exposure to fluorochemicals.  The complaint in that case was later amended to allege a nationwide class action, in Alabama state court, on behalf of certain

6

categories of individuals exposed to 3M's perfluorochemicals. After the original plaintiff's personal injury tort claims were dismissed by the Court, the complaint was amended again to allege a putative class action on behalf of property owners near 3M's Decatur, Alabama plant. Discovery in that case is ongoing. *St. John et al. v. 3M Company*, No. CV02-408 (Morgan County, Alabama).

23.    In 2004, DuPont announced the settlement of the *Leach* lawsuit in West Virginia, and the settlement was subsequently approved by the West Virginia Court.

24.    In the Fall of 2004, two additional putative class actions were filed against 3M: *Chandler, et al., v. 3M Company*, No. No. CV-02-408-SWB (Morgan County, Alabama); and *Palmer, et al., v. 3M Company*, No. C2-04-6309 (Washington County, Minnesota). The *Chandler* case has been stayed until the class action issues are resolved in the *St. John* case which is pending in the same court. In the *Palmer* case, now known as the *Paulson* case as a result of the dismissal of the original plaintiffs, the Court denied class certification (*see* Order at www.mncourts.gov/district/0/?page=NewsItemDisplay&item=20456). As a result, the plaintiffs in *Paulson* are now pursuing individual claims and the case is in active fact discovery.

25.    On information and belief, the same plaintiffs' attorneys involved in the *Leach* case against DuPont and the *Chandler* and *Palmer/Paulson* cases against 3M have also filed two additional putative class actions against DuPont: the *Rhodes* case in federal district court in West Virginia, and the *Rowe* case against DuPont in federal district court in New Jersey. (The *Rhodes* and *Rowe* cases are the ones for which the subpoena to JAA was issued by this Court.) 3M is not a party to any of the DuPont cases.

26.    In sum, beginning in 1998, 3M genuinely and correctly anticipated regulatory proceedings and mass tort/class action litigation with regard to perfluorochemicals. 3M took

concrete steps to prepare its defense, including obtaining the assistance of law firms and experienced consultants who could assist counsel in providing legal advice, responding to regulatory proceedings, and preparing 3M's defense to potential litigation.

**Retention of John Adams Associates Inc.**

27.     In September of 1998, I traveled to Washington to meet with John Adams and Dr. John Heinze of John Adams Associates Inc. ("JAA"). Following that meeting, I determined that JAA could be of assistance to me and other members of 3M's legal defense team in rendering legal advice to 3M and preparing for litigation and regulatory proceedings.

28.     I believed that accurate and timely communications about perfluorochemicals were essential to 3M's effective management of the overall issue, including minimizing the risks of potential litigation and regulatory proceedings. The JAA firm offered a combination of scientific expertise in dealing with health and environmental issues (at a Ph.D. scientist level) and expertise in communicating complex scientific issues to many audiences.

29.     On September 29, 1998, at my direction, 3M's outside legal counsel Dale Larson retained JAA to provide consulting services to 3M's legal     team with respect to perfluorochemicals     and     product     and     industrial     workplace     legal     claims. Dale Larson's letter states: "Specifically, John Adams Associates will be responsible to Larson & Counsel and other members of 3M's defense team for the communication of balanced and accurate information concerning such claims and 3M products to the expanded audiences that directly or indirectly impact 3M's defense."     JAA was asked to execute a confidentiality agreement protecting 3M's privileged and work product documents.

30.     I met with Dr. John Heinze and John Adams of JAA on October 2, 1998 to discuss their engagement. I described the background of the issue, and gave detailed instructions

regarding tasks relevant to the development of 3M's defense that I wished JAA to undertake. (One of the documents on the privilege log is Dr. Heinze's notes of this conversation with me.)

**Conduct of JAA Under Its Engagement for 3M Legal Counsel**

31.    JAA's work for 3M was under my supervision and undertaken at my direction. A number of other documents on the log also reflect conversations with me.

32.    Mr. Adams and Dr. Heinze of JAA also worked with several of my colleagues in the 3M Office of General Counsel, including Tom DiPasquale and Mike Nash. In addition, JAA worked as part of 3M's legal defense team, along with Latham & Watkins, King & Spalding, and other law firms. JAA often attended meetings with the legal team, or with the legal team and 3M management or technical experts, and I authorized 3M's management and technical experts and outside lawyers to share information with JAA so that JAA could assist the legal team.

33.    During that initial conversation in which I outlined JAA's assignments, 3M's communications manager Mike Dougherty also participated. I requested that Mr. Dougherty work with JAA in carrying out my requests, to assist me in rendering legal advice and preparing for litigation. Mr. Dougherty acted at my behest in these activities relating to perfluorochemicals, and he sometimes conveyed my instructions to JAA. JAA's work was commissioned by me and performed under my direction.

34.    In some instances, JAA, through either John Adams or Dr. John Heinze, participated in meetings or communications with additional 3M personnel and occasionally with other consultants also retained by the Office of General Counsel or its outside counsel. At times, a number of 3M personnel were involved in these discussions, as reflected by the long distribution lists shown in some entries on 3M's privilege log. 3M's business practices encourage interdisciplinary committees to ensure that issues are addressed by all relevant

9

perspectives. Teams of lawyers, scientists, regulatory and public relations specialists worked together so that 3M could consider and apply these differing viewpoints to issues relating to perfluorochemicals. A large number of 3M business units had an interest in perfluorochemicals, along with the medical and toxicology departments, the environmental and analytical laboratories, the environmental staff, and other personnel. The listing of a number of people at a meeting or receiving a document denotes the need for their participation, not a lack of confidentiality.

**Tasks Undertaken by JAA at My Behest**

35.    Nearly all of JAA's work for 3M's legal team occurred during the time from late 1998 through 2001, when 3M was attempting to understand and communicate a vast amount of scientific data to regulators, employees, customers and others.

36.    JAA assisted the legal team in connection with preparing for actual and anticipated regulatory proceedings. For instance, JAA drafted questions that EPA might ask 3M, in order to assist me and other 3M legal counsel in preparing 3M personnel to communicate clearly and accurately during meetings with EPA. JAA also prepared memoranda outlining EPA's processes for evaluating chemicals and describing several EPA programs. Also at my request, or the request of other in-house or outside counsel, JAA participated in the development of several 3M written submissions to the U.S. EPA and reviewed drafts prepared by outside counsel or by 3M technical staff. Documents related to these activities are listed in 3M's privilege log.

37.    At my request, JAA also led or participated in the development of several versions of a fluorochemical issues communication plan and various other communication strategy documents. I also requested that JAA identify scientific experts who could assist 3M in

putting perfluorochemicals in perspective. JAA supplied information on experts, some of whom I or 3M's outside counsel subsequently retained as litigation consultants. The 3M privilege log includes documents JAA generated in connection with these activities.

38.    Additional documents on the privilege log pertain to setting priorities for publication of 3M's scientific research.  3M had performed, and was continuing to amass, a vast amount of research on perfluorochemicals.  At my request, JAA worked with 3M scientists to develop plans for the priorities and the sequence for getting the results of that research into the published scientific literature.   Publication of 3M's research was important for the defense of anticipated litigation, regulatory review and dissemination of accurate scientific information.

39.    JAA also prepared a number of drafts of key messages and "talking points" to ensure that persons speaking on behalf of the company could communicate accurately and effectively.  For examples, JAA prepared or reviewed multiple drafts of communications in connection with 3M's announcement that it would phase out production of certain perfluorochemicals.   JAA also advised and assisted me in reviewing drafts of 3M's written communications to customers regarding perfluorochemicals.

40.    Issues related to perfluorochemicals have received extensive coverage in local and national media, and attention from various regulatory agencies including U.S. EPA. Since 1998, in light of anticipated and ongoing litigation and the high visibility of perfluorochemicals issues, to the best of my knowledge either I or another lawyer in 3M's Office of General Counsel has reviewed all draft public statements regarding perfluorochemicals. To protect the privilege associated with the provision of legal advice, 3M considers draft statements that will be reviewed by counsel to be privileged and confidential, as the difference between draft statements and final product can reveal the content of the legal advice given regarding the draft statements.

**Background Regarding the Litigation at Which the Subpoena is Directed**

41.     I understand the motion now pending before the Court was brought by Plaintiffs' attorneys who are suing DuPont in litigation in federal district courts in New Jersey (*Rowe*) and West Virginia (*Rhodes*).  Based on public filings, I understand that litigation in each instance seeks to certify a class action on behalf of consumers of drinking water containing one or more perfluorochemicals near DuPont facilities.  3M is not a party to either of the cases against DuPont.

42.     The Plaintiffs in the *Rowe* and *Rhodes* cases against DuPont issued a large number of subpoenas for documents to third parties, including JAA.  They did not issue a third party subpoena to 3M.

43.     Plaintiffs' counsel seeking discovery in the *Rhodes* and *Rowe* cases are also representing plaintiffs in the *Palmer/Paulson* case pending against 3M in state court in Washington County, Minnesota.   Law firms involved in both the Minnesota case against 3M and in the *Rhodes* or *Rowe* litigation against DuPont include Taft Stettinius & Hollister -- which filed the motion to compel in this court -- and Beasley, Allen, Crow, Methvin, Portis & Miles; Winter, Johnson & Hill; and Hill, Peterson, Carper, Bee & Deitzler.

44.     The Minnesota case against 3M is in active fact discovery.  Plaintiffs' counsel in the Minnesota litigation have not specifically sought documents to, from or created by JAA in discovery from 3M.

45.     None of the documents withheld by JAA in response to the subpoena on grounds of 3M's privilege or attorney work product protection even mention DuPont, West Virginia or New Jersey.  All of them relate to work JAA performed at the request of 3M in-house or outside counsel.

Further affiant sayeth naught.

John R. Allison

Sworn to before me this 10th day of January 2008:

Notary Public

My commission exp

> ROSALIE J JOYCE
> Notary Public
> Minnesota
> My Commission Expires January 31, 2010

13

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*In re* **John Adams Associates Inc.**

**Case No. 1:07-mc-00577-RBW
Hon. Reggie B. Walton**

### AFFIDAVIT OF JOHN E. HEINZE, Ph.D.,
### REGARDING SUBPOENA FOR 3M COMPANY PRIVILEGED DOCUMENTS

John E. Heinze, Ph.D., being first duly sworn upon oath, states the following:

1. I make this Affidavit, based on my personal knowledge, in support of the Opposition

of John Adams Associates Inc. and 3M Company to Plaintiffs' Motion to Compel Production

Pursuant to a Subpoena.

2. I attach as Exhibit A a copy of 3M's Amended Privilege Log, dated January 4, 2008,

to this affidavit. Documents to which I refer in this affidavit are listed there by bates number and

date.

**John Adams Associates**

3. I am a principal and Senior Vice President for Science in the firm of John Adams

Associates Inc. ("JAA"), located in Washington, D.C. I joined JAA in 1995. Prior to that, I

received a Ph.D. degree in microbiology, and completed post-doctorate research in molecular

biology at the National Institutes of Health. I then worked for Dial Corporation in Phoenix,

Arizona, and Vista Chemical Company in Austin, Texas, where my responsibilities included

ingredient and product safety evaluations.

4. JAA provides public affairs and issue management advice, with emphasis on issues

related to health and the environment. JAA advises clients on science-based, factual and

understandable communications given that matters related to health and environment are technically complex.

**3M's Retention of JAA**

5.  My firm was retained to assist counsel for 3M in providing legal advice and preparing for litigation regarding its perfluorochemical products in the fall of 1998. Our firm had no relationship with 3M at the time. 3M's chief litigation attorney, John Allison, and members of 3M's communications staff, Mark Fenner and Mike Dougherty, interviewed us in September 1998, at the suggestion of outside counsel. At that meeting, 3M attorney Allison asked us about our firm's experience, but did not provide us with any information about the issues of concern.

6.  Following that visit, JAA was retained to assist counsel for 3M. 3M outside counsel Dale Larson provided an engagement letter. Mr. Larson's September 29, 1998, engagement letter to JAA asked us to provide consulting services to 3M's defense team with respect to chemical, product or workplace-related legal claims. The letter states that we are to be responsible for assisting 3M's legal defense team in the communication of balanced and accurate information concerning such claims and 3M products to audiences that directly or indirectly affect 3M's defense.

7.  As part of our engagement, JAA was asked to execute a written confidentiality agreement protecting 3M privileged and work product documents. My colleague John Adams, President of JAA, signed the engagement letter. We both signed the confidentiality agreement. Copies of these documents are attached as Exhibit B.

8.  On October 2, 1998, John Adams and I met with 3M in-house litigation counsel John Allison about the purposes of our engagement. Mr. Allison described the background of issues, including why 3M anticipated litigation and regulatory proceedings. In particular, Mr. Allison

2

explained to us that a particular perfluorochemical known as PFOS had been found in the blood of the general population of the United States, although at levels not expected to result in any adverse effects. On information and belief, at the time, 3M was the only U.S. manufacturer of PFOS or chemicals that degrade to PFOS. 3M products at issue included Scotchgard® fabric protector used on carpet, textiles, upholstery and other materials, grease-resistant food packaging products, fire-fighting foam, and a number of other products. At that time, the data had been reported to EPA and other regulatory agencies, but 3M had not yet received any response from EPA.

9. Mr. Allison told us that he had managed mass tort litigation on other issues in the course of his career. He noted that in his experience, ensuring forthcoming and accurate communication -- whether with exposed workers, customers, regulatory agencies or others -- was the best way to head off any potential litigation. He indicated to us that our advice and assistance was important to 3M's litigation team and asked us to assist him in carrying out this objective of ensuring accurate communications. My colleague John Adams and I shared our experience and insights with Mr. Allison, drawing on our scientific expertise and regulatory experience, as well as experience in dealing with situations that are potential triggers for media attention and the attendant filing of litigation.

10. In our discussion, as memorialized in my handwritten notes of the meeting which are listed in the privilege log, JAA0022854 - JAA0022858 (10/2/98), 3M attorney John Allison identified several initial specific assignments on which JAA would assist him. Among those assignments were the monitoring of media coverage related to 3M's perfluorochemical products, advising counsel and 3M regulatory staff regarding agency trends, and identifying potential experts who might serve as litigation consultants. Mr. Allison also requested that JAA offer

3

recommendations, including thoughts on what measures the company might take to prevent litigation in response to the discovery of the presence of low levels of perfluorochemicals in blood bank samples from the general population. Mr. Allison asked JAA to participate in reviewing scientific literature and in developing a short-term work plan that 3M could use for responding accurately should 3M's products become the focus of media attention.

## Conduct of the Engagement

11. Due to the concern that litigation was likely to arise, Mr. Allison asked that JAA limit its staffing on this engagement to myself and the other principal of the firm, John Adams. We complied with this request. Our invoices were sent to 3M outside counsel Dale Larson.

12. JAA marked all of the materials that we generated during the engagement for 3M with a legend indicating the confidential nature of the work and referring to the attorney-client privilege and attorney work product protection. The exact wording of the legend may vary, but JAA consistently designated its work for 3M as confidential and protected. We do not apply such a designation to our work for other clients. In addition, because the project related to litigation, JAA has not disposed of its files related to our work for 3M. For other clients, we would not necessarily retain documents once a project or a phase of a project was completed. Due to the litigation-related nature of the work for 3M, we have retained our files, dating back almost ten years.

13. 3M litigation counsel Allison authorized us to communicate with 3M communications manager Mike Dougherty, who was present at the initial meeting. Mr. Allison told us Mr. Dougherty would be working with and under the direction and supervision of Mr. Allison on this matter, and Mr. Allison authorized us to communicate with Mr. Dougherty on his behalf. Thus, although many of the documents on the privilege log are listed as communications

4

between Mr. Dougherty and me, our direct communication was at the request of Mr. Allison. For instance, acting on behalf of Mr. Allison, I would often develop draft communications materials with Mr. Dougherty to provide to Mr. Allison and as appropriate to 3M management or technical experts for review. I also sometimes shared drafts or information with other consultants who had been retained by 3M's Office of General Counsel at Mr. Allison's request.

14. Mr. Allison would review all content of any communications with the public, workers, agencies, or other constituencies that JAA, or JAA and Mr. Dougherty together, developed with respect to perfluorochemicals. Additional in-house counsel for 3M, including Assistant General Counsel Tom DiPasquale, would also review our work for 3M counsel from time to time. In all events, and at all times, our work was under the direction of legal counsel. JAA worked with, but did not report to, 3M's communications and public relations department. Rather, we acted at the behest of and under the supervision of 3M's lawyers.

15. From time to time, I attended meetings with outside counsel Dale Larson. For instance, JAA0023255- JAA0023259 (12/16/98) are my notes of a meeting reflecting discussions with outside counsel Larson, in-house attorney John Allison, in-house attorney Tom DiPasquale, Dave Sanders (a 3M regulatory manager), Mike Dougherty (3M communications) and myself.

16. On occasion I also met with or talked by telephone with King & Spalding partner Katherine L. Rhyne, who provided litigation and regulatory advice to 3M. For instance, one of the documents on the privilege log (JAA0023876, 1/27/2000) is my handwritten notes of a meeting with Ms. Rhyne at King & Spalding regarding litigation preparation activities. I also recall that Ms. Rhyne sent a lawyer from her office to review the files at our office, I believe some time in 2000, to ensure that JAA was complying with the confidentiality requirements and directions by Mr. Allison.

17. I also attended a number of meetings with Latham & Watkins law firm partners Robert Sussman and/or Julia Hatcher, who provided regulatory counsel to 3M, at which we discussed EPA activities. For JAA to advise the 3M legal team, it was important for us to be kept apprised of the status of EPA's review of 3M's data and various submissions and EPA's proposals and proceedings as the agency brought increasing scrutiny to bear on perfluorochemicals.

18. From time to time, 3M would forward to JAA copies of documents prepared by counsel. For example, one of the documents on the privilege log from my files is an opinion letter from Robert Sussman and Julie Hatcher at Latham & Watkins addressed to 3M in-house counsel Tom DiPasquale regarding an analysis of the applicability of statutory and regulatory provisions under the Toxic Substances Control Act ("TSCA"), evaluating whether 3M should report particular data to EPA. See JAA0023245-JAA0023249 (12/14/98), and a copy containing a fax stamp at the top, JAA0023250-JAA0023254. JAA0023593 (5/24/99) is a copy of a letter from Robert Sussman at Latham to 3M in-house counsel Tom DiPasquale, also related to TSCA 8(e) submissions. The documents were provided to keep JAA informed so that we could assist counsel.

19. JAA0023938 is a letter dated January 22, 2001 from 3M in-house attorney Tom DiPasquale forwarding a draft risk assessment for PFOS prepared by the EPA acting through the OECD (Organisation for Economic Cooperation and Development, an organization of representatives from 31 developed countries who coordinate the review and risk assessment of chemicals) to Bob Sussman and Julie Hatcher at Latham & Watkins, Kathy Rhyne at King & Spalding, and John Quarles, 3M outside counsel at Morgan Lewis & Bockius. The following entry on the privilege log, JAA0023939 - JAA0023947, contains material prepared by 3M

summarizing the draft risk assessment and evaluating what comments 3M should make in response to the draft. These documents were provided to me so that I could assist the legal team in rendering advice and responding to the regulatory proceedings.

20. JAA0023916 - JAA0023930 is an e-mail and attachment forwarded to me by Mike Dougherty dated November 15, 2000. The attachment is a draft document prepared by Bob Sussman and Julie Hatcher at Latham & Watkins providing 3M's comments on an EPA proposed regulation, on which 3M sought my input. A number of entries on the privilege log relate to correspondence in which 3M in-house environmental attorney Michael Nash enlisted JAA's assistance in preparing a draft submission to EPA. JAA0023608 (7/6/99), JAA0023607 (7/13/99), JAA0023662- JAA0023664 (8/3/99), JAA0023673 (8/26/99), and JAA0023766 (9/22/99). (In each of these cases, the final 3M submission is in EPA's public docket.)

21. JAA had access to such documents because we were part of the legal defense team.

**Issues Addressed in Privileged Documents**

22. It is my understanding that 3M manufactured products based on perfluorochemicals for many years, and since the late 1970s, has monitored the health of workers who produced these chemicals, with no evidence of any adverse effects caused by exposure to the chemicals. By the time JAA was retained in 1998, 3M scientists had confirmed the widespread presence of certain perfluorochemicals (including compounds known as PFOS and PFOA) at parts-per-billion levels in blood bank samples from the general population. 3M had informed the U.S. Environmental Protection Agency ("EPA") and other agencies of these findings. 3M subsequently informed a large number of industrial and commercial customers of its findings regarding the widespread presence of perfluorochemicals in humans. JAA assisted counsel in

the preparation of a letter to customers, a draft of which is listed on the privilege log,

JAA0023405-JAA0023407 (2/17/99).

23. In May of 2000, 3M concluded that it would cease producing perfluorooctanyl

chemistry, and announced that it would phase out of product lines based on this chemistry.

24. Most of JAA's work for 3M's legal team occurred during the time from 1998 through

2001, when 3M was attempting to understand and communicate a vast amount of scientific data

to regulators, employees, customers and others.

### Additional Discussions with Counsel

25. JAA0023237-JAA0023241 (11/30/98) contains my handwritten notes of a
conversation with John Allison in which he described key facts and additional assignments for
JAA. (The privilege log incorrectly identifies this handwriting as that of my colleague John
Adams; the document actually sets forth my thoughts and impressions.) JAA0023399-
JAA0023402 (2/17/99) is my handwritten notes of a visit to 3M in which I met with Mr. Allison
and at his request with several 3M scientists, to gather information.

26. JAA0023825 - JAA0023826 (11/12/98) and JAA0023822 - JAA0023824 (11/6/03)
are agendas sent from 3M in-house counsel Tom Dipasquale to me for meetings at which 3M's
lawyers (including John Allison, Mike Nash and Mr. DiPasquale) and management discussed
perfluorochemical issues.  These documents include my handwritten notes from the meetings.

### Regulatory Issues

27. A number of documents on the privilege log reflect instances in which JAA provided
advice to 3M in connection with regulatory proceedings or anticipated proceedings.  For
example, we assisted counsel in preparing 3M personnel to meet with EPA by drafting questions
that EPA might ask at the meeting.  JAA0022883 is a draft of those questions that I circulated to

my colleague John Adams for review before transmitting the document to Daniel Garry at 3M,
see JAA0022882 (11/13/98). (The handwritten notes on the document are those of John Adams,
revealing his thoughts and mental impressions.)

28. We evaluated how 3M scientific data compared with various EPA program
requirements, and provided advice on how various EPA programs worked, to assist counsel for
3M in preparing for litigation and regulatory proceedings. JAA0023340-JAA0023342 (2/15/99),
JAA0023767-JAA0023774 (9/24/99), JAA0023786-JAA0023787 (10/3/99), JAA0023799-
JAA0023810 (11/4/99), JAA0023811-JAA0023821 (11/4/99), JAA0023877-JAA0023878
(3/28/2000), and JAA0023879-JAA0023882 (4/26/2000) are all memoranda setting out JAA's
analysis of regulatory issues, in order to assist counsel.

**Communication Planning**

29. JAA also participated in the development of several iterations of a fluorochemical
issues communication plan, as 3M's litigation counsel John Allison had tasked us during our
initial discussions, and various other communication strategy documents.

30. JAA0023082 - JAA0023227 (11/24/98) and JAA0023516 - JAA0023592 (5/24/99)
are iterations of a comprehensive fluorochemicals issue communications plan. Contributing to
the preparation of this plan was one of my first assignments after being retained by 3M counsel
in October 1998. The plan addresses topics discussed during my initial meeting with John
Allison (3M's lead litigation attorney).

31. JAA0023242 - JAA0023244 (12/3/98) is a document that I prepared outlining a
proposed communications strategy concerning fluorochemicals, including issues such as key
facts to be communicated. The communications strategy was formulated by my firm as part of
our work performed at the request of Mr. Allison.

32. JAA0022859 - JAA0022874 (10/19/98) is an outline for a meeting I participated in with 3M Management in October 1998 to discuss the development of a fluorochemicals communications plan. JAA0023726-JAA0023764 (9/7/99) is an agenda for a video conference meeting with 3M in-house attorney Tom DiPasquale, 3M communications manager Mike Dougherty, and members of 3M management at which we discussed fluorochemical communications strategy and various regulatory issues. The document contains my handwritten notes from the meeting, revealing my thoughts and mental impressions on these issues. JAA0023948-JAA0023953 (9/6/2001) and JAA0023954-JAA0023959 (9/7/2001) are duplicate copies (one containing my handwritten notes on my mental impressions) of a draft memorandum communication plan regarding fluorochemicals sent to me and my colleague John Adams for review and comment, as part of our role in assisting 3M counsel. All of these documents reflect JAA's assistance to counsel in planning appropriate communications.

33. JAA0023326 - JAA0023328 (2/2/99) and JAA0023329 - JAA0023331 (2/2/99) are copies of a memorandum sent by my colleague John Adams to Mike Dougherty at 3M regarding efforts to disseminate information about fluorochemicals to the media. This work was performed at the request of John Allison (3M's chief litigation attorney).

**Identification of Scientific Experts or Information**

34. As part of the communications planning with which 3M attorney Allison tasked us, JAA made a number of efforts to identify scientists with relevant expertise who might advise or speak on behalf of 3M, but not in a testifying capacity. Some of the persons we recommended were retained by 3M inside or outside counsel as litigation consultants. JAA0023336 - JAA0023339 (2/15/99) is a draft memorandum that was prepared by me and contains handwritten notes of my colleague John Adams. JAA0023394-JAA0023398 (2/16/99) is a draft

10

memorandum containing my handwritten notes of my conversation with 3M attorney John

Allison regarding this project. JAA0023335 (2/12/99) contains my notes of a conversation with

Mr. Allison and John Adams' thoughts in response. JAA0023423 - JAA0023428 (3/15/99) is the

final memorandum that I transmitted through Mike Dougherty of 3M, for use by 3M inside and

outside counsel. These documents were prepared at the request of Mr. Allison.

35. Several documents on the privilege log are various copies of a chart summarizing

PFOS issues I prepared in February 1999 to assist Mr. Allison. JAA0023343-JAA0023354 is the

copy I transmitted to Mike Dougherty at 3M. JAA0023382-JAA0023393 is a copy of that

document that contains handwritten notes of my colleague John Adams. JAA0023355-

JAA0023381 is a letter transmitting the chart and other documents my firm prepared to another

3M litigation consultant. Mr. Allison asked us to share this work with the other consultant, who

had similarly been retained to assist Mr. Allison. The fourth document, JAA0023403-

JAA0023404, is a copy of the transmittal letter to the other litigation consultant that contains my

handwritten notes from a call with that consultant.

**Scientific Publications**

36. At the request of counsel, John Adams and I advised 3M on priorities for publication

of scientific research. I worked with 3M scientists to develop plans for the priorities and the

sequence for getting that data into the published scientific literature. In my experience

publication is important for regulatory review and communication to the scientific community,

and I was informed by 3M's lawyers that it is important to the legal defense of any claims.

37. JAA0023429-JAA0023434 (3/15/99), JAA0023725-JAA0023725 (9/7/99),

JAA0023775-JAA0023780 (9/26/99), JAA0023781-JAA0023782 (9/30/99), JAA0023785-

JAA0023785 (9/30/99), JAA0023783-JAA0023784 (10/1/99), JAA0023856-JAA0023859

(12/5/99) and JAA0023870-JAA0023875 (12/20/99) all relate to the development of a plan for publishing 3M-sponsored health research related to perfluorochemicals. Similarly, another series of documents relates to JAA's work for 3M counsel in recommending a plan for the publication of environmental data regarding perfluorochemicals. JAA0023419-JAA0023422 (2/23/99), JAA0023796 (10/15/99), JAA0023791- JAA0023795 (10/15/99), JAA0023788-JAA0023790 (10/12/99), JAA0023797 (10/28/99), JAA0023798 (10/28/99), JAA0023833-JAA0023835 (12/2/99), JAA0023836- JAA0023841 (12/3/99), JAA0023842 and JAA0023843-JAA0023848 (12/3/99), JAA0023849-JAA0023855 (12/5/99), and JAA0023860-JAA0023869 (12/6/99). This project was requested by Mr. Allison and conducted with his oversight. Given the vast amount of data 3M had on the chemicals, it was necessary to thoughtfully sequence the submission of publications to various scientific journals. These documents consist of drafts prepared by me with input from my colleague John Adams, analyzing how best to communicate the results of studies about fluorochemicals to the scientific community, along with handwritten notes and fax cover sheets as drafts were exchanged with 3M scientists and communications experts. (I note that the privilege log states that JAA0023429 - JAA0023434 (3/15/99) was sent from Sue Beach of 3M to me, but I have determined after further review that the document was prepared by me and contains my handwritten notes.)

38. On several occasions, JAA also advised 3M on possible responses to forthcoming scientific publications by others, or on possible reactions to 3M's scientific publications. Documents generated in the course of these activities are among the documents listed on the 3M privilege log for JAA's files. JAA0023666-JAA0023672 (8/11/99), JAA0023765-JAA0023765 (9/9/99), and JAA0023827-JAA0023832 (11/30/99) are draft memoranda prepared by me and sent to Mike Dougherty. The memoranda consist of responses developed responding to various

studies concerning fluorochemicals. These responses were developed as part of my ongoing work at the request of counsel to help 3M reduce its litigation risk by communicating scientifically accurate information about fluorochemicals. JAA0023912-JAA0023915 (10/6/2000) is an e-mail chain forwarded from Mike Dougherty to me containing correspondence between 3M in-house attorney Tom DiPasquale, Bob Sussman and Julie Hatcher of Latham & Watkins, and 3M management personnel discussing responses to a publication concerning fluorochemicals.

**Communications Materials**

39. As part of our effort to assist 3M counsel regarding communications, JAA drafted a number of key messages and "talking points" to ensure that persons speaking on behalf of the company could communicate accurately and effectively. We also drafted questions that might be posed to 3M by the media or interested parties, so that 3M could be prepared to respond accurately to any inquiries. We assisted counsel by preparing or evaluating drafts of communications in connection with 3M's announcement that it would phase out production of certain perfluorochemicals. Documents related to these activities are among the documents listed in 3M's privilege log.

40. JAA0023228-JAA0023232 (11/27/98) and JAA0023233-JAA0023236 (11/30/98) are copies of a memorandum setting out draft talking points regarding perfluorochemical issues prepared by JAA. One copy has a cover sheet transmitting it from my colleague John Adams to 3M attorney John Allison, and the other copy is a transmittal to another 3M litigation consultant that Mr. Allison asked review the memorandum before we provided it to Mr. Allison.

41. JAA0023081 (11/23/98) is a list of discussion topics for a conference call with 3M during which perfluorochemicals issues were discussed. The document contains my handwritten

notes, revealing my thoughts and mental impressions on these issues. I subsequently used these notes to carry out work commissioned by Mr. Allison.

42. JAA0022755-JAA0022756 (undated) and JAA0022875 (11/03/98) are draft memoranda prepared by my firm soon after our engagement in late 1998. The draft memoranda reflect my initial thoughts regarding communications about fluorochemicals and possible talking points. JAA0023332 - JAA0023334 (2/24/99) and JAA0023598-JAA0023602 (6/25/99) are subsequent iterations of similar documents transmitted to 3M by my colleague John Adams. These documents were part of our assignment from Mr. Allison to ensure 3M was able to communicate accurate information.

43. JAA0022876-JAA0022877 (11/3/98) was sent by Mike Dougherty (3M Communications Manager) to Mike Harnetty (3M Division Vice President) and me. JAA0022878-JAA0022881 (11/5/98) was sent from Daniel Garry (3M Manager, Public Issues) to me, Bob Sussman (Latham & Watkins, 3M Outside Counsel), John Allison (3M's chief litigation attorney), and other 3M personnel. These documents contain various iterations of proposed messages regarding fluorochemicals, and were provided to me for review and comment as part of my assistance to 3M's legal team. These documents include my handwritten notes, revealing my thoughts and impressions on these issues. Similarly, JAA0023408 (2/18/99) and JAA0023512 (4/6/99) are proposed messages developed by 3M and sent to me to review in my capacity as consultant to the 3M legal team.

44. Several documents contain my assessment of certain scientific information and how it could be communicated effectively, bearing in mind the litigation context. JAA0023417-JAA0023418 (12/4/98) and JAA0023260-JAA0023261 (1/27/99) are draft memoranda prepared by me and sent to my colleague John Adams, and JAA0023409 - JAA0023416 (2/22/99) is a

similar document prepared by me and sent to another 3M litigation consultant whom Mr. Allison had retained.

45.    A number of documents on the privilege log all address how best to communicate 3M's decision to phase out perfluorooctanyl chemistry.  See JAA0023889-JAA0023891 (5/6/2000), JAA0023886-JAA0023888 (5/7/2000), JAA0023883-JAA0023885 (5/8/2000), JAA0023892 (5/10/2000), JAA0023893-JAA0023895 (5/14/2000), and JAA0023896-JAA0023898 (5/15/2000).   This announcement received significant attention, and providing appropriate context was important to minimizing the risk of litigation.  (Although the privilege log states that JAA0023889-JAA0023891 (5/6/2000) was sent from me to Mike Dougherty, I believe after further review that the document was sent from Mike Dougherty to me.)

46. JAA0022699 - JAA0022704 is an undated memorandum with handwritten notes from my files.  The memorandum outlines questions about perfluorochemicals to address in order to carry out work commissioned by Mr. Allison.

47. JAA0023437-JAA0023440, JAA0023441-JAA0023442, and JAA0023507-JAA0023509  are multiple copies of a memorandum dated April 1, 1999 that JAA prepared to respond to unsupported allegations regarding PFOS.  JAA0023477-JAA0023484 and JAA0023485-JAA0023492 are copies of a paper dated April 5, 1999 that I drafted with input from John Adams critiquing the technical issues raised by these allegations.  JAA0023448-JAA0023449 and JAA0023459-JAA0023460 are transmittal letters showing that JAA transmitted the critique to Mark Fenner and Mike Dougherty in the communications department at 3M, and to Bob Sussman and Julia Hatcher, 3M's outside regulatory counsel at Latham and Watkins.  JAA0023931-JAA0023937 is an analysis I prepared critiquing a presentation at a conference raising these same allegations.  JAA0023443-JAA0023447 (4/2/99) and

JAA0023493 - JAA0023498 (4/6/99) are draft memoranda prepared by another 3M litigation

consultant and shared with JAA and 3M Management, also responding to the same issue. All of

these documents were prepared at the request and under the direction of John Allison (3M's lead

litigation attorney) .

48. All of these activities were in furtherance of our retention to assist counsel in advising

3M and in preparing for litigation.

**Production of Documents**

49. JAA has not done work for DuPont with regard to perfluorochemicals. JAA's only

work directly for DuPont, on an unrelated topic, pre-dated my joining JAA in 1995.

50. In approximately 2003, JAA was retained to represent the Fluoropolymer

Manufacturers Group, housed at the Society of the Plastics Industry, a trade association of

companies who manufacture or manufactured fluoropolymer products using one particular

perfluorochemical, PFOA. DuPont, is a member of that group. JAA has produced its files

relating to that work in response to the subpoena, and no claims of privilege have been asserted

with respect to those documents created in the course of our work for the trade association.

51. JAA is a small firm. In addition to the two principals, John Adams and myself, there

are four other professional staff, one support staff person, and several outside consultants who do

contract work. Retaining counsel for our company and responding to this subpoena has been a

significant burden to us. We have complied as expeditiously as possible, despite the disruption

to our business.

52. In responding to the subpoena, JAA has been fully forthcoming. We have produced

over 17,000 documents to Plaintiffs' counsel. The first round of document production, covering

approximately eight boxes of documents from JAA's hard copy files, was done entirely at JAA's

expense. JAA's electronically-stored information is not segregated by client, and our attorney

spent significant time negotiating search terms and cost reimbursement arrangements with

plaintiffs' counsel with regard to electronic information. Plaintiffs' counsel have agreed to bear

only half of the IT and legal review costs for electronically-stored information.

53. I have carefully reviewed all of the JAA documents with respect to which 3M has

asserted privilege or attorney work product claims. All of the documents included on the

privilege log were created or received by JAA in connection with work under the supervision of

3M's counsel.


This concludes my affidavit.


*John E. Heinze*

John E. Heinze, Ph.D.

Sworn and subscribed to before me this 11th day of January 2008:

Notary Public
My commission expires:

Georgia M. Dickens
Notary Public, District of Columbia
My Commission Expires 01/01/2011

17

**Attachment A**
(As Amended January 4, 2008)

Response of John Adams Associates Inc. to Subpoenas – Privilege Log of 3M Company

Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)

Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0022699 JAA0022704 | Undated | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-client work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum with Handwritten Notes | AC; WP |
| JAA0022755 JAA0022756 | Undated | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0022854 JAA0022858 | 10/2/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential handwritten notes by 3M Outside Consultant summarizing a meeting between 3M Outside Consultant, 3M Management, and 3M In-house Counsel (John Allison) to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Handwritten Notes | AC; WP |
| JAA0022859 JAA0022874 | 10/19/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Outside Consultant at the request of counsel providing information to facilitate the rendition of legal advice regarding fluorochemicals. | Draft Outline with Handwritten Notes | AC; WP |

1

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Howe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0022875 | 11/3/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Outside Consultant at the request of counsel providing information to facilitate the rendition of legal advice regarding communications concerning fluorochemicals. | Draft Outline with Handwritten Notes | AC; WP |
| JAA0022876 JAA0022877 | 11/3/1998 | Doughtery-MI (3M Communications Manager) | Harnetty-MC (3M Division Vice President); Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Management and sent to 3M Management and 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications concerning fluorochemicals. | Draft Outline with Handwritten Notes | AC; WP |

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0022878 – JAA0022881 | 11/5/1998 | Garry-DB (3M Manager Public Issues); Milne-JD (3M State and Local Government Affairs Manager) | Allison-JR (3M Senior Counsel); Dzurilla-JS (3M Representative Government Relations); Dougherty-MI (3M Communications Manager); Fenner-MA (3M Program Manager); Haynes-MW (3M Representative Government Relations); Hooper-TD (3M Representative); Peterson-HH (3M Federal Government Affairs); Sanders-DA (3M Director Life Cycle Management); Sussman-RM (Latham & Watkins, 3M Outside Counsel); Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Management and sent to 3M In-House Counsel, 3M Management, 3M Outside Counsel, and 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding a draft communication on fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |

3

**Attachment A**
(As Amended January 4, 2008)
In Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
In Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023825 JAA0023826 | 11/12/98 | DiPasquale-TJ (3M Assistant General Counsel) | Nash-MA (3M Senior Counsel); Zobel-LR (3M Medical Staff Vice President); Mandel -JH (3M Occupational Medicine); Bacon-DL (3M Technical Director Environmental Lab); Weppner-WA (3M Director, Environmental Health Safety Regulatory Affairs); Boyd-J and Smith-L (3M PCP Environmental Health Safety and Regulatory Affairs); 3M Outside Consultant (Heinze-J, John Adams Associates) | | Confidential communication bearing the legend, "Attorney Client and Work Product Privileged," prepared by 3M In-House Counsel and sent to 3M Management, In-House Counsel and 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding fluorochemical issues and in anticipation of regulatory proceedings and litigation. | Agenda with Handwritten Notes | AC; WP |
| JAA0022882 | 11/13/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | Garry-DB (3M Manager Public Issues) | | Confidential communications prepared by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice in preparation for 3M discussions with EPA regarding fluorochemicals and in anticipation of regulatory proceedings. | Draft Memorandum | AC; WP |

4

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Howe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0022883 | 11/13/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | Garry-DB (3M Manager Public Issues) | | Confidential communication prepared in anticipation of regulatory proceedings by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice in preparation for 3M discussions with EPA regarding fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023081 | 11/23/1998 | Dougherty-MI (3M Communications Manager) | Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Management and sent to 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding proposed communications regarding fluorochemicals. | Agenda with Handwritten Notes | AC; WP |
| JAA0023082 JAA0023227 | 11/24/1998 | Dougherty-MI (3M Communications Manager) | Allison-JR (3M Senior Counsel); DiPasquale-TJ (3M Assistant General Counsel); Fenner-MA (3M Director Corporate Communications); Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Management and Outside Consultants retained by counsel and sent to 3M Management and 3M In-house Counsel providing information to facilitate the rendition of legal advice. | Draft Memorandum | AC; WP |
| JAA0023228 JAA0023232 | 11/27/1998 | Adams-J (John Adams Associates, 3M Outside Consultant) | Allison-JR (3M Senior Counsel) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Outside Consultant and sent to 3M In-house Counsel providing information to facilitate the rendition of legal advice regarding communications on fluorochemicals. | Draft Memorandum | AC; WP |

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023233 JAA0023236 | 11/30/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | 3M Outside Consultant | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Outside Consultant and sent to 3M Outside Consultant (also retained by counsel) providing information to facilitate the rendition of legal advice regarding communications on fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023237 JAA0023241 | 11/30/1998 | Adams-J (John Adams Associates, 3M Outside Consultant) | | | Confidential handwritten notes prepared by 3M Outside Consultant to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Handwritten Notes | AC; WP |
| JAA0023242 JAA0023244 | 12/3/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding fluorochemical communications. | Draft Memorandum | AC; WP |
| JAA023417 JAA023418 | 12/4/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared by 3M Outside Consultant and sent to 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding fluorochemical communications. | Memorandum | WP |

6

Attachment A
(As Amended January 4, 2008)
[Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)]

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023245 JAA0023249 | 12/14/1998 | Sussman-RM (Latham & Watkins, 3M Outside Counsel); Hatcher-JA (Latham & Watkins, 3M Outside Counsel) | DiPasquale-TJ (3M Assistant General Counsel) | Heinze-J (John Adams Associates, 3M Outside Consultant) | Confidential communication providing legal advice regarding application of the Toxic Substances Control Act Section 8(e), prepared in anticipation of regulatory proceedings by 3M Outside Counsel and sent to 3M In-house Counsel. | Letter | AC; WP |
| JAA0023250 JAA0023254 | 12/14/1998 | Sussman-RM (Latham & Watkins, 3M Outside Counsel); Hatcher-JA (Latham & Watkins, 3M Outside Counsel) | DiPasquale-TJ (3M Assistant General Counsel) | Heinze-J (John Adams Associates, 3M Outside Consultant) | Confidential communication providing legal advice regarding application of the Toxic Substances Control Act Section 8(e), prepared in anticipation of regulatory proceedings by 3M Outside Counsel and sent to 3M In-house Counsel. | Letter | AC; WP |
| JAA0023255 JAA0023259 | 12/16/1998 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential handwritten notes prepared by 3M Outside Consultant summarizing a meeting between 3M Outside Consultant, 3M Management, and 3M In-house Counsel John Allison and Tom DiPasquale and 3M Outside Counsel Dale Larson providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Handwritten Notes | AC; WP |

**Attachment A**
(As Amended January 4, 2008)

Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company

Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)

Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023260 JAA0023261 | 1/27/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Adams-J (John Adams Associates, 3M Outside Consultant) | | The draft document is addressed to Hooper-T (3M Government Affairs) with a cc to Dougherty-MI (3M Communications Manager), but bears a handwritten note indicating it was not sent. Handwritten notation transmits draft from Heinze to Adams with request for comment. Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023326 JAA0023328 | 2/2/1999 | Adams-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client privileged communication," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications regarding fluorochemicals | Memorandum | AC; WP |

8

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023329 JAA0023331 | 2/2/1999 | Adams-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications regarding fluorochemicals. | Memorandum | AC; WP |
| JAA0023332 JAA0023334 | 2/4/1999 | Adams-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client privileged communication," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications regarding fluorochemicals. | Memorandum | AC; WP |
| JAA0023335 | 2/12/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential handwritten notes by 3M Outside Consultant summarizing discussions between 3M Outside Consultant and 3M In-house Counsel John Allison, in anticipation of regulatory proceedings and litigation and to facilitate the rendition of legal advice regarding proposed communications regarding fluorochemicals. | Handwritten Notes | AC; WP |

**Attachment A**
(As Amended January 4, 2008)

Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company

Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)

Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023336 JAA0023339 | 2/15/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications regarding fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023340 JAA0023342 | 2/15/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023343 JAA0023354 | 2/16/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice concerning fluorochemicals. | Chart with Handwritten Notes | AC; WP |

**Attachment A**
**(As Amended January 4, 2008)**
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023355 JAA0023381 | 2/16/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | 3M Outside Consultant | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Outside Consultant (also retained by 3M counsel) to facilitate the rendition of legal advice concerning fluorochemicals. | Memorandum and attached charts | AC; WP |
| JAA0023394 JAA0023398 | 2/16/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant to facilitate the rendition of legal advice concerning fluorochemicals. Handwritten notes reflect discussion with 3M In-House Counsel John Allison. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023403 JAA0023404 | 2/16/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant to facilitate the rendition of legal advice concerning fluorochemicals. | Memorandum with Handwritten Notes | AC; WP |

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Howe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023382 JAA0023393 | 2/16/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant to facilitate the rendition of legal advice concerning these issues. | Draft Chart with Handwritten Notes | AC, WP |
| JAA0023399 JAA0023402 | 2/17/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential handwritten notes prepared by 3M Outside Consultant summarizing a meeting between 3M Outside Consultant, 3M Management, and 3M In-house Counsel John Allison in anticipation of regulatory proceedings and litigation and to facilitate the rendition of legal advice regarding fluorochemicals. | Handwritten Notes | AC; WP |
| JAA0023405 JAA0023407 | 2/17/1999 | Weppner-WA (3M Director Environmental Health Safety Regulatory Affairs) | Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication prepared by 3M Management and sent to 3M Outside Consultant providing information to facilitate the rendition of legal advice and in anticipation of regulatory proceedings and litigation. | Draft Letter and Memoranda | AC; WP |
| JAA0023408 | 2/18/1999 | Dougherty-MI (3M Communications Manager) | Zimmerman-RM (3M Laboratory Manager); Palmquist-J (3M In-House Counsel); Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M Management, 3M In-House Counsel and 3M Outside Consultant providing information to facilitate the rendition of legal advice concerning fluorochemicals. | Draft Memorandum | AC; WP |

Attachment A
(As Amended January 4, 2008)

1364

Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023409 JAA0023416 | 2/22/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | 3M Outside Consultant | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Outside Consultant (also retained by counsel) providing information to facilitate the rendition of legal advice. | Memorandum | AC; WP |
| JAA0023419 JAA0023422 | 2/23/1999 | Beach-SA (3M Senior Environmental Scientist) | Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M Outside Consultant providing information to facilitate the rendition of legal advice. | Memorandum with Handwritten Notes | AC; WP |
| JAA0023423 JAA0023428 | 3/15/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-Client and Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice. | Memorandum | AC; WP |
| JAA0023429 JAA0023434 | 3/15/1999 | Beach-SA (3M Senior Environmental Scientist) | Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M Outside Consultant providing information to facilitate the rendition of legal advice. | Draft Memorandum with Handwritten Notes | AC; WP |

Attachment A
(As Amended January 4, 2008)
[16]
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023437 JAA0023440 | 4/1/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice regarding fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023441 JAA0023442 | 4/1/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023443 JAA0023447 | 4/2/1999 | 3M Outside Consultant | Reich-CC (3M Executive Vice President); John Adams & Associates, 3M Outside Consultant | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant (also retained by counsel) and sent to 3M Management and 3M Outside Consultant to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |

Attachment A
[As Amended January 4, 2008]
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023448 JAA0023449 | 4/5/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | Fenner-MA (3M Director Corporate Communications); Dougherty-MI (3M Communications Manager); | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice. | Memorandum | AC; WP |
| JAA0023459 JAA0023460 | 4/5/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | Sussman-RM (Latham & Watkins, 3M Outside Counsel); Hatcher-JA (Latham & Watkins, 3M Outside Counsel) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Outside Counsel to facilitate the rendition of legal advice. | Memorandum | AC; WP |
| JAA0023450 JAA0023457 JAA0023461 JAA0023468 JAA0023469 JAA0023476 JAA0023477 JAA0023484 | 4/5/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | Fenner-MA (3M Director Corporate Communications); Dougherty-MI (3M Communications Manager); Sussman-RM (Latham & Watkins, 3M Outside Counsel); Hatcher-JA (Latham & Watkins, 3M Outside Counsel) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Management and 3M Outside Counsel to facilitate the rendition of legal advice. | Draft Memorandum (multiple copies) (attachment to JAA0023448-JAA0023449 and JAA0023459-JAA0023460) | AC; WP |

15

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. W.V.)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023485 JAA0023492 | 4/5/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager); Reich-CC (3M Executive Vice President); Zobel-LR (3M Medical Director); Allison-JR (3M Senior Counsel); DiPasquale-TJ (3M Senior Counsel); Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant to facilitate the rendition of legal advice regarding responses to a critique of a fluorochemical risk assessment. | Memorandum (same as prior entry) with Handwritten Notes | AC; WP |
| JAA0023493 JAA0023498 | 4/6/1999 | 3M Outside Consultant | Dougherty-MI (3M Communications Manager); Reich-CC (3M Executive Vice President); Zobel-LR (3M Medical Director); Allison-JR (3M Senior Counsel); DiPasquale-TJ (3M Senior Counsel); | Allison-JR (3M Senior Counsel); Bacon-DL (3M Environmental Laboratory Manager); Beach-SA (3M Senior Environmental Scientist); Fenner-MA (3M Director Corporate Communications); Gahlon-DE (3M Staff Vice | Confidential communication bearing the legend, "Attorney-client privileged work product," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management and In-house Counsel to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum | AC; WP |
| JAA0023512 | 4/6/1999 | Dougherty-MI (3M Communications Manager) | DiPasquale-TJ (3M Senior Counsel); Larson-GM (3M Associate General Counsel and Corporate Secretary); Reich-CC (3M Executive Vice President); Sanders-DA (3M Director Life Cycle Management); Sonstegard-DA (3M Staff Vice President); Weppner-WA (3M Director Environmental Health Safety Regulatory Affairs); Zobel-LR (3M Medical | | Confidential communication bearing the legend, "Attorney-client and Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M In-House Counsel, 3M Management, 3M Outside Counsel, and 3M Outside Consultant providing information to facilitate the rendition of legal advice. | Draft Memorandum | AC; WP |

16

**Attachment A**
(As Amended January 4, 2008)

Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company

Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)

Howe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| | | | Director); Heinze-J (John Adams Associations, 3M Outside Consultant); 3M Outside Consultant | President); Gauebel-O (3M Management); Johnson-D (Larson & King, 3M Outside Counsel); Maruoka-K (3M Laboratory Manager); Renner-RH (3M Public Relations Manager); Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs); Thun-F (3M Corporate Marketing & Communication Europe); Welsh-CJ (3M Supervisor Marketing/ Communications Development) | | | |

17

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023507<br>JAA0023509 | 4/30/1999 | Adams-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-Client Work Product Privileged", prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum | AC; WP |

**Attachment A**
**(As Amended January 4, 2008)**
**Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company**
**Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)**
**Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)**

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023516 – JAA0023592 | 5/24/1999 | John R. Cornwell (3M Communications Manager) | Allison - JR (3M Senior Counsel); Bacon - DL (3M Technical Director Environmental Lab); Blyth - M (3M United Kingdom); Cornwell - J (3M Communications Manager); Cox - RM (3M Europe); Davis - L (Patton Boggs, 3M Outside Counsel); Dipasquale - TJ (3M Assistant General Counsel); Dougherty - M (3M Communications Manager); Fenner - MA (3M Director Corporate Communications); Gahlon - DE (3M Staff Vice President); Garry - D (3M Manager Public Issues); Gifiths - T (3M United Kingdom); Kiester - CE (3M Senior Vice President); Larson - DI (Larson & King, 3M Outside Counsel); Ley - C (3M Occupational Medicine); Mandel - JH (3M Associate Medical Director); | Fire Protection Lab; ITSD Laboratory; Pharmaceuticals Services | Confidential communication bearing the legend, "Attorney-client and work product privileged" prepared in anticipation of regulatory proceedings and litigation by 3M Management and Outside Consultants retained by counsel and sent to 3M Management and 3M In-house Counsel to facilitate the rendition of legal advice. | Draft Plan | AC, WP |

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| | | | McGinley - D (International Marketing Director); Perkins - B (3M Senior Toxicology Specialist); Reich - C (3M Executive Vice President); Renner - R (3M Public Relations Manager); Scanlon - J (3M Assistant General Counsel & Corporate Secretary); Schuster - J (3M Marketing Manager Foam Systems); Schwartz - C (3M Marketing Manager); Scullin - J (3M Communications Manager); Sonstegard - DA (3M Staff Vice President); Wagner - H (3M Public Relations Manager); Welsh - C (3M Marketing/Communications Development); Wepper - WA (3M Director, Environmental Health Safety Regulatory Affairs); | | | | |

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| AA0023593 | 5/24/1999 | Sussman-RM (Latham & Watkins, 3M Outside Counsel); Hatcher-JA (Latham & Watkins, 3M Outside Counsel) | DiPasquale-TJ (3M Assistant General Counsel) | | Confidential communication prepared in anticipation of regulatory proceedings by 3M Outside Counsel and sent to 3M In-house Counsel to facilitate the rendition of legal advice regarding submissions to the Toxic Substances Control Act Section 8(e) docket. | Letter | AC; WP |
| AA0023598 AA0023600 | 6/25/1999 | Adams-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Fax transmittal, Draft Memorandum; additional copy of Draft Memorandum | AC; WP |
| AA0023601 AA0023602 | | | Zobel, LR (3M Medical Staff Vice President); 3M Pharmaceuticals; Energy Lab; IT&SD; Occupational Health & Environmental Safety; Heinze - J (John Adams Associates, 3M Outside Consultant); Outside Consultant to 3M (Identity Confidential). | | | | |

21

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont De De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023608 | 7/6/1999 | Reimer-VL (3M Environmental Technology & Safety Services Laboratory Manager) | Nash-MA (3M Senior Counsel); Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs) | | Confidential communication bearing the legend, "Attorney/client and product privileged," prepared in anticipation of regulatory proceedings and litigation and sent to 3M Management and 3M In-house Counsel providing information to facilitate the rendition of legal advice regarding a draft communication prepared for EPA. Stamped received by M.A.Nash Jul 08 1999. | Memorandum | AC; WP |
| JAA0023607 | 7/13/1999 | Nash-MA (3M Senior Counsel) | Wepper-WA (3M Director Environmental Health Safety Regulatory Affairs); Bacon-DL (3M Environmental Laboratory Manager); Allison-JR (3M Senior Counsel); Sanders-DA (3M Director Life Cycle Management); Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M In-house Counsel and sent to 3M Management and 3M In-house Counsel providing information to facilitate the rendition of legal advice regarding a draft communication to EPA on fluorochemicals. | Memorandum | AC; WP |
| JAA0023662 JAA0023664 | 8/3/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information in response to Mr. Nash's request of July 13, 1999 to facilitate the rendition of legal advice. | Memorandum | AC; WP |

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023666 JAA0023672 | 8/11/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum | AC; WP |
| JAA0023673 | 8/26/1999 | Nash-MA (3M Senior Counsel) | Weppner-WA (3M Director Environmental Health Safety Regulatory Affairs); Bacon-DL (3M Environmental Laboratory Manager); Allison-JR (3M Senior Counsel); Sanders-DA (3M Director Life Cycle Management); Dougherty-MI (3M Communications Manager); Wendling-LA (3M Vice President); Zobel-LR (3M Medical Staff Vice President); Hakes-DC (3M Regulatory Affairs Specialist) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M In-house Counsel and sent to 3M Management and 3M In-house Counsel providing information to facilitate the rendition of legal advice. | Memorandum | AC; WP |

23

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023725 | 9/7/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-client and attorney work-product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice. | Draft Memorandum | AC; WP |
| JAA0023726 JAA0023764 | 9/7/1999 | Dougherty-MI (3M Communications Manager) | Sanders-DA (3M Director Life Cycle Management); 3M Japan management, believed to include Yamana-S and Itoh-H; DiPasquale-TJ (3M Assistant General Counsel); Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M Management and 3M In-house and Outside Counsel and 3M Consultant providing information to facilitate the rendition of legal advice regarding fluorochemical communications and submissions to regulatory agencies. | Agenda with Handwritten Notes | AC; WP |
| JAA0023765 | 9/9/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding fluorochemical communications. | Memorandum | AC; WP |

24

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023766 | 9/22/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged", prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management discussing legal advice and providing information to facilitate the rendition of legal advice regarding proposed submission to EPA. | Memorandum | AC; WP |
| JAA0023767 JAA0023774 | 9/24/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager); Weppner-WA (3M Director Environmental Health Safety Regulatory Affairs) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged", prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding regulatory proceedings by EPA. | Memorandum | AC; WP |
| JAA0023775 JAA0023780 | 9/26/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged", prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Memorandum with Handwritten Notes | AC; WP |

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023781 JAA0023782 | 9/30/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged", prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant setting forth draft of information to be sent to 3M to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023785 | 9/30/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication within 3M Outside Consultant firm discussing information prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant to facilitate rendition of legal advice. | Handwritten Memorandum | AC; WP |
| JAA0023783 JAA0023784 | 10/1/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager); Sanders-D (3M Director Life Cycle Management) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged", prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications with respect to fluorochemicals. | Memorandum | AC; WP |

**Attachment A**

**[As Amended January 4, 2008)**

**Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company**

**Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)**

**Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)**

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023786 JAA0023787 | 10/3/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager); | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding potential EPA proceedings with respect to fluorochemicals. | Memorandum | AC; WP |
| JAA0023788 JAA0023790 | 10/12/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023791 JAA0023795 | 10/15/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Memorandum with Handwritten Notes | AC; WP |

27

**Attachment A (As Amended January 4, 2008)**

Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company

Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)

Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023796 | 10/15/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Beach-SA (3M Senior Environmental Scientist); Bacon-DL (3M Environmental Laboratory Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Memorandum | AC, WP |
| JAA0023797 | 10/28/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Handwritten notes of Confidential communication" prepared by 3M Outside Consultant regarding discussion with 3M to gather information to facilitate the rendition of legal advice and in anticipation of regulatory proceedings and litigation. | Handwritten Notes | AC, WP |
| JAA0023798 | 10/28/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Beach-SA (3M Senior Environmental Scientist) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Memorandum | AC, WP |

28

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023799 JAA0023810 | 11/4/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MJ (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding EPA proceedings. | Memorandum with handwritten notes | AC; WP |
| JAA0023811 JAA0023821 | 11/4/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MJ (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding EPA proceedings. | Draft Memorandum | AC; WP |
| JAA0023827 JAA0023832 | 11/30/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MJ (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding anticipated regulatory proceedings. | Letter | AC; WP |

29

**Attachment A**
**(As Amended January 4, 2008)**
**Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company**
**Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)**
**Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)**

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023833 JAA0023835 | 12/2/1999 | Henze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023836 JAA0023841 | 12/3/1999 | Henze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-Client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023842 JAA0023843 JAA0023848 | 12/3/1999 | Adams-J (John Adams Associates, 3M Outside Consultant) | Henze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Outside Consultant discussing information to be provided to 3M to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Handwritten Memorandum; attached Draft Memorandum with Handwritten Notes | AC; WP |

Attachment A
(As Amended January 4, 2008)
1764
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023849 JAA0023855 | 12/5/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication and attached confidential memorandum bearing the legend, "Attorney-client and Attorney Work-Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Outside Consultant for comment on draft to be provided to 3M with information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Handwritten Memorandum and attached Draft Memorandum | AC; WP |
| JAA0023856 JAA0023859 | 12/5/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023860 JAA0023869 | 12/6/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Memorandum | AC; WP |

**Attachment A**
(As Amended January 4, 2008)
(Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023870 JAA0023875 | 12/20/1999 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Memorandum | AC; WP |
| JAA0023876 | 1/27/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | | | Confidential handwritten notes by 3M Outside Consultant summarizing discussion with 3M Outside Counsel Kathy Rhyne (King & Spalding) prepared in anticipation of regulatory proceedings and litigation and to facilitate the rendition of legal advice concerning fluorochemicals. | Handwritten Notes | AC; WP |
| JAA0023877 JAA0023878 | 3/28/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice. | Memorandum | AC; WP |

32

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023879 JAA0023882 | 4/26/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding anticipated regulatory proceedings. | Memorandum | AC; WP |
| JAA0023889 JAA0023891 | 5/6/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023886 JAA0023888 | 5/7/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-client and work product privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum | AC; WP |

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023883 JAA0023885 | 5/8/2000 | Dougherty-M (3M Communications Manager) | Heinze-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend, "Attorney-Client and Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |
| JAA0023892 | 5/10/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-Client Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum | AC; WP |
| JAA0023893 JAA0023895 | 5/14/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-M (3M Communications Manager) | Adams-J (John Adams Associates, 3M Outside Consultant) | Confidential communication bearing the legend, "Attorney-Client and Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum with Handwritten Notes | AC; WP |

34

**Attachment A**
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023896 JAA0023898 | 5/15/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MI (3M Communications Manager) | | Confidential communication bearing the legend, "Attorney-Client and Work Product Privileged," prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Memorandum | AC; WP |
| JAA0023912 JAA0023915 | 10/6/2000 | Sussman-RM (Latham & Watkins, 3M Outside Counsel) | DiPasquale-TJ (3M Assistant General Counsel); Reich-CC (3M Executive Vice President) | Bacon-DL (3M Environmental Laboratory Manager); Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs); Reed-KE (3M Staff Vice President); Zobel-LR (3M Medical Staff Vice President); Sanders-DA (3M Director Life Cycle Management); Dougherty-MI (3M Communications Manager); Weppner-WA (3M | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M Outside Counsel and sent to 3M In-house Counsel, 3M Management, 3M Outside Counsel and 3M Outside Consultant providing legal advice regarding regulatory proceedings and communications related to fluorochemicals. | E-Mail Chain | AC; WP |

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023916 - JAA0023930 | 11/15/2000 | DiPasquale-TJ (3M Assistant General Counsel) | Harnetty-MC (3M Division Vice President); Ihlenfeld-JV (3M Vice President); Walker-JL (3M General Manager); Wendling-LA (3M Vice President); Turner-FR (3M Management); Carson-JF (3M Management); Sanders-DA (3M Director Life Cycle Management); Weppner-WA (3M Director Environmental Health Safety Regulatory Affairs); Reed-KE (3M Staff Vice President); Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs); Dougherty-MI (3M Communications Manager); Zobel-LR (3M | Director Environmental Health Safety Regulatory Affairs); Hatcher-JA (Latham & Watkins, 3M Outside Counsel); Heinze-J (John Adams Associates, 3M Outside Consultant) | Heinze-J (John Adams Associates, 3M Outside Consultant) | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M In-house Counsel and sent to 3M Management, providing draft submission to EPA prepared by 3M Outside Counsel Hatcher-JA (Latham & Watkins) and reflecting privileged request for and provision of legal advice. | Electronic Mail and Attachment | AC; WP |

36

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Howe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023931 JAA0023937 | 12/21/2000 | Heinze-J (John Adams Associates, 3M Outside Consultant) | Dougherty-MJ (3M Communications Manager) | Adams-J (John Adams Associates, 3M Outside Consultant) | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M Outside Consultant and sent to 3M Management providing information to facilitate the rendition of legal advice regarding fluorochemicals. | Electronic Mail and Attachment | AC, WP |
| JAA0023938 | 1/22/2001 | DiPasquale-TJ (3M Assistant General Counsel) | Sussman-RM (Latham & Watkins, 3M Outside Counsel); Rhyne-KL (King & Spalding, 3M Outside Counsel); Hatcher-JA (Latham & Watkins, 3M Outside Counsel); Quarles-J (Morgan Lewis & Bockius, 3M Outside Counsel) | Nash-MA (3M Senior Counsel); Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs); Scanlon-JJ (3M Assistant General Counsel); Dougherty-MJ (3M Communications Manager); Heinze-J (John Adams Associates, 3M Outside Consultant) | Confidential communication bearing the legend, "Attorney-Client privileged," prepared in anticipation of regulatory proceedings and litigation by 3M In-house Counsel and sent to 3M Outside Counsel and 3M Management summarizing and requesting legal advice. | Letter | AC, WP |

Attachment A
(As Amended January 4, 2008)
Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company
Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)
Rowe, et al. v. E.I. du Pont de De Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA023939 JAA023947 | 1/19/2001 | Arndt-LA (3M Administrative) on behalf of Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs) | DiPasquale-TJ (3M Assistant General Counsel) | Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs); Bacon-DL (3M Environmental Laboratory Manager); Dougherty-MI (3M Communications Manager); Heinze-J (John Adams Associates, 3M Outside Consultant) | Confidential communication prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M In-House Counsel and 3M Management providing information to facilitate the rendition of legal advice regarding EPA and OECD proceedings. | E-mail chain and attached slides | AC; WP |
| JAA023948 JAA023953 | 9/6/2001 | Remer-RH (3M Public Relations Manager) | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend "Attorney/Client Privileged Material" prepared in anticipation of regulatory proceedings and litigation by 3M Management and sent to 3M Outside Consultant providing information for 3M Outside Consultant to facilitate the rendition of legal advice regarding proposed communications concerning fluorochemicals. | Draft Memorandum with Handwritten Notes | AC; WP |

**Attachment A**
**(As Amended January 4, 2008)**
**Response of John Adams Associates Inc. to Subpoenas -- Privilege Log of 3M Company**
**Rhodes, et al. v. E.I. du Pont De Nemours and Co., Civil Action No. 06-1810 (S.D. WV)**
**Rowe, et al. v. E.I. du Pont de Nemours and Co., Civil Action No. 06-1810-RMB-AMD (D. NJ)**

| Bates No. | Date | From | To | Copy | Description | Doc. Type | Privilege |
|---|---|---|---|---|---|---|---|
| JAA0023954 - JAA0023959 | 9/7/2001 | Remer-RH (3M Public Relations Manager) | Heinze-J (John Adams Associates, 3M Outside Consultant); Adams-J (John Adams Associates, 3M Outside Consultant) | | Confidential communication bearing the legend "Attorney/Client Privileged Material," prepared in anticipation of regulatory proceedings and litigation providing information to facilitate the rendition of legal advice regarding communications with respect to fluorochemicals. | Draft Memorandum | AC; WP |
| JAA0023822 - JAA0023824 | 11/06/2003 | DiPasquale-TJ (3M Assistant General Counsel) | Allison-JR (3M Assistant General Counsel); Ziegler-RF (3M Senior Vice President, Legal Affairs and General Counsel); Ihlenfeld-JV (3M Vice President); Palensky-FJ (3M Division Vice President); Santoro-MA (3M Director Environmental, Health, Safety & Regulatory Affairs); Gahlon-DE (3M Staff Vice President); Zobel-LR (3M Medical Staff Vice President); Larson-GM (3M Associate General Counsel and Corporate Secretary) | Heinze-J (John Adams Associates, 3M Outside Consultant) | Confidential communication bearing the legend, "Attorney-client privileged attorney work product," prepared by 3M In-House Counsel and sent to 3M Management, 3M In-House Counsel and 3M Outside Consultant providing information to facilitate the rendition of legal advice regarding fluorochemical issues and in anticipation of regulatory proceedings and litigation. | Agenda with Handwritten Notes | AC; WP |

39

# LARSON & COUNSEL, L.L.C.

MINNEAPOLIS
612/339-2020

612/336-9102
FAX 612-336-9100

350 ST. PETER STREET
SUITE 400
SAINT PAUL, MINNESOTA 55102

ST. PAUL
612/223-6501

DALE I. LARSON
612/223-6423
FAX 612/221-9176

September 29, 1998

**CONFIDENTIAL ATTORNEY CLIENT
PRIVILEGE/WORK PRODUCT**

Mr. A. John Adams
John Adams Associates
655 National Press Building
Washington, DC 20045

  Re: F.C. Legal/Communication Defense Consulting Agreement

Dear Mr. Adams:

As you know, the national defense protection of 3M in anticipation and preparation for litigation requires 3M defense counsel, such as Larson & Counsel and/or Zelle & Larson, to retain numerous experts in a number of disciplines to help with the enormous work, ranging from scientific to communications expertise.

Today, the necessity for expertise that can assure the communication of balanced and accurate information is high on the list of important defense resources. The environs that impact and have an interest in such claims have grown dramatically to include both public and private institutions and the public and specialized media. 3M's proper defense requires the resources that can help defense counsel assure balanced and accurate information in this expanded legal environment.

Accordingly, by this letter of understanding, Larson & Counsel hereby retains John Adams Associates to provide professional defense consulting services concerning 3M products involved in so-called chemical or other industrial workplace claims against 3M. Specifically, John Adams Associates will be responsible to Larson & Counsel and other members of 3M's defense team for the communication of balanced and accurate information concerning such claims and 3M products to the expanded audiences that directly or indirectly impact 3M's defense.

Mr. A. John Adams
September 29, 1998
Page 2

Billing should occur on a monthly basis to Larson & Counsel. Fees should be based on your customary preferred rates until you and we can accurately predict the scope and length of efforts required for a payment schedule.

As part of its retention, John Adams Associates has executed the attached Confidentiality Agreement and all entities and persons involved will protect the privileged and work product nature of all materials and documents created or used in the course of this defense effort, excluding only those finally developed for public distribution.

Very truly yours,

LARSON & COUNSEL, LLC

Dale L. Larson

Agreed To:

By: _____
A. John Adams
John Adams Associates

Date: 10/2/98

## CONFIDENTIALITY AGREEMENT

In consideration of the agreement by the undersigned to provide various legal/communication services to Larson & Counsel, LLC regarding 3M chemical products, whereby the undersigned may necessarily be provided documents, some of which may contain trade secrets, attorney work product and other confidential and privileged information which should not be disclosed to anyone (apart from 3M, Larson & Counsel, and such others as may be specifically designated by them), the undersigned agrees to treat such documents in accordance with the following conditions:

- The undersigned agrees to execute any Confidentiality Orders which may be prescribed by order of any court presiding over any of the lawsuits or legal claims which involve the above referenced matters;

- No document produced by a party pursuant to this agreement and no notes concerning such documents (hereafter referred to as "Document(s)") will be copied, shown to or otherwise revealed to any third person or entity (other than at the direction of 3M or Larson & Counsel) prior to the execution of this Agreement and of any applicable court ordered Confidentiality Agreement;

- No disclosure whatsoever of any Documents provided to the undersigned will be permitted to be seen, reviewed, copied, produced or otherwise made known to any person or persons who have not agreed to and execute a copy this Confidentiality Agreement;

- Any and all copies of every Document provided to the undersigned will be returned to Larson & Counsel or to 3M upon the termination of the defense work referenced above or earlier upon demand by Larson & Counsel and/or 3M or upon agreement of the undersigned. Any and all notes concerning said Documents will likewise be destroyed or surrendered to Larson & Counsel or to 3M. In the event of the destruction of such notes, written notification of the occasion and method of destruction will be supplied to Larson & Counsel and/or to 3M;

- Any and all copies of every Document provided by the undersigned to such other third party in accordance with the terms of this agreement, and any notes based upon such Documents, will be returned to the undersigned for disposition in accordance with the preceding paragraph, or destroyed (as the case may be) in accordance with that paragraph.

By:   _____   John E. Heinge, Ph.D.
      A. John Adams
      John Adams Associates

Date:   _6/2/98_____   10/2/98