IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: JOHN ADAMS ASSOCIATES, INC. | Case No. 1:07-mc-00577 |
|  | (Judge Reggie B. Walton) |
| **Related Cases:** |  |
| WILLIAM R. RHODES; RUSSELL H. MILLER; and VALORI A. MACE, | Civil Action Case No. 6:06-530 S.D. W. Va. (Parkersburg Division) |
| Plaintiffs, |  |
| -vs- |  |
| E.I. DUPONT DEMOURS AND COMPANY, |  |
| Defendant. |  |
| and |  |
| RICHARD ROWE; MARY L. CARTER; MICHELLE E. TOMARCHIO; REGINA M. TROUT; ALLEN K. MOORE; CATHERINE A. LAWRENCE; and KATHLEEN K. LEMKE, as Parent and Personal Guardian of DJL, Jr., | Civil Action Case No. 06-1810-RMB-AMD D.N.J. (Camden Vicinage) |
| Plaintiffs, |  |
| -vs- |  |
| E.I. DUPONT DEMOURS AND COMPANY, |  |
| Defendant. |  |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL PRODUCTION PURSUANT TO A SUBPOENA**

I.  **INTRODUCTION**

The centerpiece of the Joint Opposition to Plaintiffs' Motion to Compel are the affidavits of one employee of 3M Company ("3M"), John Allison, who is in-house counsel, and one employee of John Adams Associates Inc. ("JAA"), John Heinze, both of whom contend, summarily, that the work JAA did for 3M beginning in 1998, as embodied in responsive documents that JAA withheld from production, was in anticipation of litigation. Given these summary contentions, and Plaintiffs' alleged failure to show a "substantial need" for the 87 withheld documents, 3M[1] implores the Court to refuse to review the withheld documents *in camera*. Alternatively, 3M argues, the withheld documents are shielded from disclosure by the attorney-client privilege, pursuant to case law from the D.C. Circuit Court of Appeals.

These arguments are unpersuasive for several reasons: (1) because of the summary, uninformative nature of both the affidavits and the privilege log, it is not possible to determine whether the withheld documents were prepared in anticipation of litigation without *in camera* review; (2) based on the scant information that has been provided regarding the withheld documents, coupled with the controlling legal authority, several of the withheld documents must be produced as a matter of law; and (3) state law governs 3M's assertion of privilege and does not shield the withheld documents from disclosure.

II.  **ARGUMENT**

    A.  **An In Camera Review of the Withheld Documents is Necessary Because Neither Plaintiffs nor the Court are in Possession of Sufficient Facts to Assess 3M's Assertion of Attorney-Client Privilege and Work Product Doctrine.**

One of the consistent themes throughout the Joint Opposition is 3M's contention that Plaintiffs have failed to clearly articulate the basis for their challenge to the assertion of attorney-

---

[1] Plaintiffs recognize that the Joint Opposition is submitted by both 3M and JAA. Because the privileges are being asserted by 3M, and for shorthand purposes, the parties opposing the Motion to Compel will be referred to collectively as "3M."

2

client privilege or invocation of the work product doctrine. Indeed, Plaintiffs in their initial moving papers pointed out to the Court that providing a complete statement of the governing law was impossible. The reason for this, however, is not because 3M's assertion of privilege and work product is proper or immune from challenge. Rather, it was because the privilege log provided very little illumination as to what the withheld documents actually contained.[2] The affidavits attached to the Joint Opposition have made Plaintiffs – and the Court for that matter – none the wiser. Such documents, to be sure, summarily conclude that the withheld documents were prepared in anticipation of litigation, but without a review by the Court, these conclusions cannot be tested. 3M should not be permitted to superimpose itself as Intervenor *and* Judge.

For this reason, Plaintiffs requested that a certain, efficient procedure be utilized by the Court to test 3M's otherwise unilateral conclusions regarding whether the withheld documents must be produced. This very same procedure – which involves 3M submitting the withheld documents to the Court for *in camera* review, along with the parties subsequently providing their legal reasoning to the Court in oral argument – has been used with great efficiency and success in similar litigation with DuPont, which is the defendant in the underlying cases.

Contrary to 3M's attempt to force Plaintiffs to demonstrate that the withheld documents are not privileged or are not protected from disclosure by the work product doctrine, utilization of the procedure requested by Plaintiffs is also consistent with Rule 26 and the case law interpreting the same. While 3M seems intent on placing focus upon Plaintiffs' obligation to demonstrate "substantial need" before documents prepared in anticipation of litigation will be produced, the language of the rule makes apparent that this obligation only comes to the fore

---

[2] Because 3M had originally designated the Privilege Log itself as confidential, Plaintiffs were unable to attach the same to their Motion or restate the contents of the same within the Motion. 3M has now lifted the confidential designation, revised the Privilege Log in an apparent attempt to correct numerous inaccuracies, and submitted the Privilege Log to the Court in connection with its Joint Opposition.

*after* it is established that the subject documents actually were prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3) ("[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation . . . only upon a showing that the party seeking the discovery has substantial need of the materials . . . ."). Indeed, the law is clear that it is the party asserting the privilege or work product - in this case 3M - that bears the burden of demonstrating that either or both is appropriate. *See Minebea Co. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) ("It is also established that the party asserting the attorney-client or work product privilege always bears the burden of demonstrating that the communications/documents sought to be shielded are, in fact, privileged."). An *in camera* review of the withheld documents is clearly appropriate to determine if 3M's assertions of privilege and work product are appropriate. If that determination is made in 3M's favor by the Court, Plaintiffs will then be in a position to demonstrate that they nevertheless have a substantial need for the work product documents.

Moreover, *in camera* review should not substantially burden the parties or the Court. Only 87 withheld documents remain at issue. This is not a situation where thousands of documents have been withheld necessitating enormous judicial resources for *in camera* review or the appointment of a special master. Plaintiffs' propose procedure efficiently will permit the Court and the parties to address the privilege challenges.

**B.    Compelling Production of the Withheld Documents is Appropriate.**

That an in camera review is appropriate is not to say, however, that the little information 3M has revealed regarding the withheld documents fails to provide the Court with a basis to conclude, as a matter of law, that the attorney-client privilege and work product doctrine are inapplicable to this case. According to Mr. Allison, once 3M became aware that its manufactured perfluorinated compounds ("PFCs") were present in the blood of the general

4

population, the company wanted to control the content and timing of communications relating to PFCs that were deemed suitable for release to the public. JAA, which is a public relations consulting firm, was hired to help accomplish this goal, but it is not altogether clear what JAA precisely did once hired, and even less clear how the documents generated in connection with its work are protected from disclosure by the attorney-client privilege and work product doctrine.

        1.    The withheld documents are not shielded from disclosure by the attorney-client privilege.

3M's assertion that the withheld documents are shielded from production by the attorney-client privilege is incorrect as a matter of law. 3M does not appear to dispute that, pursuant to Rule 501 of the Federal Rules of Evidence, state law will govern the assertion of attorney-client privilege in this case. 3M does take issue, however, with the equally obvious principle that such law is the law of New Jersey (Rowe) and West Virginia (Rhodes). In particular, 3M argues that the state law of its home state, Minnesota, should be utilized to test its assertion of attorney-client privilege.

Plaintiffs are unaware, however, of any legal authority – and 3M points the Court to none – mandating that the law of the state where a party has its headquarters must be applied to such party's assertion of attorney-client privilege. And, despite this contention that Minnesota law should govern the assertion of attorney-client privilege in this case, the only legal authority 3M cites in support of the propriety of the assertion of privilege comes from the D.C. Circuit Court of Appeals. (*See* Joint Opp. at 9 (citing *FTC v. GlaxoSmithKline*, 294 F.3d 141 (D.C. Cir. 2002).)

Plaintiffs have been unable to locate a similar departure from general attorney-client privilege jurisprudence in either West Virginia or New Jersey. Under New Jersey law, "[t]he attorney-client privilege is strictly and narrowly construed for the quite obvious reason that it has

the potential to frustrate the court's truth-seeking function." *Amatuzio v. Gandalf Sys. Corp.*, 932 F. Supp. 213, 116 (D.N.J. 1996); *see also State ex rel. Med. Assurance of W. Va., Inc. v. Recht*, 213 W. Va. 457, 583 S.E.2d 80, 105 (W. Va. 2003) ("West Virginia law is clear that the attorney-client privilege is to be given a strict, narrow interpretation."). Thus, the privilege covers "only communications between a client and a lawyer, and the client's communications made through necessary intermediaries and agents." *Rawlings v. Police Dept. of Jersey City*, 133 N.J. 182, 627 A.2d 601, 609 (N.J. 1993). Where a third-party such as JAA is privy to communications or documents that would otherwise be immune from discovery, the attorney-client privilege is considered to be waived and disclosure is required. *See Stayinfront, Inc. v. Tobin*, Civil Action No. 05-4563, 2006 WL 3228033, at *3 (D.N.J. Nov. 3, 2006) (applying New Jersey law); *Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850, 860 (W. Va. 1995). Under the applicable state law, JAA does not come within the attorney-client privilege enjoyed by 3M and its attorneys.

Even if the Court were to reach outside of the state law and apply the principles announced in *GlaxoSmithKline*, the withheld documents still must be produced as a matter of law because all of the requirements necessary for protection under this line of federal authority have not been met. Such principles emanate from the Eighth Circuit's decision in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994). A central requirement from this line of authority is that, in order for an outside consultant to come within the reach of the attorney-client privilege, the outside consultant must be the "functional equivalent" of an employee of the client. *Id.* at 938. Here, according to the affidavits, JAA was permitted to sit in on some meetings and help develop a plan to get out 3M's message regarding PFCs to the public and its customers. This work was not infinite; JAA's work covered roughly three years, and was not, from all indications, anything

6

approaching a daily, nine-to-five job. JAA was not the "functional equivalent" of a 3M employee.

Moreover, regardless of what law is applied, 3M is required to demonstrate that the documents it seeks to withhold from production on the basis of attorney-client privilege were so withheld because they sought or provided *legal* advice, not business advice. *See, e.g., Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990). The vast majority of activities JAA was tasked with carrying out concerned communicating 3M's message regarding PFCs to the public and 3M customers, through the press, mailings, and/or through selected research. There was no legal issue involved for which JAA's input was needed. JAA was not and is not comprised of lawyers licensed to practice law. Rather, JAA was hired as a public relations outfit that happened to be steeped with particular scientific knowledge. While of course it is unclear without having viewed the documents in question, it is difficult to envision how documents generated in connection with mostly public relations, business work could come within the purview of the attorney-client privilege.

2. The withheld documents are not shielded from disclosure by the work product doctrine.

Likewise, the withheld documents are not protected from production by invocation of the work product doctrine. The threshold determination where the work product doctrine is invoked with respect to certain responsive documents is whether such documents were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). "[F]or a document to meet this standard, 'the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" *E.E.O.C. v. Lutheran Soc. Serv.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

Here, Mr. Allison claims that he believed class action litigation to be a real possibility because PFCs had been discovered in the blood of the general population. This is neither objectively reasonable nor does it square with other "facts" of which Mr. Allison was aware. Specifically, Mr. Allison alleges that 3M had been sampling the blood of its employees for years and Mr. Allison alleges that those employees, with much greater exposures, suffered absolutely no ill health effects. He acknowledges further that the general population, in addition to being unaware that the PFCs were in their blood in 1998, had exposure at much lower levels. It flouts common sense and reason to argue, on the one hand, to tout the safety of PFCs based on alleged long-term sampling of highly exposed employees, while arguing, on the other hand, that 3M had a legitimate fear of massive class-action litigation because of the presence of PFCs at levels much lower than the sampled employees. Nor would the type of claim been apparent at that time, much less concrete and specific. It was not objectively or subjectively reasonable, at the time, to have an amorphous and undefined fear of "class action litigation" simply because the general population includes many people.

More fundamentally, however, it appears from the privilege log and the affidavits that the withheld documents had no connection whatsoever to potential, much less actual, litigation. While Mr. Allison's affidavit purports to be long on detail, it is woefully short on information regarding what JAA actually did. The little information that it did provide, however, reveals that the documents connected to JAA's work were business-related, not litigation-related. Case law is clear that such documents, even if attempting in part to fend off litigation well down the road or color the public's perception of such litigation, do not receive the protection of the work product doctrine as a matter of law. *See Cobell v. Norton*, 213 F.R.D. 1, 10-11 (D.D.C. 2003); *Nesse v. Pittman*, 202 F.R.D. 344, 357 (D.D.C. 2001) (holding that dual purpose documents –

business and legal - may only be withheld from production if "primary purpose" was anticipation of litigation); *see also, e.g., In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003); *In re General Instrument Corp.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000); *Ledgin v. Blue Cross & Blue Shield of Kansas City*, 166 F.R.D. 496 (D. Kan. 1996); *Stout v. Illinois Farmer's Ins. Co.*, 150 F.R.D. 594, 600 (S.D. Ind. 1993); *Fox v. California Sierra Fin. Serv.*, 120 F.R.D. 520 (N.D. Cal. 1988); *Soeder v. Gen. Dynamics Corp.*, 90 F.R.D. 253 (D. Nev. 1980).

  Here, JAA's main responsibility to 3M was to assist in putting out to the public and to 3M's customers the image and/or message the company wanted to project with respect to PFCs. This entailed involvement in drafting communications and communications strategy documents, locating scientists who would present a "fair" picture of issues relating to PFCs, setting priorities for the publication of certain research, and drafting key messages or talking points to convey to the public and 3M customers. All of these activities, which comprised, according to the affidavits, the entirety of JAA's activities, are directed predominantly, if not entirely, towards business goals. Plaintiffs are confident that the Court's review of the challenged documents will only serve to confirm this.

  The only other activity for which the affidavits state that JAA provided assistance was "preparing for actual and anticipated regulatory proceedings." (Joint Opp., Ex. A, Allison Aff. ¶ 36.) Nowhere in this paragraph of the affidavit does Mr. Allison explain the nature of these "regulatory proceedings," i.e., whether they were enforcement hearings or, more likely, whether 3M was simply fulfilling its legal and business obligation of providing information to regulatory bodies regarding its business activities. This likewise does not qualify as work product based on the information provided.

### III. CONCLUSION

Just because 3M claims that all of the challenged documents are covered by attorney-client privilege or the work product doctrine does not make it so. Plaintiffs admittedly are hamstrung in elucidating on this point due to the lack of detail in both the Privilege Log itself and the affidavits submitted with 3M's Joint Opposition. Based on the information that is known, however, both regarding the content of the documents and the role of JAA, it is clear that 3M has not carried its burden of demonstrating that the documents can be withheld from production.

Accordingly, we respectfully ask that the Court order 3M to submit the 87 documents for in camera review, and we ask the Court to set a hearing so that the parties can argue their respective positions concerning the documents to assist the Court in making its determinations. Alternatively, if the Court does not deem *in camera* review and a hearing necessary, we ask the Court to order 3M to produce the documents to Plaintiffs immediately.

Respectfully submitted,

/s/   J. Steven Justice
J. Steven Justice (OSB# 0063719)
Taft Stettinius & Hollister LLP
110 North Main Street, Suite 900
Dayton, OH  45402
(Tel)   937-228-2816
(Fax)   937-228-2816
justice@taftlaw.com

Of Counsel:

/s/ Karen J. Marcus
Karen J. Marcus (D.C. Bar # 486435)
Mila F. Bartos  (D.C. Bar #464227)

Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street N.W.
Washington, D.C. 20007
(Tel) (202) 337-8000
(Fax)  (202) 337-8090
kmarcus@finkelsteinthompson.com
mbartos@finkelsteinthompson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via U.S. Mail on the following this **18th** day of January 2008:

Nadira Clarke
Beveridge & Diamond PC
1350 I Street N.W., Suite 700
Washington, D.C. 20005-3311

Courtesy copy to:
Mike McCarthy
Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140

_Karen Marcus_
Karen J. Marcus