IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: JOHN ADAMS ASSOCIATES, INC. | ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 1:07-mc-577 (RBW)**<br><br>Judge Reggie B. Walton<br><br>Hearing: May 2, 2008 |

**JOHN ADAMS ASSOCIATES INC.'S OPPOSITION TO THE PLAINTIFFS'
MOTION TO COMPEL REMOVAL OF CONFIDENTIALITY DESIGNATIONS
<u>ON CERTAIN PRODUCED DOCUMENTS</u>**

**I.      INTRODUCTION**

Plaintiffs ask this court to provide them with unfettered access to certain confidential documents produced by John Adams Associate Inc. ("JAA") in response to four third-party subpoenas issued in connection with litigation against E.I. DuPont De Nemours and Company ("DuPont") in federal district court in New Jersey and West Virginia ("the DuPont litigation").  The documents at issue contain private communications and detailed strategy information which, if made public, would potentially harm JAA's business standing by providing its competitors with valuable information.  It would also threaten the company's reputation and ability to maintain and generate new clients by setting a standard that highly intimate communications regarding their products and business objectives could be released, without limitation, to their respective critics and competitors.

JAA recognizes the right afforded to Plaintiffs under Federal Rule of Civil Procedure 45 to access certain information from third parties, and has endeavored to be responsive and fully cooperative. The instant motion, however, constitutes an abuse of the third-party process.

The documents at issue here are in Plaintiffs' possession, and although designated by JAA as confidential, can be used as necessary by Plaintiffs under the terms of the applicable protective orders in the DuPont litigation. Why then is it so imperative that the court require that JAA abandon the confidentiality designation, and allow unlimited public access? The most likely reason is that Plaintiffs, or more accurately Plaintiffs' counsel, intends to use such documents for purposes outside of the litigation for which the documents were subpoenaed.

JAA, a non-party, with no interest in the DuPont litigation, is entitled to protect the business and reputation which it has worked so hard to establish. Plaintiffs simply do not have the right to use the third-party subpoena process to conduct discovery for unrelated cases. For that reason, as set forth below, JAA opposes Plaintiffs' motion to compel removal of defendant's confidentiality designations on certain produced documents, and requests that the court promptly deny the relief requested.

**II.     BACKGROUND**

The third-party subpoenas at issue in this matter were generated by this Court in connection with *William R. Rhodes v. E.I. DuPont De Nemours and Co.*, Civil Action No. 6:06-0530 (S.D.W.Va) and *Richard Rowe v. E.I. DuPont de Nemours and Co.,* Civil Action No. 06-1810 (D.NJ), two lawsuits alleging a connection between certain DuPont manufacturing facilities and the presence of perfluorochemicals in drinking water. JAA

is not a party to either lawsuit. The subpoenas relate to information and documents generated by JAA in the course of representing the Communications Work Group ("CWG") of the Fluoropolymers Manufacturers Group of the Society of the Plastics Industry ("SPI"), a trade group of which DuPont is a member, and in some instances 3M. *See* Affidavit of John E. Heinze, Ph.D. in Support of Opposition to Motion to Compel Removal of Defendant's Confidentiality Designations on Certain Produced Documents ("Heinze Affidavit"), ¶¶ 8-10. DuPont is not a direct client.

JAA is a small consulting firm with six professional staff. *See* Heinze Affidavit, ¶ 3. In response to the four third-party subpoenas issued in this matter, it has produced over 17,000 documents, and incurred significant legal fees and costs. *See* Heinze Affidavit, ¶ 3. Of the over 17,000 documents JAA has produced, Plaintiffs have only challenged the designation of 174 documents that were designated as confidential pursuant to the protective orders entered in the *Rowe* and *Rhodes* litigation.

The protective order in the *Rowe* litigation provides that parties can make full use of the documents in the underlying litigation if they abide by certain limitations. Specifically, the order provides:

> Confidential Information produced by the Parties shall not be disclosed by the opposing parties, their counsel, employees, contractors, except as follows: (a) to the Court under such safeguards as the Court may require; (b) to the other parties, their counsel, contractors, and employees under their supervision who have signed the Confidentiality Agreement set forth in Attachment A; (c) to the parties' insurance carriers who have signed the Confidentiality Agreement set forth in Attachment A; (d) to court reporters and their staff recording proceedings in this action who have signed the Confidentiality Agreement set forth in Attachment A; (e) to any witness or prospective witness who has signed the Confidentiality Agreement set forth in Attachment A; and (f) to such persons as are utilized by counsel to act as experts at trial or otherwise for expert consultation in this action who have signed the Confidentiality Agreement set forth in Attachment A.

3

Discovery Confidentiality Order ("*Rowe* Protective Order"), ¶ 5.

Similarly, the court in the *Rhodes* litigation issued a protective order pertaining to confidential documents. While that order does not define the term "confidentiality," it nonetheless makes clear that the parties can make full use of the confidential documents covered by the order, provided that they adhere to its terms. Specifically, the *Rhodes* order states:

> If a party wishes to disclose any document or other material which is marked "CONFIDENTIAL," or the contents thereof, to any person actively engaged in working on this action (e.g., expert witness, paralegal, associate, consultant), the person making the disclosure shall do the following:
>
> a.  Provide a copy of the Protective Order to the person to whom disclosure is made;
> b.  Inform the person to whom disclosure is made that s/he is bound by this Protective Order;
> c.  Require that the person to whom disclosure is made to sign an acknowledgement and receipt of this Protective Order;
> d.  Instruct the person to whom disclosure is made to return any document or other material which is marked "CONFIDENTIAL," at the conclusion of the case, including notes or memoranda made from "CONFIDENTIAL" material;
> e.  Maintain a list of persons to whom disclosure was made and the "CONFIDENTIAL" materials which were disclosed to that person;
> f.  At the conclusion of the action, gather the "CONFIDENTIAL" materials, copies thereof, and related notes and memoranda, and return them to the party or attorney who originally disclosed them, with a certificate of compliance with the terms of this Protective Order.

Protective Order ("*Rhodes* Protective Order"), ¶ 5.

In its initial production to Plaintiffs, JAA produced numerous documents that were designated as confidential under the above-referenced protective orders. Following a series of "meet and confers," in an effort to resolve matters short of a discovery dispute,

JAA voluntarily removed the confidentiality designation for certain documents. Approximately 174 documents remain designated as confidential.

### III.   ARGUMENT

#### A.   JAA Appropriately Designated Certain Documents as Confidential

40 C.F.R. 2.201(c) defines confidential business information as "any information which pertains to the interests of any business, which was developed or acquired by that business." The discovery confidentiality order in *Rowe*, entered March 5, 2007, further defines confidential information, in pertinent part, as:

> (a)   That information not in the public domain, including a formula, pattern compilation, program, device, method, technique, or process, that is either entitled to protection from public disclosure on the basis of "business confidentiality" under 40 C.F.R. Part 2, subpart B, or satisfies both of the following:
>
> > (i)   It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (ii)   It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Rowe* Protective Order, ¶ 2. The essence of confidential information under either of these definitions (Code of Federal Regulations or the *Rowe* Protective Order) is that it is information that relates to a party's business and ability to compete in a given market.

Plaintiffs divide JAA's confidential documents into six separate categories and suggest that JAA has indiscriminately and inappropriately branded the documents at issue as confidential. Plaintiffs' Motion to Compel Removal of Defendant's Confidentiality Designations on Certain Produced Documents ("Motion to Compel"), 17. Nothing could

be further from the truth.  Every document JAA designated as confidential constitutes a communication undertaken on behalf of its clients SPI and/or 3M.  *See* Heinze Affidavit, ¶¶ 10, 12-13.  The written correspondence includes private conversations regarding how to interpret, characterize or communicate certain technical reports, studies, test results, articles or other information that pertains to perflurochemicals and related topics.  *Id.* ¶14.  The memoranda and internal JAA communications document JAA's preliminary and final analysis of the appropriate strategies to employ with regard to communicating such issues to the public, the media, and the regulators.  Finally, the seminar/presentation materials contain strategy information which JAA shared with existing clients or members of client organizations on the same topic.  *Id.*

JAA's business is to interpret technical information on behalf of its clients and employ strategies for communicating that information, clearly, accurately and persuasively.  *See* Heinze Affidavit, ¶ 15.  The firm operates in the small but competitive field of issues management consulting.  Its business interests would certainly be compromised were such documents to be made public and available to its competitors.  *Id.* ¶ 6.

Similarly, JAA's clients retain the firm with the expectation that they may freely engage in frank and open discussions about highly private issues related to their products.  *Id*. ¶ 16.  Requiring JAA to provide unfettered public access to such communications -- with no protections whatsoever -- would certainly have a chilling effect on its ability to generate and maintain clients.  This chilling effect is even more acute here because much of the information contained in the confidential documents are draft or preliminary in nature, and oftentimes inaccurate.  *Id.* ¶¶ 16-17.

The documents at issue in Plaintiffs' motion to compel are clearly confidential documents. Plaintiffs cannot demonstrate otherwise.

### B.   JAA's Confidential Business Information Should be Protected

Rule 45 of the Federal Rules of Civil Procedure governs discovery of nonparties by subpoena. Fed. R. Civ. P. 45 (a). As this Court has noted, underlying the protections of Rule 45 is the recognition that third-party discovery is limited. *Lee Falicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006). If a subpoena subjects a person to undue burden, the court by which a subpoena was issued shall quash or modify the subpoena. Fed. R. Civ. P. 45(c)(3)(A).

Rule 45 provides additional protections where a subpoena seeks trade secret or confidential commercial information from a non-party. Upon a showing that the requested information is confidential commercial information, the burden shifts to the requesting party to show a "substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated. Rule 45(c)(3)(B).[1]

The protection afforded to confidential information is especially important when the information is voluntarily provided by a non-party to the litigation. For example, in the context of Freedom Of Information Act ("FOIA") requests, the Court of Appeals for the District of Columbia has recognized "a private interest in preserving the confidentiality of information that is provided to the Government on a voluntary basis."

---

[1] To determine whether confidential information should be protected from public disclosure, courts may employ a balancing test to determine whether the needs of party seeking the confidential business information outweighs the costs that public disclosure of such information would impose upon the nonparty to the litigation. *See, e.g., Critical Mass Energy Project v. NRC*, 975 F.2d 871, 878 (D.C. Cir. 1992) (*en banc*) (confidential information is exempt from FOIA disclosure because requiring nonparties to voluntarily produce such information could "cause substantial harm to the competitive position of the person from whom the information was obtained").

7

*Critical Mass Energy Project v. NRC*, 975 F.2d 871, 878 (D.C. Cir. 1992) (*en banc*)..
Accordingly, the *Critical Mass* court protected confidential information that was voluntarily produced to the government and that "is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Id*. at 879.

Courts have also recognized that public relations firms, as consultants, produce sensitive and confidential business materials for their clients. *See, e.g., Food Lion, Inc. v. United Food and Comm. Workers Int'l Union*, 103 F.3d 1007, 1014 (D.C. Cir. 1997) (ruling that documents from a non-party public relations firm were protected from discovery).[2]

Here, Plaintiffs simply cannot demonstrate a substantial need to force JAA to remove the confidentiality designation from the documents at issue. While Plaintiff is entitled to engage in third-party discovery, and JAA has graciously cooperated, JAA is under no obligation to assist Plaintiffs at the cost of its business. Moreover, Plaintiffs, have the confidential documents in their possession, and the terms of the protective orders allow them to make full use of the documents in the underlying litigation. In the absence of any explanation to the contrary, it certainly appears that the request for the removal of the confidentiality designation is not an effort to further their claims in the *Rhodes* or *Rowe* litigation, but instead an approach by their counsel to develop information for other litigation. Plaintiffs cannot show a substantial need for JAA's confidential business information. As such, their motion should promptly be denied.

---

[2] Additionally, courts have protected confidential information of nonparties where the release of information would allow the disclosing party's competitors to "directly compete with the disclosing party . . . decrease the competitive advantage of the commercial information," or "would unfairly harm the disclosing party's ability to compete in the marketplace." *Falicia v. Advanced Tenant Serv., Inc.*, 235 F.R.D. 5, 7, 2006 U.S. Dist. LEXIS 17026, at *5 (D.D.C. 2006) (citing *Mannington Mills, Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 528 (D. Del. 2002)).

### C.     An Award of Expenses Against JAA is Inappropriate

Federal Rule of Civil Procedure 37 provides that an award of reasonable expenses incurred in making a motion to compel is appropriate unless "the (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii).  Plaintiffs argue that such an award would be appropriate here because "the sheer number of documents attached to this Motion" demonstrate that "JAA engaged in a massive campaign to designate documents confidential where there was simply no reason, legal or otherwise, to do so."  Motion to Compel, 17.

As demonstrated in the affidavit of John Heinze, JAA has only marked as confidential those documents that contain protected commercial information or analysis that is essential to JAA's ability to compete in the marketplace.  JAA voluntarily removed the confidentiality designation on some documents in an effort to reach an agreement with Plaintiffs and avoid additional costly litigation. Plaintiffs suggestion otherwise is inaccurate.  It is absurd to suggest that a third-party who has spent thousands of dollars complying with Plaintiffs' subpoenas should somehow be responsible for costs associated with its attempts to protect its confidential business information.  JAA genuinely believes that the documents at issue contained protected confidential business information.  A decision to award costs would be unjust.

IV.  **CONCLUSION**

Accordingly, for the reasons stated above, JAA respectfully requests this Court deny Plaintiffs' motion to compel JAA to remove the confidentiality designations from certain documents.

/s/
THOMAS M. RICHICHI
D.C. Bar No. 255505
Nadira Clarke, *Pro Hac Vice*[3]
PA Bar. No. 67956
Beveridge & Diamond, P.C.
1350 I Street, NW Suite 700
Washington, DC 20005
Telephone:  (202) 789-6069
Facsimile:  (202) 789-6190
trichichi@bdlaw.com
nclarke@bdlaw.com

Counsel for John Adams Assoc. Inc.

---

[3] Practicing pursuant to DC App. Rule 49(c)(8), and supervised by Principals of Beveridge & Diamond.

## CERTIFICATE OF SERVICE

I certify that on April 22, 2008, I caused a copy of the Opposition to Plaintiffs' Motion to Compel Removal of Confidentiality Designations on Certain Produced Documents to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of filing to the following:

J. Steven Justice
Taft Stettinius & Hollister LLP
110 North Main Street, Suite 900
Dayton, OH 45402

Karen J. Marcus
Finkelstein Thompson LLP
The Duvall Foundry
1050 30th Street NW
Washington, D.C. 20007

Katherine L. Rhyne,
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006

Michael C. McCarthy
Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140

Dated: April 22, 2008                              /s/_____
                                                   Nadira Clarke

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JOHN ADAMS ASSOCIATES INC. ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 1:07-mc-577 (RBW)**<br><br>Judge Reggie B. Walton<br><br>Hearing: May 2, 2008 |

**AFFIDAVIT OF JOHN E. HEINZE, Ph.D. IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL REMOVAL OF DEFENDANT'S CONFIDENTIALITY DESIGNATIONS ON CERTAIN PRODUCED DOCUMENTS**

John E. Heinze, Ph.D., being duly sworn upon oath, states the following:

1. I make this Affidavit, based on my personal knowledge, in support of the Opposition of John Adams Associates Inc. to Plaintiffs' Motion to Compel Removal of Defendant's Confidentiality Designations on Certain Produced Documents.

**John Adams Associates**

2. I am a principal and Senior Vice President for Science in the firm of John Adams Associates Inc. ("JAA"), located in Washington, and D.C. I joined JAA in 1995. Prior to that, I received a Ph.D. degree in microbiology, and completed post-doctorate research in molecular biology at the National Institutes of Health.

3. JAA is a small firm. In addition to the two principals, John Adams and I, there are four other professional staff, one support staff person, and several outside consultants who do contract work. Retaining counsel for our company and responding to the four subpoenas in this matter has been a significant burden to us. We have complied with these subpoenas as

expeditiously as possible, despite the disruption to our business. In responding to these subpoenas, JAA has produced over 17,000 documents to Plaintiffs and incurred significant expenses. The first round of document production was done entirely at JAA's expense. With regard to the second production – the electronically-stored information ("ESI") – Plaintiffs originally agreed to bear one half of the IT and legal review costs. Ultimately, however, following the production, they failed to honor their agreement in its entirety.

4. JAA provides consulting services to major corporations and trade associations in an area of public affairs known as "issues management." The focus of our work is to assist our clients in communicating complex scientific and technical information to the public, regulators and the media in an accurate and understandable manner.

5. JAA has significant networks with regulators and the media. These contacts, combined with JAA's communications and technical expertise, are the reason why clients hire JAA to represent them.

6. JAA is one of only a few select communications firms which provide issues management consulting. The competition for business between such firms is therefore fierce.

**John Adams Associates Inc.'s Clients**

7. JAA's clients primarily consist of manufacturers of chemicals and plastics, including the perfluorochemicals, and associated trade associations.

8. The Society of the Plastics Industry ("SPI"), which is a trade association of companies which represent the entire plastics industry supply chain, including processors, machinery and equipment manufacturers and raw materials suppliers.

9. In approximately 2003, JAA was retained to represent the Communications Work Group ("CWG") of the Fluoropolymers Manufacturers Group of SPI. In 2006, JAA's work for

the CWG ended and JAA was retained to represent the Fluoropolymer Products Information Center ("FPIC"), another group within SPI. JAA's work with members of CWG and of the FPIC consists of developing and facilitating a comprehensive "industry" viewpoint with regard to perfluorooctanoic acid ("PFOA"). DuPont is a member of FPIC, and both Dyneon, a 3M subsidiary, and DuPont were members of the CWG.

10. In its capacity as an outside issues manager consultant for CWG, JAA rendered services to both DuPont and 3M, as well as the other members of the CWG. JAA currently provides its issues management consulting services to DuPont due to its membership in the FPIC. JAA has not done any individual work for DuPont with regard to perfluorochemicals. JAA has done some work individually on behalf of 3M.

11. JAA often receives technical and scientific materials from its clients in connection with representing them. JAA protects such information in a password protected storage location on its server, and access to the server as well as to the files is restricted.

**Nature of Documents Designated as Confidential**

12. In the motion to compel, Plaintiffs have created six categories of challenged documents: JAA Communications with SPI; JAA Communications with 3M; JAA Communications with SPI Members and Others; Internal JAA Communications; Draft Documents and Clean Memoranda; and JAA Seminar/Presentation Materials. To my mind, these six categories really constitute one all encompassing group of documents: communications undertaken on behalf of JAA's clients.

13. The documents produced by JAA and designated as confidential include email and written correspondence with the CWG or FPIC groups at SPI and 3M (all JAA clients);

memoranda and other written material in draft and final form addressing strategy; internal JAA communications addressing strategy; and presentations to clients regarding strategy.

14. The written correspondence between JAA and the CWG and FPIC groups at SPI and 3M includes private conversations regarding how to interpret, characterize or communicate certain reports, studies, test results, articles, or other information that pertains to perflurochemicals and related topics. The memoranda and internal JAA communications document JAA's preliminary and final analysis of the appropriate strategies to employ with regard to communicating such issues to the public, the media, or regulators. Finally, the seminar/presentation materials contain strategy information which JAA shared with existing clients or members of client organizations on the topic of perfluorochemicals.

15. JAA's interpretation of technical information including reports, studies and journal articles, and the strategies it employs for communicating such material clearly, accurately, and persuasively is in essence the product which JAA markets to its clients. Its business interests would be harmed if documents containing such communications were released publicly and made accessible to competing consulting firms.

16. JAA's clients retain the firm with the expectation that they will be able to seek advice privately and confidentially and engage in frank and open discussions without the fear of such information being made public to their critics and competitors. A requirement that JAA provide unfettered public access to documents containing private strategy communications would inevitably have a chilling effect on JAA's ability to generate business.

17. It is also important to note that communications with clients and draft memoranda often contain incomplete and sometimes inaccurate information. The issues for which JAA is hired to consult are technical and complex. The process of developing a clear and accurate

communications strategy inevitably generates exchanges of correspondence or draft documents where preliminary, incomplete, or inaccurate ideas are expressed. Providing the public with unfettered access to documents containing such communications would undoubtedly be detrimental to the commercial business interests of both JAA and its clients.

**Conclusion**

18. I have carefully reviewed all of the documents which JAA designated as business confidential. I have marked all documents that relate to these communications as business confidential because they provide JAA with inherent economic value and because they could be used by JAA's competitors, or the competitors of JAA's clients, for commercial gain.

This concludes my affidavit.

*[signature: John E. Heinze]*

John E. Heinze, Ph.D.

Sworn and subscribed to before me this 21st th day of April 2008:

*[signature: Regina Lee Miller]*

Notary Public
My commission expires:

REGINA LEE MILLER
Notary Public, District of Columbia
My Commission Expires March 14, 2011

5